# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UPSOLVE, INC. and REV. JOHN UDO-OKON<br><br>Plaintiffs,<br><br>-v-<br><br>LETITIA JAMES, in her official capacity Attorney General of the State of New York,<br><br>Defendant. | Case No. _____ |

## DECLARATION OF ROHAN PAVULURI

1.     My name is Rohan Pavuluri. I am over the age of twenty-one and competent to testify to the matters set forth in this Declaration. Unless otherwise indicated, the facts stated herein are based on my personal knowledge or upon my review of documents to which I have access.

## BACKGROUND

2.     I co-founded Upsolve—a 501(c)(3) nonprofit organized under the laws of the State of New York—and currently serve as Chief Executive Officer of Upsolve. I also serve in a volunteer capacity as a Board Director of the National Center for Access to Justice, a member of the Emerging Leaders Council of the Legal Services Corporation, and a member of the Making

Justice Accessible Initiative of the American Academy of Arts and Sciences. I got the conviction to start Upsolve during my time as a volunteer at the Access to Justice Lab at Harvard Law School.

3. Upsolve is an organization that engages in education and advocacy with the mission of ensuring that all Americans can understand and access their legal rights for free, fight the cycle of poverty, and achieve economic mobility.

4. Upsolve started by empowering people to file for bankruptcy on their own using a web application. Upsolve designed an application that asks people questions about their finances in language they can understand and then uses this information to help them generate legal forms they can file with the court to relieve their debt on their own and re-enter the economy. Upsolve also provides free education and online community that enables users to support each other emotionally.

5. Upsolve is now the largest nonprofit organization providing bankruptcy-related resources in the United States. It is also one of the widest-reaching legal-related nonprofit organizations launched in the last two decades nationwide and a leading non-partisan political advocacy organization working toward a more accessible civil legal system. Many low-income self-represented debtors have used its tools to file for simple, no-asset Chapter 7 bankruptcy, relieving more than $400 million in debt.

6. Upsolve also provides free online education that reaches over 150,000 individuals per month covering topics like student loans, wage garnishment, debt collection lawsuits, eviction, repossessions, foreclosures, and other topics at the intersection of financial distress and the civil legal system.

7. Upsolve does not and has never received or requested any compensation from its users for the service it provides. It instead relies primarily on charitable donations from individuals and institutions.

8. Until now, Upsolve has provided free software and education—not legal advice or representation—aimed at addressing the serious gap in available free services for low-income Americans with overwhelming debt, to whom free legal services, especially full representation, are in short supply. Upsolve has provided technology and education to self-represented debtors with simple no-asset Chapter 7 bankruptcy cases for whom full-representation may not be necessary. These individuals benefit from free online education, automated form generation, and checks for consistency, which Upsolve's web-based platform provides.

9. From the beginning, the dual purpose of Upsolve has been to (1) directly improve people's lives and (2) advocate for a more accessible legal and financial system.

10. Upsolve's advocacy over the last five years has taken the form of op-eds, speeches, conference and panel presentations, policy proposals, media outreach, and conversations with elected officials, Bar Associations, judges, legal scholars, and state agencies.

11. In May 2021, I delivered a TED Talk on the access to justice crisis and Upsolve's vision for a more accessible legal system. The talk has been viewed over 1.4 million times. See TED, An App that Empowers People to Solve Their Legal Problems (May 2021), https://www.ted.com/talks/rohan_pavuluri_an_app_that_empowers_people_to_solve_their_legal_problems?language=en. In August 2021, I wrote an Op-Ed in CNN with Congressman Joe Kennedy III about the need for a new civil right in America: the right to access your rights, regardless of how much money is in your bank account. See Joe Kennedy and Rohan Pavuluri,

We need a new civil right, CNN (Aug. 8, 2021 8:24 PM), https://www.cnn.com/2021/08/08/opinions/access-to-justice-gap-civil-rights-kennedy-pavuluri/index.html.

12. Upsolve's success in providing technology-enabled support and free online education to self-represented debtors has been recognized and lauded by a number of legal institutions and media outlets, including TIME, the ABA Journal, New York Times, the Wall Street Journal, and the Washington Post. Upsolve has been funded by a variety of leading philanthropic institutions, including the Robin Hood Foundation and the Hewlett Foundation.

