# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UPSOLVE, INC. and REV. JOHN UDO-OKON,<br><br>                    Plaintiffs,<br><br>            -v-<br><br>LETITIA JAMES, in her official capacity as Attorney General of the State of New York,<br><br>                    Defendant. | Case No. 1:22-cv-00627-PAC |

**BRIEF OF *AMICI CURIAE* LAW PROFESSORS WHO STUDY
ACCESS TO JUSTICE AND REGULATION OF THE LEGAL PROFESSION
IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

<br>

Richard C. St. John
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Fax: (213) 687-3702

David H. Fry (*pro hac vice pending*)
Andrew T. Nguyen (*pro hac vice pending*)
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Fax: (415) 512-4077

Attorneys for *Amici Curiae*
Law Professors

March 2, 2022

# **TABLE OF CONTENTS**

**Page**

I. INTEREST OF *AMICI CURIAE* ...............................................................................................1

II. INTRODUCTION AND SUMMARY OF THE ARGUMENT .........................................1

III. ARGUMENT....................................................................................................................2

    A. New York law prohibits nonlawyers from providing individualized legal advice, even when the advice is simple and free. ....................................................2

    B. Plaintiffs' program would constitute the unauthorized practice of law and could expose Plaintiffs to criminal prosecution.......................................................4

    C. Exposure to criminal prosecution prevents Plaintiffs from offering legal advice and serves as a systemic barrier to accessing justice, even absent formal enforcement. ..................................................................................................5

IV. CONCLUSION.................................................................................................................8

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*In re Nat'l Legal Prof'l Assocs. (NLPA)*,
  No. 1:08-MC-101, 2010 WL 624045 (N.D.N.Y. Feb. 18, 2010) ..............................................2

**STATE CASES**

*Carter v. Flaherty*,
  37 Misc. 3d 46 (N.Y. App. Term 2012)..................................................................................2

*El Gemayel v. Seaman*,
  533 N.E.2d 245 (N.Y. 1988)....................................................................................................2

*Fla. Bar v. TIKD Servs. LLC*,
  326 So. 3d 1073 (Fla. 2021).....................................................................................................6

*Matter of N.Y. Cnty. Lawyers Ass'n v. Dacey*,
  28 A.D.2d 161 (N.Y. App. Div.) .............................................................................................3

*People v. Alfani*,
  125 N.E. 671 (N.Y. 1919).......................................................................................................2

*Matter of Rowe*,
  604 N.E.2d 728 (N.Y. 1992)....................................................................................................3

*Spiegel v. Ahearn*,
  No. 101251/2016, 2018 WL 4743366 (N.Y. Sup. Ct. Oct. 2, 2018) ........................................3

*Spivak v. Sachs*,
  211 N.E.2d 329 (N.Y. 1965)...................................................................................................2

*State v Winder*,
  42 A.D.2d 1039 (N.Y. App. Div. 1973) ..................................................................................3

*Sussman v Grado*,
  746 N.Y.S.2d 548 (N.Y. Dist. Ct. 2002)..................................................................................3

**STATUTES - OTHER**

N.Y. Jud. Law §§ 476-a, 478, 484, 485, 485-a, 750, 753..............................................................2

N.Y. Jud. Law § 485 .......................................................................................................................5

N.Y. Jud. Law § 485-a....................................................................................................................5

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

N.Y. Penal Law § 20.00 ............................................................................................................. 2, 5

**CONSTITUTIONAL PROVISIONS**

First Amendment .................................................................................................................. 1, 7, 8

**OTHER AUTHORITIES**

Benjamin H. Barton, *The Lawyers' Monopoly—What Goes and What Stays*, 82
    Fordham L. Rev. 3067, 3089 (2014) ........................................................................................ 7

