UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UPSOLVE, INC., and
REV. JOHN UDO-OKON,

                  Plaintiffs,

    -against-

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

              Defendant.

No. 1:22-cv-00627-PAC

**BRIEF OF *AMICI CURIAE* CONSUMER LAW EXPERTS, CIVIL LEGAL SERVICES ORGANIZATIONS, AND CIVIL RIGHTS ORGANIZATIONS IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL
600 Fifth Avenue, 10th Floor
New York, New York 10020

*Counsel for Advocate Amici*

TABLE OF CONTENTS

**PAGE NO(s)**:

TABLE OF AUTHORITIES ...............................................................................ii-iii

I.      INTERESTS OF AMICI CURIAE..............................................................1

II.     SUMMARY OF ARGUMENT ...................................................................2

III.    BACKGROUND .........................................................................................2

        A       A Wide Array of Free Legal Services is Available to Low-Income New Yorkers
                from Organizations Staffed by Experienced Attorneys and Closely Supervised
                Non-Attorneys....................................................................................5

        B.      Advocate Amici's Extensive Experience with Consumer Debt Collection
                Lawsuits Informs Their Perspective on Unmet Needs ...........................9

                i.       Debt Collection is a Matter of Racial Justice............................10

                ii.      In Advocate Amici's Experience, Sewer Service, not Lack of Legal
                         Representation, Is the Primary Cause of Default Judgments....................11

                iii.     Debt Collection Cases Can Be Complex and Legally Challenging...........13

        C.      Advocate Amici Have a Long Track Record of Effecting Debt Collection Reforms
                to Increase Consumer Protections, Due Process, and Access to Justice for Low-
                Income New Yorkers ..........................................................................15

IV.     ARGUMENT: PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM OR BENEFIT
        TO THE PUBLIC INTEREST ...................................................................18

        A.      Denying Plaintiffs' Motion Would Not Cause Irreparable Harm ...........19

        B.      Awarding an Injunction Would Not Be in the Public Interest ................19

IV.     CONCLUSION.............................................................................................21

APPENDIX

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE NO(s):</u>

**Cases**

*Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*,
    875 F.3d 128 (2d Cir. 2017)........................................................................ 17, 18

*Barr v. Department of Consumer Affairs*,
    (70 N.Y.2d 821 (1987)............................................................................... 13

*Burks et al. v. Gotham Process et al.*,
    20 Civ. 1001 (E.D.N.Y. 2020)................................................................... 12, 17

*Dupres v. Houslanger*,
    19 Civ. 6691 (E.D.N.Y. 2019)................................................................... 12, 17

*Eric M. Berman, P.C. v. City of N.Y.*,
    25 N.Y.3d 684, 16 N.Y.S.3d 25 ( 2015).................................................. 18

*Eric M. Berman, P.C. v. City of N.Y.*,
    796 F.3d 171 (2d Cir. 2015)..................................................................... 18

*Kuhne v. Cohen & Slamowitz*, LLP,
    579 F.3d 189 (2d Cir. 2009)..................................................................... 18

*Mayfield v. Asta Funding, Inc.*,
    95 F.Supp. 3d 685 (S.D.N.Y. 2015)........................................................ 17

*McCrobie v. Palisades, et al.*,
    1:15-CV-00018 ......................................................................................... 12

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
    883 F.3d 32 (2d Cir. 2018)....................................................................... 19

*New York ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015)..................................................................... 19

*Philemon et al. v. Aries Capital Partners, Inc. et al.*,
    18-cv-1927(CLP) (E.D.N.Y. 2018) ......................................................... 17

*Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 901 N.Y.S.2d 575 (2010) ................ 18

*Portfolio Recovery Assocs., LLC v. Lall*, 127 A.D.3d 576, 8 N.Y.S.3d 101 (1st Dep't 2015) ..... 18

*Scott v. Greenberg et al.*,
    2017 WL 1214441 (E.D.N.Y. 2017)........................................................ 17

*Sykes v. Mel Harris & Assoc., LLC*,
     No. 09-CV-8486 (DC), 2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24, 2016). ......... 17

*Sykes v. Mel Harris*,
     No. 09-CV-8486 (DC) (S.D.N.Y.).............................................................................. 12, 17

**Statutes**

16 C.F.R. § 433.2 ..................................................................................................................... 15

C.P.L.R. § 3215(a) ................................................................................................................... 12

Gen. Bus. §198-a...................................................................................................................... 14

N.Y. C.P.L.R. 5205 *et seq.*...................................................................................................... 16

N.Y. Judiciary Law § 478(2) .................................................................................................... 8

N.Y.C. Admin Code §§ 20-403-409 ....................................................................................... 16

New York's Personal Property Law § 302(9)......................................................................... 15

Uniform Civil Rules For The New York City Civil Court Section 208.14-a. ............................. 16

## I.  INTERESTS OF AMICI CURIAE

*Amici curiae* are civil legal services and civil rights organizations, consumer law and access-to-justice experts, and law school-based programs and centers located in New York City and elsewhere in New York State ("Advocate Amici").[1] Advocate Amici share the common goal of promoting economic justice in New York's low-income communities and communities of color, including by helping the people in those communities defend themselves against abusive debt collection and other financial abuses.

Collectively, Advocate Amici have many decades of experience with debt collectors' litigation practices and related access-to-justice issues and provide the vast majority of the free civil legal services that are available to New York City's low- and moderate-income residents in the area of consumer law. These free legal services range from limited-scope legal assistance—including legal advice and assistance preparing *pro se* papers—to full representation in consumer debt collection lawsuits and affirmative litigation. Acutely aware of the vast "justice" gap in civil legal services for consumer debt collection lawsuits, Advocate Amici also have drawn on their extensive practical experience to lead access-to-justice innovations in consumer debt defense since the mid-2000s, frequently in partnership with the New York State courts. As access-to-justice innovators, social justice advocates, and consumer law experts who work in and with New York's low-income communities and communities of color, Advocate Amici have a

---

[1] Advocates Amici consist of the following organizations: Asian American Legal Defense and Education Fund, Brooklyn Bar Association Volunteer Lawyers Project, CAMBA Legal Services, District Council 37 Municipal Employees Legal Services, Fordham Law School Feerick Center for Social Justice, Legal Assistance of Western New York, Legal Services of the Hudson Valley, Legal Services NYC, Mobilization for Justice, New Economy Project, New York Legal Assistance Group, Northern Manhattan Improvement Corporation, Queens Volunteer Lawyers Project, TakeRoot Justice, The Western New York Law Center, and Volunteers of Legal Service. Advocate Amici's organizational statements are attached as an Appendix to this brief.

substantial interest in ensuring that any proposed access-to-justice models do not risk causing undue harm to unrepresented low-income New Yorkers facing consumer debt collection litigation. Advocate Amici submit this brief to explain why granting Plaintiffs' motion for a preliminary injunction is not necessary to prevent irreparable harm and is not in the public interest, and in fact could cause irreparable harm to low-income New Yorkers.