### THE ACCESS TO JUSTICE GAP IN DEBT COLLECTION IN NEW YORK

13. My work in bankruptcy has shown me that there are other areas of our civil legal system where low-income Americans cannot access their legal rights because they cannot afford a lawyer, there are not enough free lawyers, and there is no adequate model of non-lawyer assistance. These problems are acute in New York City, where I live and Upsolve is headquartered.

14. Based on our research and conversations with members of the Upsolve community, we have found that responding to debt collection actions is one area where the demand for straightforward, simple, and low-cost legal advice far exceeds the available supply of such advice. The result is that most low-income people in New York are unable to access the justice system to vindicate their rights. Indeed, debt collection lawsuits are one of the main reasons why Upsolve users consider bankruptcy. Debt collection lawsuits affect millions of people each year, including thousands of New Yorkers, and can have devastating consequences.

15. Based on our experience, we have learned that low-income individuals often fail to understand and access their rights and fail to participate in the lawsuits against them, even where those lawsuits lack merit or ask for more money than the person owes. While representation by attorneys would be one way to fill this gap, our experience suggests that most low-income people

who are facing debt collection actions cannot afford a paid attorney and free attorneys are in too short supply.

16. Responding to a debt collection lawsuit is not complicated. New York State provides a one-page fill-in-the-box form for litigants to file that allows debt collection defendants to raise common affirmative defenses to owing the debt they are being sued on.

17. Nonetheless, the overwhelming majority of debt collection defendants in New York still fail to file an answer and therefore default.

18. Based on our experience, it appears that many people are unaware of their rights, unaware of the fill-in-the-box form provided by New York State, or do not understand how to fill it out or why they might want to respond to the lawsuit, given their lack of experience with the legal system, the complexity of the legal system, and the stress, intimidation, and discomfort caused by having to interact with the legal system. Furthermore, our understanding is that many defendants who do respond fail to adequately protect their rights by failing to assert the appropriate affirmative defenses—and thus risk forfeiting those defenses.

## THE AMERICAN JUSTICE MOVEMENT

19. In order to address this access to justice problem, Upsolve is prepared to launch a new project: the American Justice Movement ("AJM"). Attached to this Declaration, as Exhibit A, is the "Action Plan" Upsolve has prepared describing the program and its planned implementation to potential partners and funders.

20. As the Plan describes, Upsolve has already invested its own existing staff and financial resources in developing this program and is preparing to hire dedicated staff for the program. Moreover, Upsolve has received a commitment of funds restricted to the American Justice Movement, which will allow Upsolve to hire staff to implement the program immediately. Once started, Upsolve will seek additional funding to expand the program further.

21.     The purpose of AJM is to create and support an association of professionals who are not lawyers and low-income individuals uniting to ensure meaningful access to the courts and raise awareness of the access to justice gap that prevents low-income Americans from understanding and accessing their legal rights when they cannot afford a lawyer and cannot find pro bono counsel. AJM is not being organized for any commercial purpose.

22.     AJM will do so by recruiting a corps of "Justice Advocates," who are professionals who are not lawyers. Upsolve will train the Justice Advocates to provide free, carefully circumscribed legal advice on how to respond to a debt collection action in New York.

23.     In order to ensure that AJM works in the interest of the low-income New Yorkers it is designed to help, Upsolve will exercise careful oversight over the selection, training, and performance of Justice Advocates and will provide Justice Advocates with careful guidelines they must adhere to in order to provide advice under AJM's auspices.

24.     Upsolve has prepared a Training Guide that specifies the assistance Justice Advocates may provide. The Training Guide also includes strict quality-control requirements that Justice Advocates must adhere to—including confidentiality and conflict-of-interest protections identical to those followed by lawyers providing pro bono representations, and consistent with New York's Rules of Professional Conduct.

25.     In designing these safeguards, we ensured that AJM will advance the interests in protecting consumers from harmful advice and ensuring the integrity of our judicial system that underpin New York State's regulation of the practice of law. We have designed the Training Guide in consultation with experts in debt collection law to ensure that all advice provided will be in clients' best interests and will leave them better off than they would have been without the assistance.