Brief of LegalZoom.com, Inc. et al. as Amici Curiae in Support of Respondent,
    *N.C. State Bd. of Dental Exam'rs v. F.T.C.*,
    No. 13-534, 2014 WL 3895926, at *20 (U.S. Aug. 6, 2014) .................................................... 7

Deborah L. Rhode & Lucy Buford Ricca, *Protecting the Profession or the
    Public? Rethinking Unauthorized-Practice Enforcement*, 82 Fordham L. Rev.
    2587, 2604 (2014) .................................................................................................................... 6

Elizabeth Chambliss, *Evidence-Based Lawyer Regulation*, 97 Wash. U. L. Rev.
    297, 321 (2019) ........................................................................................................................ 6

Gillian K. Hadfield & Deborah L. Rhode, *How to Regulate Legal Services to
    Promote Access, Innovation, and the Quality of Lawyering*, 67 Hastings L.J.
    1191, 1217 n. 88 (2016) ........................................................................................................... 7

Leslie C. Levin, *The Monopoly Myth and Other Tales About the Superiority of
    Lawyers*, 82 Fordham L. Rev. 2611, 2615 (2014) .................................................................. 6

National Center for Access to Justice, *"Unauthorized Practice of Law"
    Enforcement in California: Protection or Protectionism?* 3-4 (2022) ................................... 6

National Center for Access to Justice, *"Working with Your Hands Tied Behind
    Your Back": Non-Lawyer Perspectives on Legal Empowerment* 12–14 (2021) .................... 7

Renee Newman Knake, *Democratizing the Delivery of Legal Services*, 73 Ohio
    St. L.J. 1, 8, 10–11 (2012) ....................................................................................................... 7

I.  **INTEREST OF *AMICI CURIAE***

*Amici curiae* are law professors who research and write about access to justice and the regulation of the legal profession. They share a common interest in improving access to legal assistance for low- and moderate-income people facing debt collection actions. *Amici* are especially interested in this case because it presents an important question about whether laws prohibiting the "unauthorized practice of law" infringe upon nonlawyers' political expression and collective activity to obtain meaningful access to the courts. A full list of *amici* is attached as Appendix A.

II.  **INTRODUCTION AND SUMMARY OF THE ARGUMENT**

This lawsuit squarely presents justiciable First Amendment questions because Plaintiffs' intended conduct could expose them to criminal prosecution under New York's rules governing the unauthorized practice of law. New York law prohibits nonlawyers from engaging in the practice of law even when it is plain that they are not members of the bar. The definition of the "practice of law" is broad, including not only courtroom advocacy and the drafting of legal documents but also the provision of "legal advice," which means advice about how to respond to a specific legal problem based on a particular set of facts. Plaintiffs' intended conduct would violate these rules because Plaintiffs seek to train nonlawyers to provide individualized advice about whether and how to respond to a debt collection lawsuit or to serve as a nonlawyer adviser to provide such advice. Under the New York framework, such advice constitutes "legal advice" even when it is free and simple. Indeed, under this standard, nonlawyers likely give casual "legal advice" to friends and neighbors on a regular basis without even knowing it.

In the view of *amici*, this statutory scheme raises justiciable First Amendment questions. The threat of enforcement against individuals and organizations like Plaintiffs, coupled with the breadth of prohibited activity, creates a chilling effect that paralyzes civil rights organizations

1

seeking to assist low- and moderate- income people facing debt collection actions, thereby serving as a systemic barrier to their ability to obtain meaningful access to the courts.

## III.   ARGUMENT

### A.   New York law prohibits nonlawyers from providing individualized legal advice, even when the advice is simple and free.

New York law prohibits nonlawyers from engaging in the unauthorized "practice of law." *See* N.Y. Jud. Law §§ 476-a, 478, 484, 485, 485-a, 750, 753 (proscribing the unauthorized practice of law and providing for the enforcement of this prohibition); *see also* N.Y. Penal Law § 20.00 (imposing criminal liability for "solicit[ing], request[ing] . . . or intentionally aid[ing]" in unlawful conduct).