## II.    SUMMARY OF ARGUMENT

Advocate Amici submit this brief in opposition to Plaintiffs' motion for a preliminary injunction. Advocate Amici disagree with Plaintiffs' claims that the "justice" gap with respect to consumer debt collection lawsuits would be largely resolved by training non-attorney "Justice Advocates" to provide legal advice to unrepresented New Yorkers and help them prepare *pro se* answers to consumer debt collection lawsuits, including those filed in New York City Civil Court; and that Plaintiffs' proposed model would reduce the rate of default judgments entered in such cases. Given their many decades of experience with consumer debt collection lawsuits filed in New York City Civil Court, Advocate Amici seek to provide the Court with accurate information concerning the array of free legal services that have long served low-income New York City residents in this practice area and the complexities that often underlie consumer debt collection lawsuits.

## III.    BACKGROUND

Plaintiffs, who are non-attorneys, seek an exemption on First Amendment grounds from New York's unauthorized practice of law rules, claiming that if Plaintiffs are unable to dispense legal advice, New Yorkers "will likely receive no advice at all, default in their debt collection lawsuits, and face the risk of being wrongfully deprived of their property and the risk of harmful and long-lasting follow-on consequences." (Compl. ¶ 5.) Specifically, Plaintiffs seek a

preliminary injunction to allow non-attorney "Justice Advocates" to provide "non-misleading, and free legal advice" as part of Plaintiff Upsolve's American Justice Movement (AJM), using AJM's Training Guide (Compl. ¶¶ 57, 64; Preliminary Inj. Br. at 2), claiming that irreparable harm will result if they are not allowed to do so. (Preliminary Inj. Br. at 20.)

Plaintiffs also claim that the reason "the large majority of low-income New Yorkers fail to respond to debt collection actions, or fail to do so accurately, and accordingly face default judgments" is that "the vast majority of debt collection defendants in New York lack legal representation." (Compl. ¶ 28.) Nevertheless, Plaintiffs cite declarations from three New Yorkers who appear to have had default judgments entered against them *not* because they knew they needed to respond to a debt collection lawsuit and could not secure legal representation, but because they were not served with court papers, and learned of the lawsuits only after the default judgments had already been entered. (Compl. ¶ 25; Ex. 5, 6, and 7 to Silbert Decl. (Decl. of William Evertsen ¶ 12; Decl. of Liz Jurado ¶ 18; Decl. of Christopher Lepre ¶ 9).) As discussed below, in Advocate Amici's experience, improper service, or "sewer service," is the leading reason why low-income New Yorkers face default judgments, *not* the lack of availability of legal representation. Moreover, contrary to Plaintiffs' unsupported claim that "[a]ttorneys who provide free or low-cost services to debt collection defendants are frequently overloaded and often cannot provide enough assistance on the quick timeline on which such suits proceed" (Compl.¶ 46), many low-income New Yorkers are able to proceed *pro se* in debt collection lawsuits, aided by the free, limited-scope legal assistance available through Advocate Amici and other legal services organizations throughout New York, as discussed below.

Plaintiffs also claim that the simplistic nature of the state court form for answering a consumer debt collection lawsuit means that a non-attorney volunteer armed only with Upsolve's

Training Guide[2] could provide adequate legal advice to defendants in consumer debt collection lawsuits in New York City Civil Court.[3] (Compl. ¶¶ 34-36.) However, as discussed below, this relatively simple court answer form belies the complex issues that often underlie a consumer debt collection lawsuit.[4]

Plaintiffs and Plaintiff Amici point to non-attorney models that currently exist in other contexts, including "licensing regimes" in Arizona and Utah for "legal paraprofessionals" (Compl. ¶ 75); "accredited representatives" in federal administration forums (*id.*); "certification of volunteers" who help Medicaid applicants and experienced "registered representatives" who provide assistance at state administrative agencies (NCAJ Br. at 10-11); "trained and specialized" non-lawyers who handle issues that "do not raise complex questions of substantive law" (Sandefur Br. at 11); and "limited-license legal technicians" in Washington and "certified legal preparers" in Arizona and California (*id.*). However, as discussed below, Plaintiffs' proposed model stands in stark contrast to these non-attorney regimes, which are all subject to oversight and regulation that aim to ensure standards and protect the public.

---

[2] Problematically, the Training Guide adopts a one-size-fits-all model of advice that ignores potential claims and defenses available to the consumer, including advising consumers who may not have been served yet to file an answer, at the risk of waiving jurisdiction defenses, and advising consumers using oversimplified calculations of statutes of limitations, among other problems.

[3] Two of the three New Yorkers cited in Plaintiff's complaint (Lepre and Jurado) would not have benefitted from Plaintiffs' proposed program, because the cases against them were filed in courts in Long Island, not New York City Civil Court. *Americredit Financial Services Inc, DBA GM Financial v. Christopher Lepre*, 16 CV 002270 (Nassau Cnty Dist. Ct., 1st Dist.); *Suffolk Anesthesiology Assoc., P.C. v. Liz Jurado*, 10 CV 005874 (Suffolk Cnty Dist. Ct, 4th Dist.).

[4] This answer form is the result of one of the many efforts of Advocate Amici to increase access to justice for low-income New Yorkers, by making it easier for *pro se* litigants, legal services attorneys, and trained and supervised non-attorney paralegals and law students to prepare responses to consumer debt collection lawsuits.

A.    **A Wide Array of Free Legal Services is Available to Low-Income New Yorkers from Organizations Staffed by Experienced Attorneys and Closely Supervised Non-Attorneys**

Plaintiffs and Plaintiff Amici would have the Court believe that there is almost a complete dearth of free legal services available to low-income New Yorkers sued on consumer debt.[5] Though Advocate Amici agree—and lament—that there are not enough legal services attorneys to provide free legal representation or assistance to every low-income New Yorker sued by a debt collector, there are many more legal services attorneys in New York City, and a much wider range of free legal services, than Plaintiffs and Plaintiff Amici suggest. In providing these free legal services, Advocate Amici utilize non-attorney staff and non-attorney volunteers to great effect, as discussed below.

Advocate Amici include many large legal services organizations that routinely provide a full range of free legal assistance—from advice and *pro se* assistance to full representation—to New Yorkers sued in debt collection cases filed in New York City Civil Court.[6] These organizations include CAMBA Legal Services, District Council 37 Municipal Employees Legal Services, Legal Services NYC, Mobilization for Justice, New York Legal Assistance Group, and TakeRoot Justice, among others. New Yorkers find or access these Advocate Amici organizations through a variety of methods, including the internet, lawhelp.org, telephone

---

[5] *See*, *e.g.*, NCAJ brief at 3 ("[R]epresentation from a licensed attorney is not a viable option because attorneys are seldom available to these communities and unaffordable when they are"); Sandefur Brief at 10 ("[T]here is simply not sufficient legal aid and *pro bono* representation available for individuals in these sorts of state court proceedings.").

[6] Among the Advocate Amici are also organizations that provide free legal assistance on consumer debt collection lawsuits outside of New York City, including Legal Assistance of Western New York, Legal Services of the Hudson Valley, and the Western New York Law Center.

hotlines, and the New York City Consumer Help Finder,[7] as well as through referrals from New York City Civil Court clerks, court attorneys, and judges; local elected officials; New York City's 311 telephone operators; community-based organizations in all five boroughs of New York City; domestic violence shelters; other nonprofit organizations; word of mouth; bar associations; and the private bar.