26. Upsolve has worked with Tashi Lhewa, the Supervising Attorney of the Legal Aid Society's Consumer Law Project, and Professor Pamela Foohey, a consumer-law expert at Cardozo Law School, in preparing this guide to ensure that all advice Justice Advocates will provide is in the clients' best interests and does not risk making clients worse off than they would be going it alone.

27. The Training Guide clearly defines the narrow limits of the program and requires Justice Advocates to refer clients to other resources when the assistance needed is outside the scope of the Justice Advocates' training. By empowering low-income New Yorkers to answer the lawsuits against them and raise potential defenses to liability, AJM is designed to help increase public confidence in the legal system by ensuring that courts have the opportunity to fully and fairly adjudicate the cases before them.

28. Specifically, as the Training Guide describes, Justice Advocates may provide advice under the auspices of AJM if they provide that advice for free, they ensure that their clients agree to the limited nature of the advice being provided, and they provide only advice described in the Training Guide. Moreover, AJM will track every instance of advice giving—which amounts to closer supervision than the bar ordinarily has over legal advice giving—and will routinely follow up with clients to ensure that Justice Advocates are providing advice consistent with the terms of the Training Guide and other guidelines set by AJM.

29. In developing the American Justice Movement, we have spoken with many low-income individuals who have told us they would benefit from such advice. Upsolve is also in the process of recruiting and training Justice Advocates.

30. Rev. John Udo-Okon is one individual who would like to participate as a Justice Advocate. Rev. Udo-Okon is prepared to provide free legal advice consistent with the Upsolve

Training Guide and has potential advisees—members of his community—who would imminently seek and benefit from his advice.

31. Upsolve therefore stands ready to implement AJM immediately.

32. Unfortunately, Upsolve is chilled from engaging in this advocacy and association because of regulations governing the unauthorized practice of law, which prevent professionals who are not lawyers from providing legal advice. It is also unlawful to aid or solicit the unauthorized practice of law. On information and belief, these laws are consistently enforced in New York, and the Attorney General frequently investigates and prosecutes individuals engaged in the unauthorized practice of law. Providing individualized advice to a person about whether or how to respond to a debt collection action qualifies as legal advice, even when the advice simply involves helping the person understand, fill out, and submit New York's simple form.

33. These regulations mean that as soon as AJM launches, Upsolve, its officers and employees, Rev. Udo-Okon, its advisees, and any others who aid our project or solicit our advice face the risk of criminal and civil liability. That threat has caused us to refrain from implementing the program. If the threat were eliminated, we would launch the program immediately.

34. The chill on our associational and speech rights is particularly severe because this entire effort is grounded in our desire to engage in advocacy and expression on behalf of low-income Americans.

35. Through my work at Upsolve, I have come to believe that it is one of the greatest civil rights injustices of our time that millions of people who are poor cannot access their civil legal rights because they cannot afford lawyers to help with the problems they face. By and large, when you cannot afford a lawyer, and you cannot find one for free, you simply cannot access the justice system to vindicate your rights. I believe this injustice is one of the most urgent and

fundamental civil rights issues of our time. I co-founded Upsolve and now AJM as an advocacy effort to help close this access to justice gap and draw attention to these problems more broadly, including beyond the debt collection context. I firmly believe these injustices compromise our rule of law, undermine public perceptions of the fairness of the justice system, and undermine our democracy.

36. AJM's mission to engage in this advocacy effort is also grounded in the belief that the access to justice gap is a racial justice issue. People of color have been—and continue to be—disproportionately impacted by the access to justice gap, in part because of historical disparities in education, employment, health, and wealth. Language barriers and cultural differences can also make accessing justice particularly hard for low-income immigrant communities. AJM is built on the recognition that among the people who can help solve these problems are professionals who are not lawyers and are already embedded in those communities. This includes clergy, patient advocates, social workers, community organizers, and so many others who are already living and working to help communities in need, and who often better reflect their full diversity than the attorneys who are available to individuals in these communities. AJM would empower these faith leaders and other individuals to meet the needs of their communities by helping each other advocate for their interests, and in turn help America truly live up to its founding ideals.