"It has long been the law in New York that the practice of law includes giving legal advice." *In re Nat'l Legal Prof'l Assocs. (NLPA)*, No. 1:08-MC-101 (NAM/DRH), 2010 WL 624045, at *15 (N.D.N.Y. Feb. 18, 2010); *see also Carter v. Flaherty*, 37 Misc. 3d 46, 48 (N.Y. App. Term 2012) ("A person is practicing law when he or she gives legal advice"); *El Gemayel v. Seaman*, 533 N.E.2d 245, 248 (N.Y. 1988) ("The 'practice' of law reserved to duly licensed New York attorneys includes the rendering of legal advice . . . ."); *Spivak v. Sachs*, 211 N.E.2d 329, 330 (N.Y. 1965) (noting that "the practice of law" in New York "includes legal advice and counsel"); *People v. Alfani*, 125 N.E. 671, 673 (N.Y. 1919) (observing that the practice of law includes "all advice to clients and all action taken for them in matters connected with the law"). "Legal advice" means the provision of individualized advice based on the facts of a client's case. *See El Gemayel*, 72 N.Y.2d at 706.

Courts have distinguished such advice from providing legal information or education to a general audience. For instance, New York courts have held that publishing a book about how to avoid probate, or an article about the legal rights of psychiatric patients, are not "the practice of

2

law" because they do not involve individualized advice to a particular client. *See Matter of N.Y. Cnty. Lawyers Ass'n v. Dacey*, 28 A.D.2d 161, 174 (N.Y. App. Div.) (Stevens, J., dissenting) (book was not the practice of law because there was "no personal contact or relationship with a particular individual"), *rev'd on dissenting opinion*, 234 N.E.2d 459 (N.Y. 1967); *Matter of Rowe*, 604 N.E.2d 728, 731 (N.Y. 1992) (similar for article).

In contrast, courts have taken the broad view that providing *any* individualized advice of a legal nature, even if the advice is informal, amounts to the practice of law. In *Sussman v Grado*, 746 N.Y.S.2d 548, 552–53 (N.Y. Dist. Ct. 2002), for example, the court held that a paralegal who used independent judgment to help a client fill out a form, without the supervision of an attorney, had engaged in the unauthorized practice of law. By giving advice on a specific problem, the paralegal "crossed the line between filling out forms and engaging in the practice of law." *Id.* at 552. Similarly, in *State v Winder*, 42 A.D.2d 1039, 1040 (N.Y. App. Div. 1973), the court held that even though the sale of a do-it-yourself divorce kit with forms and instructions was not itself the practice of law, providing advice particular to the purchaser's case was. And, in *Spiegel v. Ahearn*, No. 101251/2016, 2018 WL 4743366, at *4 (N.Y. Sup. Ct. Oct. 2, 2018), the court held that a nonlawyer had engaged in the unauthorized practice of law "by discussing Defendants' legal problems with them and advising them what they needed to do to resolve those problems."

In short, providing individualized advice about how to address a specific legal problem constitutes "legal advice" under New York's unauthorized practice of law rules, without regard to how narrow or straightforward the advice is, or whether it is free.

### B. Plaintiffs' program would constitute the unauthorized practice of law and could expose Plaintiffs to criminal prosecution.

Based on *amici*'s understanding of Plaintiffs' "Justice Advocates" program, Plaintiffs' intended conduct constitutes the provision of legal advice under New York law. As the Complaint explains, Plaintiffs seek to train nonlawyer Justice Advocates, or to serve as a nonlawyer Justice Advocate, to provide individualized advice to clients about whether and how to respond to a debt collection lawsuit based on the specific facts of the client's case. *See* Complaint, ECF No. 1, ¶¶ 55–87; *see also* AJM Justice Advocate Training Guide ("Training Guide"), Complaint, Ex. B., ECF No. 1-2. Specifically, Plaintiffs would train Justice Advocates to meet with individual clients to:

> (1) determine whether the client could benefit from their advice; (2) confirm the limited scope of representation with the client; (3) advise the client whether it is in their best interest to answer the lawsuit against them; (4) advise the client on how to fill out the answer based on the client's answers to a series of straightforward questions; and (5) advise the client on how and where to file and serve the answer.