Advocate Amici also include a robust array of limited-scope legal assistance providers that help New Yorkers to proceed *pro se* in debt collection lawsuits—most notably the Civil Legal Advice and Resource Office (CLARO) and the Volunteer Lawyer for a Day Program.[8]

CLARO, which is organized through the New York State Courts Access to Justice Program, provides free limited-scope legal assistance to New Yorkers facing consumer debt lawsuits, regardless of income. CLARO's model deploys volunteer attorneys—trained and closely supervised by consumer law experts—who help New Yorkers by reviewing their case files, preparing court papers, explaining the court process, and giving advice on related consumer debt issues, including relevant consumer protections under federal, state, and local law. CLARO also utilizes law student and other non-attorney volunteers who assist the volunteer attorneys and consumer law experts by conducting preliminary intakes, making copies of documents, and providing interpretation for *pro se* litigants with limited English proficiency. New York City's CLARO programs operate in all five boroughs, through the auspices of the New York City Civil

---

[7] *Available at*:
https://nycoi.legalserver.org/modules/matter/extern_intake.php?pid=129&h=daa817.

[8] Thousands of New Yorkers access these and other limited-scope legal services every year, but because they are still proceeding *pro se*, the NYS courts' online case database (https://iapps.courts.state.ny.us/webcivil/ecourtsMain) does not record an attorney of record and therefore does not reflect the fact that these litigants receive limited-scope legal assistance.

Court and in partnership with bar associations, academic institutions, and legal services organizations.[9] Court-supported CLARO programs also operate in Westchester and Western New York. Collectively, the various CLARO programs serve thousands of New Yorkers every year.

The Volunteer Lawyer for the Day Program (VLFD), which also operates under the auspices of and with funding from the New York State courts, is a free resource for limited-scope legal representation that is available to *pro se* defendants who would like assistance at a court appearance in a debt collection lawsuit proceeding in New York City Civil Court. The New York Legal Assistance Group, one of the Advocate Amici, operates VLFD in Bronx, Queens, and Richmond County Civil Court, and Brooklyn Volunteer Lawyers Project, also one of the Advocate Amici, operates VLFD in Kings County Civil Court; the New York County Lawyers Association operates VLFD in New York County Civil Court. Regardless of income, *pro se* litigants with a scheduled court appearance are able to retain the free services of a VLFD attorney solely for that court appearance. VLFD also employs law student and other non-attorney volunteers to help conduct intakes and appear on behalf of the litigant under a court practice

---

[9] Because the New York State Unified Court System suspended in-person volunteer attorney programs due to the COVID-19 crisis (*see* http://ww2.nycourts.gov/office-justice-initiatives-home-27171), the CLARO programs were necessarily scaled back during the pandemic. However, the CLARO programs coordinated by Advocate Amici transitioned to virtual/remote models through which they continued to provide legal services to New Yorkers with consumer debt matters. Brooklyn Bar Association Volunteer Lawyers Project and Queens Volunteer Lawyers Project transitioned the Brooklyn and Queens CLARO programs from in-person clinics to virtual/remote models. In the summer of 2020, the Fordham Law School Feerick Center for Social Justice began to design, pilot, and implement its Remote CLARO Program, which has provided limited-scope services telephonically to unrepresented litigants. During the pandemic, Westchester CLARO, coordinated by Legal Services of Hudson Valley, has been providing limited-scope services to unrepresented defendants telephonically, and by emailing or mailing court documents.

7

order. VLFD's limited-scope legal representation serves as a resource for thousands of New

Yorkers every year.

Another notable provider of free limited-scope legal assistance in New York City is the

NYC Financial Justice Hotline, operated by New Economy Project, one of the Advocate Amici.

Through this telephone hotline, experienced attorneys, as well as trained and closely supervised

non-attorney staff and law student interns, routinely prepare answers and other *pro se* court

documents for low-income New York City residents sued by debt collectors, and provide legal

advice and information on the court process and relevant consumer protections. The hotline,

which people may also contact through an online intake form, has helped thousands of low-

income New Yorkers since its inception in 2005.

All of the Advocate Amici organizations that provide legal assistance staff their

consumer law practices with both attorneys and non-attorneys, including paralegals, law students

and law graduates, who are intensively trained and closely supervised by attorneys in accordance

with N.Y. Judiciary Law § 478(2). These Advocate Amici maintain secure case-management

systems and procedures for conducting intakes, storing client documents, and maintaining

confidentiality. They employ staff who can communicate with New Yorkers in their native

language, and have access to interpretation services. Attorneys, non-attorney staff, and attorney

and non-attorney volunteers at Advocate Amici organizations receive continuing legal education

and other training, and have access to litigation-tested document templates, Civil Practice Law

and Rules desk books, New York practice treatises, and electronic legal databases.

Importantly, many of the Advocate Amici organizations rarely, if ever, turn away low-

income New Yorkers who need help responding to debt collection lawsuits filed in New York

City Civil Court. On the rare occasions that any of the Advocate Amici do not have capacity to

provide immediate help to a low-income New Yorker seeking help responding to a debt collection lawsuit, Advocate Amici will refer that New Yorker to each other or to other vetted, free legal resources.

In addition to providing legal *advice*, Advocate Amici have embraced technological and other innovations to help deliver legal *information* to low-income New Yorkers responsibly and accountably. For example, some of the Advocate Amici maintain know-your-rights and other legal information on their organizational websites,[10] and have furnished much of the legal information available in the consumer section of the website LawHelpNY.org, including fact sheets, animated videos that explain the court process in accessible terms, and do-it-yourself forms (*see*, *e.g.*, lawhelpny.org/issues/consumer).[11]

### B.   Advocate Amici's Extensive Experience with Consumer Debt Collection Lawsuits Informs Their Perspective on Unmet Needs

Though Plaintiffs seek a preliminary injunction to be allowed to advise New Yorkers on how to respond to consumer debt collection lawsuits filed in New York City Civil Court, neither Plaintiffs nor Plaintiff Amici appear to have expertise in current debt collection litigation practices in New York City Civil Court. In contrast, most of the Advocate Amici have decades of experience helping low-income New Yorkers with consumer debt collection lawsuits, and have a

---

[10] *See*, *e.g.*, New Economy Project's website, at https://www.neweconomynyc.org/resource/lawsuits/; Mobilization for Justice's website, at https://mobilizationforjustice.org/get-help/fact-sheets-and-self-help-guides/#consumers, and Legal Assistance of Western New York's website, at https://www.lawny.org/node/81/dealing-debt-collectors.

[11] There are also organizations such as Legal Hand that specialize in providing community members with legal information through trained non-lawyers who are supervised by an attorney, with the aim of helping community members prevent a problem they are experiencing from turning into a lawsuit (*see* https://www.legalhand.org/).

longstanding record, as explained in Section C below, of successful joint efforts to meaningfully reform the debt collection industry and debt collection lawsuit process, and to ensure that New Yorkers, especially low-income New Yorkers and New Yorkers of color, receive high-quality legal assistance with consumer debt collection lawsuits.