37. The chilling effect of potential liability is causing Upsolve irreparable harm. Every day that goes by means more low-income New Yorkers—including many visitors to Upsolve's website and members of Rev. Udo-Okon's church and community—will be deprived of their property and their civil legal rights due to the lack of free assistance to help them vindicate those rights. This problem is especially acute as debt collection activity accelerates in the aftermath of the COVID-19 pandemic while alternative resources to assist low-income defendants remain

limited as a result of the pandemic. This state of affairs undermines Upsolve's mission and gravely harms the interest of the individuals we serve.

38.   AJM's advocacy work to provide free legal advice is in furtherance of Upsolve's slogan and political belief that "Civil Rights Should Be Free." I believe now is the time to launch AJM to help make that belief a reality and to ensure access to the courts for all individuals rich and poor.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 10 day of January, 2022.

_____
Rohan Pavuluri

# Exhibit 1A



# Action Plan: The American Justice Movement

## Executive Summary

Today, Upsolve is one of the most impactful nonprofit membership organizations in America helping low-income families access their civil legal rights. We do this through our free online education, community, self-service technology tools, and advocacy.

About two million individuals consume our free legal education per year and our self-service legal tools have helped low-income families relieve over $400 million in debt. Our average user has less than $1,000 in savings and earns under $20,000 per year.

Upsolve exists to address one of the fundamental civil rights injustices of our time: Low-income Americans who cannot afford lawyers often don't receive equal justice under the law. People have a constitutional right to a free attorney in criminal cases, but not civil cases. So if a person needs legal help in a civil case but cannot afford a lawyer or cannot find free legal help, which is often in limited supply due to the high educational costs required, she will be forced to go it alone. The effects of legal fees in poverty law can be like modern-day poll taxes: If you can't afford the fees, you can't access your rights.

Over the last three years, we've learned that education and software alone cannot solve this civil rights injustice. The way to truly bring about equal justice under the law is to empower professionals who are already acting in the public interest – clergy, patient advocates, librarians, social workers, community organizers, and frontline nonprofit staff – to provide free legal advice to poor and working-class people who need legal help but can't afford lawyers and can't find free legal help.

The access to justice crisis gap harms economic mobility, contributes to the cycle of poverty, and comes at a financial cost to the entire public. This civil rights issue is also a racial justice issue: the status quo has a disproportionate impact on communities of color, preventing many people from vindicating their legal rights. Communities of color often have disproportionately fewer lawyers, and especially lack trustworthy legal advocates that reflect the diversity of their own communities.

Given our track-record reaching, educating, and assisting low-income families at scale about their civil legal rights, Upsolve is launching the **American Justice Movement (AJM)** to empower individuals who cannot afford lawyers to receive free legal advice from trained and vetted professionals who are not lawyers. AJM is a non-partisan political movement that aims to strengthen the American democracy by safely expanding the rule of law to people who are unable to access our courts.



The first initiative of the American Justice Movement is the **Consumer Rights Project**. Upsolve will train outside nonprofit professionals to be AJM Justice Advocates. These professionals will provide personalized, free legal advice to low-income individuals and families who have been sued by their debt collectors and need help responding to that lawsuit.

We believe the American Justice Movement will help low-income families understand their rights and curtail unsavory behavior from certain creditors. Our goal is to create a more accessible and humane financial and legal system.

## Problem

Debt collection lawsuits are one of the most common civil legal issues in America. According to a study by the Pew Charitable Trust, 1 in 4 civil cases is a debt collection lawsuit.[1] This amounts to about 4 million debt collection lawsuits every year. In recent decades, debt collection lawsuits have more than doubled. Almost always, these lawsuits are for less than $10,000 and often less than $5,000.[2]

Over 70% of debt collection lawsuits end in default judgments against the defendant because the defendant simply does not show up. This means that nearly 3 million Americans lose their debt collection lawsuits and lose their property and face the risk of wage garnishment, bank seizures, eviction, and lasting damage to credit without the plaintiff needing to ever prove their case and without the court ever needing to consider any facts at all.[3] **It is a civil rights injustice that low-income Americans suffer these grave harms, losing their property rights without being able to meaningfully access the courts to have a neutral determination of their rights.**

Very few private attorneys exist to represent individuals who have been sued for their debts. This is because the low dollar amounts of these claims make it difficult for private attorneys to build a sustainable business model around debt collection defense representation. And there aren't close to enough free lawyers in America—especially in light of the high educational costs—to meet the demand of every single person who needs legal help. One 2010 report stated that the leading free program serving low-income NYC residents facing debt collection lawsuits received funding sufficient to serve less than 2% of the approximately 300,000 New

---

[1] The Pew Charitable Trusts, *How Debt Collectors Are Transforming the Business of State Courts* (May 2020), https://www.pewtrusts.org/-/media/assets/2020/06/debt-collectors-to-consumers.pdf.
[2] Ibid.
[3] Ibid.