Complaint, ECF No. 1, ¶ 62.

Plaintiffs' Training Guide includes specific guidance for Justice Advocates about how to fill out each section of New York's answer form for debt collection defendants (*see* Complaint, Ex. A, ECF No. 1-1), including guidance about the required elements of possible legal defenses. *See* Training Guide, Complaint, Ex. B., ECF No. 1-2, at 6–11. If it is unclear whether an individual client is entitled to assert a particular defense, the Training Guide instructs Justice Advocates to apply their "best judgment" based on the information that the client provides, to "err on the side of telling the client to check the box to make sure they don't lose the opportunity to raise that defense," and to "advise the client to determine whether they have any documents or other information they can use to back up their claim." Training Guide, Complaint, Ex. B, at 6.

By providing such individualized advice about whether and how to respond to a debt collection action, Plaintiffs would violate New York's prohibition on the unauthorized practice of law, exposing Plaintiffs to criminal prosecution. *See* N.Y. Jud. Law § 485 (making the unauthorized practice of law a misdemeanor); N.Y. Jud. Law § 485-a (making some types of violations a class E felony); *see also* N.Y. Penal Law § 20.00 (imposing criminal liability for "solicit[ing], request[ing] . . . or intentionally aid[ing]" in unlawful conduct). The experts who reviewed and endorsed the Training Guide also could be prosecuted for assisting in the unauthorized practice of law if they were viewed as endorsing the unauthorized practice of law by Plaintiffs.  Unsurprisingly, those experts have expressly distanced themselves from statements in the Training Guide suggesting that Justice Advocates in Plaintiffs' program may or will provide legal advice. *See* Declaration of Tashi Lhewa, ECF No. 7-5, ¶ 10 ("To the extent that the Training Guide and attached exhibits include statements that the Justice Advocate may provide or is or will be providing 'legal advice,' I do not endorse such statements."); Declaration of Pamela Foohey, ECF No. 7-6, ¶ 11 ("In part because I want to avoid any possibility of liability under rules governing the unauthorized practice of law, my review of and endorsement of the Training Guide is limited to the accuracy of the substantive information about asserting affirmative defenses in responding to debt collection lawsuits. To be clear: I do not endorse any statements in the Training Guide and attached exhibits that the Justice Advocate may provide or is or will be providing legal advice.").

C. **Exposure to criminal prosecution prevents Plaintiffs from offering legal advice and serves as a systemic barrier to accessing justice, even absent formal enforcement.**

One might speculate that Plaintiffs are not likely to be criminally prosecuted for the unauthorized practice of law under these specific circumstances. The justifications for prosecution are strongest where providers misrepresent their credentials or there is risk of serious

5

harm to consumers—neither of which is an issue in the carefully tailored program that Plaintiffs have designed.

But courts have not limited the unauthorized practice of law doctrine to cases involving misrepresentation or the risk of consumer harm. A 2014 national survey of unauthorized practice of law enforcement found that, in 75 percent of cases involving nonlawyer providers, courts did not even consider the issue of consumer harm. *See* Deborah L. Rhode & Lucy Buford Ricca, *Protecting the Profession or the Public? Rethinking Unauthorized-Practice Enforcement*, 82 Fordham L. Rev. 2587, 2604 (2014); *see also* Elizabeth Chambliss, *Evidence-Based Lawyer Regulation*, 97 Wash. U. L. Rev. 297, 321 (2019) (arguing that "existing research does not support the breadth of lawyers' monopoly" over basic legal assistance); Leslie C. Levin, *The Monopoly Myth and Other Tales About the Superiority of Lawyers*, 82 Fordham L. Rev. 2611, 2615 (2014) ("[T]here is little evidence that lawyers are more effective at providing certain legal services or more ethical than qualified nonlawyers[.]"). In the for-profit context, courts have endorsed vigorous enforcement against (even defunct) nonlawyer providers, explicitly repudiating the need to produce evidence of actual consumer harm. *See, e.g.*, *Fla. Bar v. TIKD Servs. LLC*, 326 So. 3d 1073, 1082 (Fla. 2021) ("There is . . . no requirement in cases involving the unlicensed or unauthorized practice of law that the Bar produce evidence of actual harm to the public . . . .").