### i.     Debt Collection is a Matter of Racial Justice

Advocate Amici fervently agree with Plaintiffs and Plaintiffs' Amici that debt collection abuses are a matter of racial justice, as confirmed by the experiences of the populations Advocate Amici serve and as documented in various reports authored by Advocate Amici. *See* The Legal Aid Society, MFY Legal Services (now Mobilization for Justice), Neighborhood Economic Development Advocacy Project (now New Economy Project), and Urban Justice Center (now TakeRoot Justice), *Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers* (May 2010); and New Economy Project, *The Debt Collection Racket in New York: How the Industry Violates Due Process and Perpetuates Economic Inequality* (June 2013).

This country's deep racial wealth gap has made communities of color more susceptible to economic setbacks and to being targeted for predatory financial products.[12] Racial disparities are

---

[12] *See* Shriver Center on Poverty Law's Legal Impact Network, Race Equity at the Core of Consumer Law, 10 (July 2021) ("Across the nation payday lenders, auto-title loan businesses, and other types of high-cost, high-risk loan servicers target Black, Latino/a/x, Indigenous, and other people of color, who have lacked access to traditional financial institutions, and ensnare them in a cycle of debt."), *available at*: https://www.povertylaw.org/wp-content/uploads/2021/07/Consumer_Law_and_Race_report_v5-2.pdf. Black and Latinx communities are also the ones most impacted by the COVID-19 crisis. *Id*. ("In the middle of the pandemic, the majority of Black (60%), Latino/a/x (72%), and Indigenous (55%) households faced severe financial hardship compared to only 36% of white households."). For example, more Black people borrowed against their retirement savings during the pandemic than white people. *Id*. ("14% of Black people under age 35 (compared to 4% of white people) and 22% of

also embedded in credit reports, resulting in more costly credit for people of color.[13] Given this continuum of discriminatory financial practices, it is hardly surprising that Black and Latinx communities are also disproportionately impacted by debt collection abuses.[14] Banks have also long redlined communities of color in New York City, leaving a vacuum filled by predatory, fringe financial services.[15] A two-tiered approach to access to justice—one that immediately relegates Black and Latinx communities to receiving lower-quality legal services from non-attorneys unsupervised by an experienced attorney—would only further entrench the harms of a discriminatory, two-tiered financial system.

  ii.  **In Advocate Amici's Experience, Sewer Service, not Lack of Legal Representation, Is the Primary Cause of Default Judgments**

  Over the past 20 or so years, hundreds of thousands, if not millions, of debt collection lawsuits have been filed against New Yorkers, with a staggering number of those lawsuits

---

Black people over age 55 (compared to 10% of white people) borrow[ed] from or cash[ed] out their retirement savings.").

[13] *See* National Consumer Law Center, *Past Imperfect: How Credit Scores and Other Analytics "Bake in" and Perpetuate Past Discrimination* (May 2016), *available at* https://www.nclc.org/images/pdf/credit_discrimination/Past_Imperfect050616.pdf.

[14] *See* The Pew Charitable Trusts*, How Debt Collectors Are Transforming the Business of State Courts,* 17 (May 2020), *available at* https://www.pewtrusts.org/-/media/assets/2020/06/debt-collectors-to- consumers.pdf.; New Economy Project, *The Debt Collection Racket in New York: How the Industry Violates Due Process and Perpetuates Economic Inequality* (June 2013), *available at* https://www.neweconomynyc.org/wp-content/uploads/2014/08/DebtCollectionRacketUpdated.pdf.

[15] *Hearing on Modern-Day Redlining: the Burden on Underbanked and Excluded Communities in New York Before the Subcomm. on Consumer Protection and Financial Institutions of the H. Comm. on Financial Services*, 116th Cong. (2020) (statement of Jaime Weisberg, Senior Campaign Analyst, Association of Neighborhood and Housing Development, 5-7), *available at* https://www.congress.gov/116/meeting/house/110580/witnesses/HHRG-116-BA15-Wstate-WeisbergJ-20200306.pdf.

resulting in default judgments.[16] In Advocate Amici's experience, the distressingly high rate of

default judgments is largely the result of sewer service.[17] Sewer service—the practice of falsely

claiming to serve litigants with notice of the lawsuit when no notice was ever provided—is a

well-documented phenomenon in debt collection lawsuits filed in New York City Civil Court.[18]

In *Barr v. Department of Consumer Affairs*, the New York State Court of Appeals noted: "Often

associated with consumer debt collection and landlord-tenant litigation, questionable service

practices have their greatest impact on those who are poor and least capable of obtaining relief

from the consequences of an improperly imposed default judgment." (70 N.Y.2d 821, 822-23

(1987)). Plaintiff debt collectors routinely fail to serve New Yorkers with court papers, alleging

service at invalid addresses and/or on non-existent co-tenants or relatives, and easily obtain

default judgments when those New Yorkers do not answer the lawsuits. Though Advocate Amici

---

[16] This estimate is based on the annual number of filings of consumer credit actions in New York City Civil Court and rough estimates of filings across New York State and the rate of default judgments stemming from the failure to file an answer.

[17] Pursuant to C.P.L.R. § 3215(a), an application for a default judgment for a "sum certain," is easily obtained by submitting the requisite documents to the clerk, and is never reviewed by a judge.

[18] Sewer service is a well-documented phenomenon in the New York State Court System. *See Burks et al. v. Gotham Process et al.*, 20 Civ. 1001 (E.D.N.Y. 2020) (class action case complaining of defendants' unfair practices in failing to lawfully serve process); *Dupres v. Houslanger*, 19 Civ. 6691 (E.D.N.Y. 2019) (class action complaining of defendants' unfair practices in litigating and opposing consumers' challenges to motions challenging service of process); *McCrobie v. Palisades, et al.*, 1:15-CV-00018 (class action challenging the unfair practices of enforcing aged judgments obtained through alleged failure to serve process); *Sykes v. Mel Harris*, No. 09-CV-8486(DC) (S.D.N.Y.) (class action alleging improper service in debt collection cases); N.Y. State Off. of the Att'y Gen., The New York State Attorney General Andrew M. Cuomo Announces Guilty Plea Of Process Server Company Owner Who Denied Thousands Of New Yorkers Their Day In Court (Jan. 15, 2010), *available at:* https://ag.ny.gov/press-release/2010/new-york-stateattorney-general-andrew-m-cuomo-announces-guilty-plea-process. *See also* Compl. ¶ 52 (describing past enforcement efforts related to process serving).

and others have sought to address sewer service through regulatory reforms and impact litigation, sewer service persists in debt collection cases, and many New Yorkers find out they were sued only when a default judgment entered against them is enforced, often years after its entry.[19] (*See* Compl. ¶ 25.)

The three New Yorkers whose difficulties Plaintiffs highlight in support of their motion exemplify the sewer service problem, as none of them were served with process and discovered they had been sued only after default judgments had been entered against them. (*See* Compl. ¶ 25.) Their stories also underscore the inadequacy of Plaintiffs' proposed model, because answers prepared by Plaintiffs would not have helped those New Yorkers challenge the default judgments against them; instead, they would have had to file motions to vacate the default judgment, which Advocate Amici routinely help prepare.