AJM American Justice Movement

York City residents sued each year by debt collectors.[4] The COVID-19 pandemic has limited the availability of this service and others like it.

Research on debt collection lawsuits further shows that exceedingly few defendants in New York have an attorney, compared with nearly 100% of plaintiffs. Nationally, studies estimate that over 90%—and in some cases 99%--of individuals sued for their debt receive no legal advice at all.[5]

On the other side of these lawsuits, debt buyers can take advantage of economies of scale to cheaply bring hundreds or thousands of mass-produced lawsuits, with little risk that they will ever have to prove their case since so many low-income New Yorkers default. As a result, there is reduced incentive to check the quality of their claims or the supporting evidence, and increased risk of fraud and abuse. Research shows that although many debt collection suits have merit, a substantial portion are meritless or overstated.

Civil debt collection lawsuits may well be the area of poverty law where there's the largest gap between a need for legal advice and the amount of legal advice available – either paid or unpaid. Our conversations with Upsolve website visitors align with this data. Most Upsolve users we've talked to have been unable to afford or receive legal advice after they've been sued for their debt. It's their top unmet legal need.

There's also striking data on the racial disparities in debt collection lawsuits. A study of judgments over a five-year period in St. Louis, Chicago, and Newark, New Jersey, found that even after accounting for income, the rate of default judgments in mostly black neighborhoods was nearly double that of mostly white ones.[6]

## Solution

We believe individuals sued for their debt would benefit from free, individualized legal advice about their rights from trained Justice Advocates.

Because low-income Americans cannot afford paid lawyers and free lawyers are in too short supply to meet this need, Upsolve is launching the American Justice Movement to meet this

---

[4] The Legal Aid Society et al., *Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers* (May 2010), https://www.neweconomynyc.org/wp-content/uploads/2014/08/DEBT_DECEPTION_FINAL_WEB-new-logo.pdf.
[5] The Pew Charitable Trusts, *How Debt Collectors Are Transforming the Business of State Courts* (May 2020), https://www.pewtrusts.org/-/media/assets/2020/06/debt-collectors-to-consumers.pdf.
[6] Paul Kiel and Annie Waldman, *The Color of Debt: How Collection Suits Squeeze Black Neighborhoods*, ProPublica (Oct. 8, 2015),  HYPERLINK "https://www.propublica.org/article/debt collection-lawsuits-squeeze-black-neighborhoods" \h https://www.propublica.org/article/debt collection-lawsuits-squeeze-black-neighb

**AJM American Justice Movement**

need with professionals who are not lawyers. AJM will train nonprofit professionals to be AJM Justice Advocates under AJM.

To receive advice from Justice Advocates, low-income individuals will answer a series of standard and scripted questions about their debt collection lawsuit. In our own conversations and research, we've learned that debt collection lawsuit defense is an area of the law where many judges and attorneys understand the value in training Justice Advocates who are not attorneys to provide free legal advice.

Based on the information an individual shares, the Justice Advocates will provide free individualized legal advice about whether and how to draft and file an answer, so the client can respond to the lawsuit. Providing this advice and assisting low-income individuals in responding to their debt collection lawsuits will ensure that plaintiffs cannot secure a judgment without proving their case. For many of these individuals, the lack of response is not due to their unwillingness to respond and is not because they concede that the lawsuit has merit. Rather, they lack either the financial resources to seek legal counsel or lack the support to understand their rights and the procedures associated with responding to their complaints. As a result, these individuals receive automatic default judgments against them, which can result in potentially life-altering consequences down the road. Across the board, consumer lawyers and advocates agree that responding to the initial complaint is the first important, and critical, step in a debt collection lawsuit.

Specifically, the Justice Advocate will be trained to provide free, routine legal advice on whether and how to draft an answer. This is extremely simple in New York given the straightforward check-the-box answer forms that the State already provides.