Regulators also use the threat of enforcement to shut down legal assistance by nonlawyers. For example, regulators have opened investigations and issued cease-and-desist letters that are not accessible to the public. *See* National Center for Access to Justice, *"Unauthorized Practice of Law" Enforcement in California: Protection or Protectionism?* 3-4 (2022) (discussing the use of cease-and-desist letters against nonlawyer providers in California);

Gillian K. Hadfield & Deborah L. Rhode, *How to Regulate Legal Services to Promote Access, Innovation, and the Quality of Lawyering*, 67 Hastings L.J. 1191, 1217 n.88 (2016) ("[M]ost regulatory oversight and intervention is carried out by bar committees composed entirely of practicing attorneys who open investigations and send out warnings or cease and desist letters without state court oversight . . . ."). These methods of regulation, which avoid judicial scrutiny, can be strategic in that they allow regulators to evade political and legal accountability for regulation. *See, e.g.*, Brief of LegalZoom.com, Inc. et al. as Amici Curiae in Support of Respondent, *N.C. State Bd. of Dental Exam'rs v. F.T.C.*, No. 13-534, 2014 WL 3895926, at *20 (U.S. Aug. 6, 2014) (describing the North Carolina bar's informal efforts to regulate LegalZoom and noting that the "bar took no direct enforcement action for five years, avoiding judicial review of its action"); *see also* Benjamin H. Barton, *The Lawyers' Monopoly—What Goes and What Stays*, 82 Fordham L. Rev. 3067, 3089 (2014) (noting that "truly aggressive [enforcement] would be likely to draw federal antitrust and congressional attention"); Renee Newman Knake, *Democratizing the Delivery of Legal Services*, 73 Ohio St. L.J. 1, 8, 10–11 (2012) (arguing that current restrictions on nonlawyer assistance are vulnerable to First Amendment challenges).

The mere threat of enforcement can be enough to deter many nonlawyers from engaging in conduct that might be construed as the unauthorized practice of law. *See, e.g.*, National Center for Access to Justice, *"Working with Your Hands Tied Behind Your Back": Non-Lawyer Perspectives on Legal Empowerment* 12–14 (2021) (discussing nonlawyers' frustration and "fear of being 'shut down' or otherwise sanctioned for providing unauthorized legal advice"). Thus, while regulators in practice may avoid politically and legally provocative formal action—such as the prosecution of trained, nonprofit providers in an area of desperate, widespread legal need— the threat of enforcement, coupled with the breadth of prohibited activity, effectively paralyzes

potential providers and the community and civil rights organizations seeking to assist them in expanding public access to basic legal advice. This chilling effect serves as a systemic barrier to civil access to justice and to collective activity that would allow low- and moderate- income individuals to obtain meaningful access to the courts.

### IV.   CONCLUSION

Plaintiffs' proposed activity exposes Plaintiffs to criminal penalties under New York's unauthorized practice of law rules. Even this mere possibility of criminal prosecution precludes any lawful effort to test the de facto boundaries of enforcement. Consequently, this lawsuit squarely raises justiciable First Amendment questions, especially where the enforcement of laws prohibiting the unauthorized practice of law would infringe upon nonlawyers' political expression and collective activity to help underserved groups obtain meaningful access to the courts.