### iii.        Debt Collection Cases Can Be Complex and Legally Challenging

Unlike administrative hearings, debt collection lawsuits are adversarial proceedings. Debt buyers and creditors alike are represented by debt collection attorneys who notoriously file cases *en masse* and appear regularly in court, and—particularly in the high-volume consumer credit parts in the New York City Civil Court—often wield outsized influence on case outcomes.

Though debt collection cases typically involve single causes of action, they often implicate multiple areas of law.[20] Debt collection lawsuits filed in the New York City Civil

---

[19] State civil judgments no longer appear in the public records section of credit reports of New Yorkers. *See, e.g.*, National Consumer Law Center, *Big Changes for Credit Reports, Improving Accuracy for Millions of Consumers* (July 27, 2017), *available at*: https://library.nclc.org/big-changes-credit-reports-improving-accuracy-millions-consumers.

[20] For example, one of the New Yorkers whose difficulties Plaintiffs highlight, Christopher Lepre, dealt with an alleged debt arising from a secured auto loan. In New York, secured loans are governed by Article 9 of the UCC. Further, Mr. Lepre stated that his car was a "lemon,"

Court may stem from a variety of alleged debts, such as revolving lines of credit, retail installment sales contracts, personal loans, medical services, student loans, rental arrears, and auto loans, just to name some examples. Different types of debts may be governed by different statutory schemes and present unique legal issues. To identify defenses that are available to a litigant, one must be familiar with multiple New York State statutes, relevant and updated case law, federal law, and even varying practices of individual courts. Moreover, a defendant may have more defenses than are listed on the New York State courts' consumer credit answer form (*see* Pl.'s Mot., Ex. A) or addressed in Upsolve's Training Guide (*see id.*, Ex. B).

A lack of knowledge of court procedures could result in the failure to assert a defense— for example, statute of limitations or lack of personal jurisdiction—or the failure to take the necessary steps to move to dismiss the case based on that defense. Lack of knowledge of court procedures is particularly detrimental because the COVID-19 pandemic caused significant changes to court procedures and systems, many of which continue to change as New York State courts adjust to a model that operates in a hybrid manner, allowing for both in-person and virtual appearances, and electronic filings.[21]

---

Lepre Decl. ¶ 7, which could potentially implicate Gen. Bus. § 198-a, New York State's Lemon Law Statute. Assisting Mr. Lepre in properly asserting all of his defenses would require knowledge of multiple different statutory provisions and require a detailed analysis of the facts and an understanding of how the law would apply to that particular set of facts. Upsolve's Training Guide does not instruct, nor could it instruct, the potential providers of this service on how to conduct the required detailed, factual legal analysis to ensure that litigants not only answer a case but do so properly.

[21] For example, during the height of the COVID-19 pandemic, when virus transmission rates were particularly high, litigants were advised to limit trips to the courthouse and to file documents electronically, where possible. However, in some boroughs, answers could not be filed electronically and therefore had to either be mailed to the court or brought to the court in person for filing. Had a litigant been advised to file an answer electronically that answer never would have been recorded by the court and that litigant could have risked default.

Furthermore, litigants who obtain the type of assistance proposed by Plaintiffs in completing their answer run the risk that a court will not allow those litigants to later amend their answer, even if a mistake was made. Often, unrepresented litigants who have not had access to any type of assistance and completed the answer using the court's self-help forms and their best efforts, are treated more leniently by the court, and their pleadings read more liberally. But if judges consider the litigant to have already had help in drafting an answer—even if that assistance was inadequate because it was provided by someone without an understanding of substantive and procedural law—they will not typically give them a "second bite of the apple."[22]

### C.  Advocate Amici Have a Long Track Record of Effecting Debt Collection Reforms to Increase Consumer Protections, Due Process, and Access to Justice for Low-Income New Yorkers

Drawing on their many years of experience, Advocate Amici have jointly effected numerous legislative, policy, and procedural changes to the benefit of low-income New Yorkers

---

[22] Although New York employs a very liberal standard to amend pleadings, in Advocate Amici's experience many judges question litigants' credibility and deny motions to amend when the court views their proposed amended pleading as somehow contradictory to the original pleading. This happens in cases that involve factual allegations, such as fraud in auto deficiency cases (likely fraud similar to what Mr. Lepre faced). When fraud is committed by the car dealer, often the consumer does not realize they can raise this fraud as an affirmative claim or defense against the plaintiff-creditor. FTC's Holder Rule, 16 C.F.R. § 433.2 also codified by New York's Personal Property Law § 302(9). Furthermore, the burden on consumer defendants to engage in motion practice to file motions to amend answers is substantial: Filing a motion with the court requires time spent finding assistance with the motion, another court date or two, and possibly more missed work, further loss of income, and increased childcare and travel costs.

sued by debt collectors.[23] These changes include the 2009 Exempt Income Protection Act,[24] which automatically protects subsistence funds in New Yorkers' bank accounts from being seized by debt collectors; the 2010 amendments to New York City's rules governing process servers and process serving agencies;[25] the New York State Office of Court Administration's 2014 rules imposing stricter requirements for default judgment applications in consumer credit actions;[26] the Consumer Credit Fairness Act (S153/A2382), effective April and May 2022, which helps level the playing field for unrepresented litigants through certain amendments to New York's civil procedure and judiciary laws; and the Fair Consumer Judgment Interest Act (S5724A/A6474A), effective April 30, 2022, which lowers the interest rate on consumer debt judgments prospectively and retrospectively from nine percent to two percent. These policy initiatives have included collaboration with various legislative and regulatory bodies and stakeholders and have included public comment and discourse.

---

[23] Advocate Amici have also authored and been consulted as experts for numerous reports related to the debt collection industry, including several cited by Plaintiffs and Plaintiff Amici. *See, e.g.*, MFY Legal Services, *Justice Disserved: A Preliminary Analysis of the Exceptionally Low Appearance Rate by Defendants in Lawsuits Filed in the Civil Court of the City of New York* (June 2008); District Council 37 Municipal Employees Legal Services, *Where's the Proof: When Debt Buyers are Asked to Substantiate Their Claims in Collection Lawsuits Against NYC Employees and Retirees, They Don't* (Dec. 2009); The Legal Aid Society *et al.*, *Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers* (May 2010); New Economy Project, *The Debt Collection Racket in New York: How the Industry Violates Due Process and Perpetuates Economic Inequality* (June 2013); Chris Albin-Lackey, *Rubber Stamp Justice: US Courts, Debt Buying Corporations, and the Poor* (Human Rights Watch, Jan. 2016). These reports lay out systemic problems rooted in the very nature of the debt collection lawsuit model, including lack of notice and due process and have served to raise awareness of those problems and instigated various reforms.

[24] N.Y. C.P.L.R. 5205 *et seq.*

[25] N.Y.C. Admin Code §§ 20-403-409.

[26] Uniform Civil Rules For The New York City Civil Court Section 208.14-a.