Potential advice, based on the specific situation of the user, could include:

- Advising an individual to check the box on the answer form to indicate that the plaintiff must verify the debt amount.
- Advising an individual to check the box on the answer form to indicate that they do not owe the plaintiff if they're the victim of mistaken identity.
- Advising an individual to check the box on the answer form to indicate that the plaintiff is collecting debts that are time-barred if the debt is outside the applicable statute of limitations.
- Advising an individual to check the box on the answer form that they were not served properly if the plaintiff did not meet their obligations when serving the lawsuit papers.
- Advising an individual to indicate on their forms whether their income or assets are protected in a debt collection lawsuit, based on the exemptions available in the state.
- Advising an individual on how to submit the form.

**AJM American Justice Movement**

The Justice Advocates must make clear to clients the limited scope of the advice they are able to provide and will require clients to acknowledge the nature of the advice. Some clients will require more attention, and, in these scenarios, the Justice Advocates will inform the clients that they may require the attention of an attorney and may provide the user with potential institutions to reach out to for further assistance. To further ensure the integrity of the advice given, Justice Advocates will be required to comply with relevant ethical rules around conflicts-of-interest and confidentiality that attorneys giving similar advice would be required to comply with, and the activities of Justice Advocates will be carefully tracked and monitored.

We choose to recruit and train non-lawyer Justice Advocates for reasons of supply, cost, convenience, and trust. There are many, many more frontline nonprofit staff and other community-embedded professionals than lawyers in America. It is also less expensive for institutions to hire professionals who are not lawyers than lawyers. This enables philanthropic and government funding to go further toward accomplishing its intended means of helping low-income families.

For consumers, it's more convenient to receive help from individuals already embedded in their communities, and, importantly, they're often more likely to trust these individuals. There are already many social workers, community organizers, librarians, and frontline staff embedded in communities across America that better reflect the diversity of the populations they serve than lawyers, who are disproportionately white.[7] These individuals are acting in the public interest. They should be equipped to serve low-income and working-class families who have been sued for their debts and cannot afford legal fees.

We are launching with a focus on New York, where Upsolve is headquartered and where we are most familiar with the state, given that we've had physical offices in NY for over five years. Our New York users and others have come to us expressing the need for this advice and their interest in receiving limited legal advice from professionals who are not lawyers. And New York is where we have found the first interest from potential Justice Advocates willing to take on the role and responsibilities of providing this advice for free and for the purpose of helping low-income Americans access their legal rights.

## Guidelines for AJM Professionals

To expand the supply of Justice Advocates, we will recruit clergy, librarians, social workers, community organizers, nonprofit case workers, nonprofit paralegals, and other frontline nonprofit staff.

---

[7] Am. Bar Ass'n Comm'n on the Future of Legal Services, Report on the Future of Legal Services in the United States (2016), https://www.americanbar.org/content/dam/aba/images/abanews/2016FLSReport_FNL_WEB.pdf.

But in order to ensure that Justice Advocates are acting in the public interest and in the best interest of the advice receivers, AJM imposes strict conditions on the Justice Advocates and the advice they provide.

1. We vet and train professionals providing free legal advice to ensure the quality of the Justice Advocates and the advice they provide. As part of this quality-control process, all Justice Advocates must affirm that they will only provide limited legal advice on issues for which AJM provides training and that they are doing so in the interest of increasing access to justice by helping low-income Americans access their civil rights.

2. We require all Justice Advocates providing legal advice to abide by a shared set of standards. At the top of the list:

    a. Justice Advocates must never receive financial or in-kind contributions from beneficiaries for providing legal advice.
    b. Justice Advocates must inform every client that they are not a lawyer before providing any legal advice and clients must acknowledge the limited-scope of the advice being provided.
    c. Justice Advocates must inform individuals receiving advice about the American Justice Movement website, so that AJM beneficiaries can report bad behavior and bad advice.
    d. Justice Advocates must comply with the same confidentiality and conflict-of-interest requirements imposed on lawyers providing pro bono representation.

3. Upsolve will review and investigate complaints about Justice Advocates and will remove Justice Advocates who fail to uphold quality care and assistance requirements and notify them of the risk of further liability if they continue to provide unauthorized assistance.