DATED:   March 2, 2022                                Respectfully submitted,


                                                            By: */s/ Richard C. St. John*
                                                                Richard C. St. John
                                                                Richard.StJohn@mto.com

                                                           Munger, Tolles & Olson LLP
                                                           350 South Grand Avenue, 50th Floor
                                                           Los Angeles, CA 90071
                                                           Telephone   (213) 683-9100
                                                           Fax               (213) 687-3702


                                                           David H. Fry (*pro hac vice pending*)
                                                           David.Fry@mto.com
                                                           Andrew T. Nguyen (*pro hac vice pending*)
                                                           Andrew.Nguyen@mto.com

                                                         Munger, Tolles & Olson LLP
                                                         560 Mission Street, 27th Floor
                                                         San Francisco, CA 94105
                                                         Telephone   (415) 512-4000
                                                         Fax               (415) 512-4077

                                                         Attorneys for *Amici Curiae*
                                                         Law Professors (named in Appendix A)

9

# APPENDIX A[1]

**Richard L. Abel**, Connell Distinguished Professor of Law Emeritus and Distinguished Research Professor, UCLA School of Law

**Benjamin Barton**, Helen and Charles Lockett Distinguished Professor of Law, University of Tennessee College of Law

**Raymond Brescia**, Hon. Harold R. Tyler Chair in Law and Technology, Albany Law School

**Anna Carpenter**, Professor of Law, S.J. Quinney College of Law

**Elizabeth Chambliss**, Henry Harman Edens Professor of Law, University of South Carolina School of Law

**Benjamin P. Cooper**, Frank Montague, Jr. Professor of Legal Studies and Professionalism, University of Mississippi School of Law

**Scott Cummings**, Robert Henigson Professor of Legal Ethics, UCLA School of Law

**Nora Freeman Engstrom**, Ernest W. McFarland Professor of Law, Stanford Law School

**D. James Greiner**, The Honorable S. William Green Professor of Public Law, Harvard Law School

**Gillian Hadfield**, Schwartz Reisman Chair in Technology and Society, University of Toronto Faculty of Law

**William D. Henderson**, Professor and Stephen F. Burns Chair on the Legal Profession, Indiana University Maurer School of Law

**Sung Hui Kim**, Professor of Law, UCLA School of Law

**Renee Knake Jefferson**, Professor of Law and the Joanne and Larry Doherty Chair in Legal Ethics, University of Houston Law Center

**David Luban**, Professor of Law, Georgetown University Law Center

**Peter S. Margulies**, Professor of Law, Roger Williams University School of Law

**Martha Minow**, 300th Anniversary University Professor, Harvard University

---

[1] *Amici* sign this brief on their own behalf, not on behalf of the institutions with which they are affiliated. Institutional affiliations are provided for identification purposes only. *Amici* are listed in alphabetical order by last name.

**Russell G. Pearce**, Professor of Law and Edward & Marilyn Bellet Chair in Legal Ethics, Morality, and Religion, Fordham University School of Law

**Victor D. Quintanilla**, Professor of Law and Van Nolan Faculty Fellow, Indiana University Maurer School of Law

**Daniel B. Rodriguez**, Harold Washington Professor, Northwestern University Pritzker School of Law

**Tanina Rostain**, Professor of Law, Georgetown University Law Center

**Colleen F. Shanahan**, Clinical Professor of Law, Columbia Law School

**Abbe Smith**, Scott K. Ginsburg Professor of Law, Georgetown University Law Center

**Lauren Sudeall**, Associate Professor and Faculty Director, Center for Access to Justice, Georgia State University College of Law

**Eli Wald**, Charles W. Delaney Jr. Professor of Law, University of Denver Sturm College of Law

**W. Bradley Wendel**, Edwin H. Woodruff Professor of Law, Cornell Law School