Advocate Amici also bring impact litigation to address fundamental due process issues with regard to debt collection lawsuits. One of these impact litigation lawsuits, *Sykes v. Mel Harris*, No. 09-CV-8486(DC) (S.D.N.Y.), alleged that a ring of debt buyers, debt collection lawyers, and process servers obtained default judgments against New Yorkers through fraudulent affidavits of service and merit, and resulted in a groundbreaking $59 million settlement for New Yorkers, the elimination of over 350,000 alleged debts, and the mass vacatur of over 200,000 default judgments. *Sykes v. Mel Harris & Assoc., LLC*, No. 09-CV-8486 (DC), 2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24, 2016) (approving class action settlement). Advocate Amici have filed several cases and secured many other critical court decisions relating to predatory lending, debt collection abuses, and sewer service.[27]

Advocate Amici have also submitted amicus briefs, as in the instant case, to provide courts with the perspective of low-income New Yorkers facing debt collection abuses.[28]

---

[27] *See*, *e.g.*, *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 133 (2d Cir. 2017) (holding that a debt collector engages in unfair or unconscionable litigation conduct in violation of the Fair Debt Collection Practices Act (FDCPA) when it in bad faith unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing); *Burks et al. v. Gotham Process et al.*, 20 Civ. 1001 (E.D.N.Y. 2020) (putative class action complaining of unfair practices in failing to lawfully serve process); *Dupres v. Houslanger*, 19 Civ. 6691 (E.D.N.Y. 2019) ) (putative class action complaining of unfair practices in litigating and opposing consumers' challenges to motions challenging service of process); *Philemon et al. v. Aries Capital Partners, Inc. et al.*, 18-cv-1927(CLP) (E.D.N.Y. 2018) (alleging violations of the FDCPA and New York Judiciary Law for, among other things, filing cases outside of the statute of limitations, illegally demanding attorney's fees, failing to meaningfully review litigation documents before filing, and disclosing social security numbers in public court files); *Scott v. Greenberg et al.*, 2017 WL 1214441 (E.D.N.Y. 2017) (finding that sewer service allegations were sufficient to allege FDCPA claims.); and *Mayfield v. Asta Funding, Inc.*, 95 F.Supp. 3d 685 (S.D.N.Y. 2015) (finding that an "alleged scheme to collect debts through fraudulent means," including fraudulent affidavits of service, violates the FDCPA).

[28] *See*, *e.g.*, *Kuhne v. Cohen & Slamowitz*, LLP, 579 F.3d 189, 190 (2d Cir. 2009); *Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 901 N.Y.S.2d 575 (2010); *Eric M. Berman, P.C. v. City of N.Y.*, 25 N.Y.3d 684, 16 N.Y.S.3d 25, 29 (2015); *Portfolio Recovery Assocs., LLC v. Lall*, 127 A.D.3d 576, 8 N.Y.S.3d 101 (1st Dep't 2015); *Eric M. Berman, P.C. v. City of N.Y.*,

Advocate Amici also regularly advocate with the Office of Court Administration, administrative judges, and court personnel to make consumer credit proceedings more accessible to litigants. For example, during the COVID-19 pandemic, when court hearings were occurring virtually, Advocate Amici advocated with the court to create a single hearing link that would be posted publicly, so as to make it easier for litigants to be able to log in to the court hearing and make it less likely that the litigant would miss their court date because they did not have the proper link to the video conference. Advocate Amici continually advocate for clear instructions for unrepresented litigants to file answers, orders to show cause, and other court documents. Advocate Amici also advocate for disability and language access so that the court provides adequate accommodations and interpreter services for litigants to meaningfully engage in their court case.

## IV.    ARGUMENT: PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM OR BENEFIT TO THE PUBLIC INTEREST

To prevail on a motion for preliminary injunction, a movant must show: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018) (citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)). Advocate Amici address the first and third prongs below.

---

796 F.3d 171, 173 (2d Cir. 2015); and *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 133 (2d Cir. 2017).

### A.       Denying Plaintiffs' Motion Would Not Cause Irreparable Harm

Plaintiffs do not meet the first prong needed to obtain a preliminary injunction. Plaintiffs claim that, by not granting their motion, defendants in consumer debt collection lawsuits filed in New York City Civil Court "will likely receive no advice at all" [and will] "default in their debt collection lawsuits." (Compl. ¶ 5.) But as discussed in Section I(A), a wide array of free legal services organizations is available to help New Yorkers—including anyone seeking help from Plaintiffs—prepare answers to debt collection lawsuits and thereby avoid default. Moreover, in Advocate Amici's experience—and as exemplified by the three New Yorkers described in the Complaint—the primary cause of default judgments in consumer debt collection lawsuits is sewer service, not the lack of free legal assistance. None of the three New Yorkers referenced in the Complaint defaulted because they could not obtain help filing an answer, and none of them would have benefitted from receiving assistance from a non-attorney in filling out an answer form. Because Plaintiffs' proposal, however well-meaning, does not address a pressing need, not implementing it will simply maintain the status quo.

### B.       Awarding an Injunction Would Not Be in the Public Interest

Allowing Plaintiffs to provide legal advice through their proposed model would not be in the public interest, which calls for ensuring that low-income people have as much access to high-quality legal services as possible. In contrast, Plaintiffs' model would make questionable, lower-quality "legal services" the place of *first*, not last, resort for low-income New Yorkers. Plaintiffs do not claim that they would first try to refer people in need of legal assistance on a debt collection lawsuit to any of the free legal services attorneys in New York City who help with debt collection lawsuits; nor do Plaintiffs claim that they would give legal advice to people only after those people tried but were unable to secure legal advice from free legal services attorneys.

Plaintiff Upsolve's Training Guide also does not recommend first referring people to free legal services attorneys, and contains inaccurate information and improper guidance as well.

Plaintiffs do not even claim that they would have an attorney supervise the "Justice Advocates" as they purport to provide legal advice. And, contrary to the examples of non-attorney assistance cited by Plaintiff Amici (*see* Section III), the proposed program would not entail any licensing, certification, or registration of the Justice Advocates. The proposed program also is inconsistent with programs to help people in administrative hearings, as debt collection lawsuits are contentious and adversarial. Instead, Plaintiffs would immediately relegate low-income New Yorkers, including low-income New Yorkers of color, to receiving questionable legal advice.

The consequences of receiving incorrect or inadequate legal advice can be disastrous for low-income New Yorkers. For example, a poorly prepared answer lacking key defenses paves the way for creditors and debt collectors to secure an unaffordable settlement agreement or an easy judgment that they can then use to freeze bank accounts and garnish wages. Challenging a settlement agreement or judgment, especially where the court concludes that the defendant did receive "legal advice," even if it was from a non-attorney "Justice Advocate," may be extremely difficult, if not impossible. In Advocate Amici's experience, low-income New Yorkers are ill-positioned to bear the negative consequences of an unaffordable settlement agreement or judgment enforcement, and often end up being unable to afford to pay for rent, food, medication, transportation, and other basic living expenses.

Denying Plaintiffs' motion would not prevent Plaintiffs from providing meaningful assistance to low-income New Yorkers facing consumer debt collection lawsuits. Instead of providing legal *advice*, Plaintiffs could provide helpful legal *information* to low-income New

Yorkers, including information concerning free legal services providers and other resources, such as court forms and know-your-rights information.