## Distribution

To reach our target audience, the American Justice Movement will employ two strategies in our first phase:

1. Provide our 150,000+ monthly Upsolve website visitors with access to available Justice Advocates.

2. Recruit and train Justice Advocates, who are already serving communities of need, to raise awareness.

To recruit Justice Advocates to train, we'll conduct outreach to community-based nonprofits that serve communities in need.



## Potential Impact

Nearly 4 million people per year are sued for the debts and receive no legal advice at all. The norm is that they don't respond and they automatically lose their lawsuit, with potentially disastrous consequences. This undermines our democracy and compromises our rule of law. America can and should do better.

The American Justice Movement empowers any low-income or working-class individual or family sued for their debt to receive free, carefully vetted legal advice from a professional in their community. We aim to restore the promise of equal rights under the law by addressing one of the largest unmet needs in our civil justice system.

Free legal advice from AJM professionals will have several concrete advantages in the lives of low-income families. These relate to their personal finances, safety, freedom, and livelihood. The downstream effects of erroneous debt collection lawsuits include homelessness, hunger, and poverty, which come at a cost to all of society.

In the long run, AJM aims to curtail debt collection lawsuits and practices that are unsavory. Debt collection agencies and debt buyers today know that the vast majority of individuals they sue will not respond. And they know that most people who do take action will not receive any legal advice. Some unsavory debt collectors take advantage of that information gap by filing sloppy or unfounded suits.

If more low-income people who were sued in a debt collection action had the ability to receive free legal advice, we believe they would reduce the potential for abuse and encourage debt collection agencies to be more careful in initiating suits in the first place. After all, multiple studies suggest that individuals who receive some kind of representation fare better in debt collection lawsuits than those who respond to their complaint but don't receive any kind of legal advice.

The theory of change built into the American Justice Movement– helping people directly in the near term while fighting to create a more accessible financial and legal system in the long term – is aligned with the Upsolve philosophy for how to maximize our impact in the world.

## Why is this Urgent?

COVID-19 has caused significant financial distress and has limited the degree to which lawyers and courts are able to provide free assistance, with a disproportionate impact on communities in need. Moreover, certain debt collection and eviction moratoriums are set to expire in 2022, which may lead to an unprecedented level of debt collection lawsuits. It will be critical for

individuals from communities in need to be able to understand and access their legal rights when they've been sued by their creditors.

## Budget & Ask

While Upsolve has already committed existing staff resources to developing AJM, we have already raised $100,000 to fund one full-time AJM staff member and are planning to raise additional funds to further broaden the program's reach. We will hire someone with a track record of consumer-rights advocacy, a commitment to social justice, and a deep familiarity with the legal system and the ways it comes up short for poor Americans. This consumer advocate will be responsible for outreach to nonprofit professionals already embedded in communities across New York, training them on how to provide limited scope, free legal advice to individuals sued for their debt, and ensuring that the advice being provided is advancing the interests of the public and consumers.

## Legality of this Service

Under existing regulations governing the practice of law, the American Justice Movement cannot provide this service: state law is clear that non-lawyers cannot provide legal advice without facing the risk of prosecution and potentially criminal punishment for engaging in the unauthorized practice of law. It does not matter whether the law is federal, the legal advice is free, the user cannot afford a lawyer, or the area of the law is simple and routine. It does not matter if the advice is a form of political advocacy intended to help communities access the courts, advance racial, social, and economic justice, expand individual freedom, protect property and liberty, or fight debt-based poverty. It also does not matter whether the user prefers to receive free legal advice from a trained consumer advocate who is not a lawyer and fully understands that the consumer advocate is not a licensed lawyer.

But the United States Constitution guarantees all Americans the right to access their legal rights in court, regardless of their race or socioeconomic status. And the Constitution also guarantees the rights of AJM and the Justice Advocates to associate and advocate to ensure that all Americans can understand and access their legal rights. In order to achieve the goal of this program, Upsolve intends to fight in court to protect the right to provide and receive free legal advice for the purpose of expanding access to courts.

Given the risk of state regulations on the unauthorized practice of law, we are asking for a conditional gift. We hope to receive funding to support AJM's Consumer Rights Project if we can be certain that it is legal to offer the services we've outlined above.