## IV.    CONCLUSION

Over the years, advocates have worked tirelessly in the public interest of low-income New Yorkers sued by debt collectors, including by working with the courts, area law schools, and local bar associations to establish key access-to-justice programs such as CLARO and VLFD and securing critical policy, legislative, and regulatory changes to help level the playing field for low-income New Yorkers facing debt collection lawsuits. Though the work continues, the reforms to date have meaningfully increased access to justice for low-income New Yorkers and New Yorkers of color. Access to justice requires providing unrepresented litigants the opportunity to obtain counsel or, at a minimum, to obtain unbiased, informed advice on the legal issues that impact their lives. Efforts to increase access to justice require a deep understanding of the problem at hand, thoughtful and collaborative implementation, and input from and oversight by the courts and/or the legislature. Plaintiffs' proposed program does not meet these criteria, and so is therefore not in the public interest; Plaintiffs' motion should therefore be denied.

Dated:  April 13, 2022
        New York, New York

                                    EMERY CELLI BRINCKERHOFF
                                    ABADY WARD & MAAZEL LLP

                                    By: _____/s/_____
                                    Matthew D. Brinckerhoff
                                    600 Fifth Avenue, 10th Floor
                                    New York, New York 10020
                                    212-763-5000
                                    mbrinckerhoff@ecbawm.com

                                    *Counsel for Advocate Amici*

# APPENDIX

**Asian American Legal Defense and Education Fund**

The Asian American Legal Defense and Education Fund (AALDEF), founded in 1974, is a New York-based national organization that protects and promotes the civil rights of Asian Americans. By combining litigation, advocacy, education, and organizing, AALDEF works with Asian American communities across the country to secure human rights for all. AALDEF counsels low-wage workers, immigrants, senior citizens, and limited English proficient individuals at free legal advice clinics.

**Brooklyn Bar Association Volunteer Lawyers Project**

The mission of the Brooklyn Bar Association Volunteer Lawyers Project (VLP), an independent 501 (c)(3) nonprofit organization, is to ensure that the legal system is accessible to those who, because of special needs or the overwhelming burden of poverty, would not otherwise have their rights protected or their voices heard. Since its founding in 1990, the VLP has harnessed the powerful pro bono commitment of the private bar to provide critical civil legal services and equal access to the justice system to thousands of Brooklyn residents. As an essential legal lifeline, the VLP remains uniquely responsive to the evolving legal needs of Brooklyn's overlooked and underserved communities. One of the VLP's primary referral areas is Consumer Law. The VLP operates the Kings County Civil Legal Advice and Resource Office ("CLARO"),  a free, weekly walk-in clinic at Kings County Civil Court where unrepresented litigants can obtain free advice and counsel on debt collection matters. The VLP also operates the Volunteer Lawyer for the Day program ("VLFD"), a limited scope representation program where volunteer lawyers, law graduates and law students represent litigants being sued in consumer credit matters in Kings County Civil Court.

**CAMBA Legal Services, Inc.**

CAMBA Legal Services is a community based non-profit legal services provider located in the Flatbush neighborhood of Brooklyn. CAMBA provides legal services in the areas of housing, immigration, foreclosure, and consumer law. Since its inception 15 years ago, the CAMBA Consumer Law Project works to assist working poor New Yorkers with a broad spectrum of consumer law issues including: representing defendants in collection actions filed in New York City Civil Court; assisting *pro se* defendants draft legal papers; and helping consumers facing debt collection abuse. The chief goal of the Consumer Law Project is to help our clients achieve self-sufficiency.

**District Council 37 Municipal Employees Legal Service (MELS)**

District Council 37 Municipal Employees Legal Services (MELS) was established in 1977 as a legal service benefit available to New York City municipal employees and retirees who are represented in their job titles by the American Federation of State, County and Municipal Employees (AFSCME) District Council 37. MELS is the largest pre-paid legal service provider of its kind in the country. Currently, over 125,000 active employees and retirees in City government and New York cultural institutions who reside in New York City and Nassau, Suffolk, Westchester and Rockland Counties are eligible for our legal services. We are funded by employer

contributions to District Council 37's Health and Security Plan and provide a broad swath of legal representation in housing, family law, matrimonial, real estate, administrative law, life planning, immigration, consumer, debt and bankruptcy matters. Although employed or receiving pensions, our clients earn minimal wages and lack the financial resources to retain private counsel. Many are the head of single parent households, whose municipal employment marks their initial entry into the job market. MELS protects these working poor New Yorkers from homelessness, economic hardship and family instability. In addition to legal representation, MELS offers social work services and provides union members with legal resources through webinars and work site informational events.

**Fordham Law School Feerick Center for Social Justice**

Fordham Law School's Feerick Center for Social Justice (the Center)  promotes the rights and addresses the problems facing marginalized and low-income New Yorkers and individuals seeking humanitarian relief, including asylum-seeking families. The Center links the social justice community serving those in need to Fordham and engages the Fordham community in service of national and local social justice initiatives. The Center works with non-profit, legal services, and public sector organizations, bar associations, and individuals to respond to the challenges of those in need. And through education and collaboration, the center engages with Fordham students, alumni, faculty and administrators to create and implement long-term innovative solutions critical for lasting change. The Center's economic justice programs, including its operation of the Bronx, Manhattan, and Staten Island CLARO Programs have been central to its mission and work. In the area of consumer debt collection, the Center also engages in legislative and policy advocacy, fact finding, convening, and coalition building.

**Legal Assistance of Western New York**

Legal Assistance of Western New York, Inc. (LawNY) is a nonprofit civil legal services organization that represents low-income and vulnerable individuals across 14 counties and 10,000 square miles of New York. The Consumer Project at LawNY provides representation and advocacy services to people dealing with debt collection, auto fraud, student loans, bankruptcy, identity theft, credit reporting, and more. The Consumer Law Project operates a free know-your-rights hotline to provide information and *pro se* resources to people dealing with consumer debt collection cases, regardless of their eligibility for full representation from our organization. In addition to *pro se* assistance provided to all callers over the hotline, for eligible clients, we provide direct representation in consumer debt collection lawsuits. In 2021, LawNY partnered with the NYS Permanent Commission on Access to Justice to establish the Rochester City Court Consumer Debt Assistance Project (CDAP), a pilot program designed to address the high number of default judgments in Rochester City Court consumer debt collection cases. To date, the work of the Consumer Law Project has served more than 2,000 individuals and helped save over a million dollars for low-income New Yorkers.

**Legal Services of the Hudson Valley**

The mission of Legal Services of the Hudson Valley is to provide free, high quality counsel in civil matters for individuals and families who cannot afford to pay an attorney where basic human needs are at stake. Legal Services of the Hudson Valley is the only provider of comprehensive civil legal services to seven counties of the Hudson Valley: Westchester, Putnam, Dutchess,

Rockland, Orange, Ulster and Sullivan. We assist hundreds of vulnerable consumers every year. We help defendants in consumer credit cases avoid or obtain relief from money judgments.

**Legal Services NYC (LSNYC)**

Legal Services NYC (LSNYC) is the largest civil legal services provider in the country, with offices in the Bronx, Brooklyn, Queens, Staten Island and Manhattan. For more than 50 years, LSNYC has provided critical legal help to low-income residents of New York City. LSNYC works to reduce poverty by challenging systemic injustice and helping clients meet basic needs for housing, access to high-quality education, health care, family stability, and income and economic security. LSNYC provides a range of services to low-income New Yorkers facing consumer debt issues in New York State and federal courts, including limited scope representation, full representation, and *pro se* assistance. LSNYC also files affirmative litigation to stop abusive and deceptive debt collection practices and to redress violations of the Fair Credit Reporting Act, the Electronic Funds Transfer Act and New York consumer protection statutes. LSNYC provides training on consumer issues to community groups and organizations, partners with other organizations to staff *pro se* clinics for unrepresented litigants in court actions related to consumer matters, and provides offsite intake on consumer matters at community based organizations and at domestic violence shelters.

**Mobilization for Justice**

Mobilization for Justice (MFJ) envisions a society in which there is equal justice for all. Its mission is to achieve social justice, prioritizing the needs of people who are low-income, disenfranchised or have disabilities. It does this through providing the highest quality direct civil legal assistance, providing community education, entering into partnerships, engaging in policy advocacy, and bringing impact litigation. It assists more than 13,000 New Yorkers each year, benefitting over 25,000. MFJ's Consumer Rights Project provides advice, counsel and representation to low-income New Yorkers on a range of consumer problems, including defending debt collection cases.

**New Economy Project**

New Economy Project works to promote economic justice and to eliminate discriminatory economic practices that perpetuate inequality and poverty. Since 2005 we have operated a free hotline through which we have helped thousands of low-income New York City residents resolve legal issues stemming from debt collection lawsuits, credit reporting problems, unfair banking practices, and more. We effectively combine our direct legal services with cutting-edge impact litigation, policy advocacy, coalition-building, and applied research to secure vital policy changes to curb the extraction of wealth from New York City's low-income neighborhoods and neighborhoods of color.

**New York Legal Assistance Group**

Founded in 1990, New York Legal Assistance Group (NYLAG) is a leading civil legal services organization that combats economic, racial, and social injustice by advocating for New Yorkers experiencing poverty or in crisis. Our work includes comprehensive, free civil legal services, financial empowerment, impact litigation, policy advocacy, and community partnerships. NYLAG

exists because wealth should not determine who has access to justice. We aim to disrupt systemic racism by serving individuals and families whose legal and financial crises are often rooted in racial inequality. NYLAG goes to where the need is, providing services in more than 150 community sites in New York and in our Mobile Legal Help Center. During COVID-19, most of our services have been virtual to keep our community safe. NYLAG's Consumer Protection Unit Project (CPU) represents and advises consumer debtors in debt collection lawsuits, and assists them in challenging abusive debt collection practices, combating identity theft, and repairing credit. As part of a program conducted in partnership with the Unified Court System, CPU also supervises the Volunteer Lawyer for a Day - Consumer Credit Project in Bronx County, Queens County, and Richmond County Civil Courts, through which NYLAG and volunteer attorneys assist and represent thousands of pro se consumer debtors at court appearances each year.

**Northern Manhattan Improvement Corporation**

Northern Manhattan Improvement Corporation (NMIC) is a community-based not-for-profit organization founded in 1979, which has grown into a leading multi-service agency with over 120 staff serving New York City, with a focus on upper Manhattan and the Bronx. Our mission is to serve as a catalyst for positive change in the lives of the people in our community, on their paths to secure and prosperous futures. Integration is the cornerstone of NMIC's programs, and our staff can identify and address a broad array of immediate needs through comprehensive crisis intervention services. With their crises resolved, clients move seamlessly to capacity building services through our holistic programs designed to transition individuals and families to self-sufficiency. Our Legal Services, Social Services, and Weatherization programs meet community members' basic needs including housing, income, nutrition, financial empowerment, and health. As a NYC Financial Empowerment Center, NMIC offers debt and credit counseling, and works with our legal department to identify clients in need of legal assistance. Our legal program offers advocacy and legal counsel for New Yorkers with consumer debt issues, including active consumer debt court cases, judgements, frozen bank accounts, and garnishment of wages.

**Queens Volunteer Lawyers Project**

Queens Volunteer Lawyers Project, Inc. (QVLP) was created by the Queens County Bar Association to continue its history of community service provided since the association's inception in 1876.  For over 30 years QVLP has provided free legal assistance to residents of Queens County, New York on a wide range of civil law issues involving basic human needs, focusing on the vast majority of the low-income community who do not have the resources to retain paid legal counsel.  QVLP's Queens Conference Project provides advice and representation to Queens homeowners facing foreclosure and our CLARO-Queens Consumer Debt Clinic has helped thousands of pro se Defendants since its inception in January 2008.

**TakeRoot Justice**

TakeRoot Justice, formerly the Community Development Project, was founded in 2001 as part of the Urban Justice Center. TakeRoot Justice became an independent organization in July of 2019. TakeRoot Justice provides legal, participatory research, and policy support to strengthen the work of grassroots and community-based groups in New York City to dismantle racial, economic and social oppression. TakeRoot Justice's partners take the lead in determining the priorities and goals for our work, and advance our understanding of justice. We believe in a theory of change where

short-term and individual successes help build the capacity and power of our partners, who in turn can have longer-term impact on policies, laws and systems that affect their communities. TakeRoot Justice's Consumer Practice provides legal counsel and representations to low-income New Yorkers in a variety of consumer issues, such as consumer debts lawsuits, credit reporting, residential rent arrears cases, and identity thefts. TakeRoot Justice also partners with community-based organizations in legislative and regulatory advocacy campaigns to support positive and sustainable change in the consumer landscape.

**Volunteers of Legal Service**

Volunteers of Legal Service (VOLS) was founded in 1984 by New York City Bar Association leaders to fill a void left by damaging federal cuts to legal services. VOLS provides free, civil legal services to low-income seniors and older veterans, unemployed workers, immigrant youth, children and their families, formerly homeless young adults, and under-resourced micro-entrepreneurs. Our programs, which rely on trusted partnerships with pro bono attorneys and community-based organizations, reach underserved communities in New York City. VOLS' Senior Law Project operates a free legal hotline, and conducts regular free legal clinics in partnership with seniors centers where low income seniors age 60+ receive legal counsel on a wide range of civil legal issues including consumer debt matters and defending debt collection cases.

**Western New York Law Center**

The Western New York Law Center, Inc. (The Center) is a not-for-profit corporation formed in 1996 after Congress restricted the types of cases that Legal Services Corporation (LSC) grantees could handle.  The Center represents low-income Western New Yorkers in civil matters, emphasizing those areas restricted by LSC.  Our vision and mission with respect to our legal work is to assure that low-income people receive the full range of civil legal services including "non-traditional" legal assistance like policy advocacy and legal education.  As part of our work, we administer the Buffalo branch of CLARO, a consumer debt program that originated in New York City, in response to the overwhelming need for legal assistance to individuals being sued for subprime automobile loans, usurious credit agreements, student loans, and other consumer issues.