UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UPSOLVE, INC. and REV. JOHN UDO-OKON,

                          Plaintiffs,

        -v-

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                          Defendant.

22-CV-00627 (PAC) (SLC)

## DEFENDANT LETITIA JAMES' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, NY 10005
Tel: (212) 416-8733

MATTHEW J. LAWSON
Assistant Attorney General
*Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................iii

PRELIMINARY STATEMENT............................................................................................................1

STATEMENT OF FACTS ...................................................................................................................2

ARGUMENT......................................................................................................................................3

I. PLAINTIFFS CANNOT SHOW THEY ARE
   LIKELY TO SUCCEED ON THE MERITS.................................................................................4

   A. Plaintiffs Lack Standing to Sue ......................................................................................4

   B. There Is No First Amendment Right to Give Unlicensed Legal Advice .............................5

   C. The Cases Plaintiffs Rely Upon Do Not Address Whether
      Unlicensed Laypersons Have a First Amendment Right to Practice Law ............................8

   D. The Unauthorized Practice Statutes
      Easily Pass Muster Under the Rational Basis Standard ...........................................................11

      1. If the Court Concludes that a Tiers of Scrutiny
         Analysis Is Required, It Should Apply the
         Rational Basis Standard—and Not Strict Scrutiny .........................................................11

      2. The Challenged Statutes are Rationally Related to
         the State's Legitimate Interest in Protecting the Public .................................................14

   E. In the Alternative, the Unauthorized Practice Statutes
      Would Also Withstand Intermediate Scrutiny ........................................................................14

II. PLAINTIFFS CANNOT SHOW THAT THE
    REQUESTED INJUNCTION IS IN THE PUBLIC INTEREST ......................................15

    A. Allowing Unidentified, Unlicensed, and Unvetted Persons
       to Give Legal Advice Would Harm the Interests of New Yorkers .....................................15

    B. The Relief Requested Here Would Usurp
       the Legislature's Role, Create Confusion in Law,
       And Result in Inconsistent Rulings ........................................................................................17

C.   Plaintiffs' Arguments About the Alleged
Public Need for an Injunction Are Unpersuasive ...................................................18

CONCLUSION.................................................................................................................................20

# TABLE OF AUTHORITIES

**Federal Cases**                                                            **Page(s)**

*Adam v. Barr,*
   792 F. App'x 20 (2d Cir. 2019) ........................................................................... 4, 5

*Adams v. Am. Bar Ass'n,*
   400 F. Supp. 219 (E.D. Pa. 1975) ................................................................... 7, 9, 14

*Brotherhood of R.R. Trainmen v. Virginia ex rel. Va. State Bar,*
   377 U.S. 1 (1964) ..................................................................................................... 10

*Campbell v. Greisberger,*
   865 F. Supp. 115 (W.D.N.Y. 1994) ....................................................................... 16

*Capital Associated Industries, Inc. v. Stein,*
   922 F.3d 198 (4th Cir. 2019) ............................................................... 10, 11, 14, 15

*Capital Associated Industries, Inc. v. Stein,*
   283 F. Supp. 3d 374 (M.D.N.C. 2017) ................................................................... 11

*Cayuga Nation v. Tanner,*
   824 F.3d 321 (2d Cir. 2016) ..................................................................................... 5

*Chicago, B. & Q.R. Co. v. McGuire,*
   219 U.S. 549 (1911) ................................................................................................ 17

*Colindres v. Battle,*
   No. 1:15-CV-2843, 2016 WL 4258930 (N.D. Ga. June 6, 2016) ....................... 12

*In re Douglas,*
   304 B.R. 223 (Bankr. D. Md. 2003) ......................................................................... 7

*Elansari v. State of Montana,*
   No. CV 21-57-H, 2021 WL 5534930 (D. Mont. Oct. 6, 2021) ............................ 6

*Goldfarb v. Virginia State Bar,*
   421 U.S. 773 (1975) ......................................................................................... 14, 15

*Jacoby & Meyers, LLP v. Presiding Justices of First, Second, Third, and Fourth Dep't,*
   852 F.3d 178 (2d Cir. 2017) ............................................................................ 10, 13

*Knife Rts., Inc. v. Vance,*
   802 F.3d 377 (2d Cir. 2015) ..................................................................................... 5

*L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,*
   No. 18-CV-1902, 2018 WL 2390125 (E.D.N.Y. May 25, 2018) ......................... 3

*Lawline v. Am. Bar Ass'n,*
  956 F.2d 1378 (7th Cir. 1992) ...........................................................................11

*Lowe v. S.E.C.,*
  472 U.S. 181(1985) ..............................................................................................6

*McDermott v. Langevin,*
  587 B.R. 173 (Bankr. N.D. Ga. 2018) ................................................................7

*Monroe v. Horwitch,*
  820 F. Supp. 682 (D. Conn. 1993) ..............................................................6, 3, 14

*NAACP v. Button,*
  371 U.S. 415 (1963) ..........................................................................................9, 10

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra,*
  138 S. Ct. 2361 (2018) ....................................................................................12, 13

*In re New Hampshire Disabilities Rights Center, Inc.,*
  130 N.H. 328, 541 A.2d 208 (1988) .................................................................11

*Nken v. Holder,*
  556 U.S. 418 (2009) ..............................................................................................3

*Ohralik v. Ohio State Bar Ass'n,*
  436 U.S. 447(1978) ...........................................................................................5, 6

*In re Primus,*
  436 U.S. 412 (1978) ..............................................................................................9

*Sperry v. State of Fla. ex rel. Fla. Bar,*
  373 U.S. 379 (1963) ............................................................................................14

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ...........................................................................................4, 5

*Tang v. App. Div. of New York Supreme Ct., First Dep't,*
  373 F. Supp. 800 (S.D.N.Y. 1972) ...................................................................16

*Turner v. Am. Bar Ass'n,*
  407 F. Supp. 451 (N.D. Tex. 1975) .............................................................6, 9, 10

*United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n,*
  389 U.S. 217 (1967) ............................................................................................10

*United Transp. Union v. State Bar of Mich.,*
  401 U.S. 576 (1971) ............................................................................................10

*Winter v. Natural Res. Defense Council, Inc.,*
  555 U.S. 7 (2008) ..................................................................................................3, 15

**State Cases**

*Cincinnati Bar Assn. v. Bailey,*
  852 N.E.2d 1180 (Ohio 2006) ............................................................................8, 14

*Drew v. Unauthorized Prac. of L. Comm.,*
  970 S.W.2d 152 (Tex. Ct. App. 1998) ......................................................................8

*El Gemayel v. Seaman,*
  72 N.Y.2d 701 (1988) .........................................................................................14, 15

*Florida Bar v. Furman,*
  376 So. 2d 378 (Fla. 1979) .......................................................................................8

*Howard v. Superior Ct.,*
  52 Cal. App. 3d 722, 125 Cal. Rptr. 255 (Cal. Ct. App. 1975) ...............................8

*Montana Supreme Ct. Comm'n on Unauthorized Prac. of L. v. O'Neil,*
  147 P.3d 200 (Mont. 2006) ...................................................................................7, 8

*Nat'l City Bank v. Kessler,*
  No. 03AP-312, 2003 WL 22976609 (Ohio Ct. App. 2003) .....................................8

*People v. Shell,*
  148 P.3d 162 (Colo. 2006) ...........................................................................7, 12, 13

*State v. Niska,*
  380 N.W.2d 646 (N.D. 1986) ..........................................................................8, 9, 10

**State Statutes**

N.Y. Jud. Law § 90(1)(a) .............................................................................................16

N.Y. Jud. Law § 476-a ...................................................................................................2

N.Y. Jud. Law § 478 ..................................................................................................2, 19

N.Y. Jud. Law § 484 .......................................................................................................2

N.Y. Jud. Law § 485 .......................................................................................................2

N.Y. Jud. Law § 750 .......................................................................................................2

N.Y. Jud. Law § 753 .......................................................................................................2

Letitia James, Attorney General of the State of New York, respectfully submits this memorandum of law in opposition to Plaintiffs' motion for a preliminary injunction.[1]

## PRELIMINARY STATEMENT

Plaintiffs' motion, which seeks an injunction that would allow unlicensed laypersons to give legal advice to New Yorkers, should be denied.  In order to obtain the "extraordinary" remedy of a preliminary injunction, a plaintiff must show, among other things, that it is likely to succeed on the merits and that the requested relief would serve the public interest.  The Plaintiffs here have done neither.  Far from showing that they are likely to succeed on their claims, Plaintiffs do not even have standing to sue.  To demonstrate standing, Plaintiffs must show that there is a credible threat that they will be prosecuted for offering the legal advice they intend to provide.  They have failed to make such a showing here.

Plaintiffs' claims also fail because the First Amendment "right" alleged here does not exist. The question of whether laypersons have a First Amendment right to practice law without a license is not a new one.  There are numerous federal and state court decisions that address this precise question, and these cases establish that there is <u>no</u> such right.  Plaintiffs do not even acknowledge, let alone attempt to distinguish, these authorities, and they instead attempt to manufacture the "right" alleged here based on cases that have nothing to with the practice of law by unlicensed laypersons.  Such efforts are entirely unavailing—and they certainly do not establish that Plaintiffs' First Amendment claims are likely to succeed.

Plaintiffs' motion should also be denied because the injunction requested here would be contrary to the public interest.  Plaintiffs largely do not identify the individuals who would give legal advice to New Yorkers if their motion were to be granted, and the relief requested here would

---

[1]    As used herein, "Complaint" and "Compl." refer to Plaintiffs' complaint in this action, dated January 25, 2022 (ECF 1), and "Pl. Br." refers to the Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction, also dated January 25, 2022 (ECF 6).

bypass crucial safeguards that ensure the competence and moral fitness of legal practitioners. Moreover, the State legislature is the body best equipped to debate the competing public policy concerns implicated by the statutes challenged here—and to consider any proposed exceptions. Plaintiffs' proposal to remove the legislature from this policy decision would disserve the public and violate basic principles of federalism. The new First Amendment "right" Plaintiffs ask this Court to recognize also lacks clear boundaries, which would lead to uncertainty in the law and create the risk of inconsistent rulings in future cases.

Plaintiffs' arguments about the supposed public need for the extraordinary remedy requested here also miss the mark. The requested injunction would <u>not</u> address the primary concerns identified by the citizens Plaintiffs consulted, such as harassing debt collection calls and the defaults that arise when defendants never receive notice that they have been sued. Moreover, the "advice" contemplated here is already being delivered by nonprofit organizations and law school clinics, and Plaintiffs have not demonstrated that these existing resources are inadequate.

## STATEMENT OF FACTS

New York, like every other state in the country, prohibits persons not admitted to the bar from engaging in the practice of law. *See* N.Y. Jud. Law §§ 476-a, 478, 484, 485, 750, 753 (proscribing the unauthorized practice of law and providing for the enforcement of this prohibition).

Plaintiffs Upsolve, Inc. and the Reverend John Udo-Okon object to these statutes, which they contend have thwarted their plans to launch the "American Justice Movement" ("AJM")—a proposed initiative for providing lay legal advice to individuals sued in debt collection lawsuits. Compl. ¶ 57. As part of this initiative, Plaintiffs seek to recruit an unspecified number of nonlawyer "Justice Advocates," including the Reverend Udo-Okon himself, to advise debtor defendants on how to answer or otherwise respond to the lawsuit against them. *Id.* ¶¶ 57, 82. Plaintiffs assert that any such advice will be "strictly limited" to "advising low-income New Yorkers on whether and how

to fill out and file" New York's one-page, fill-in-the-blank form Answer for debt collection actions. Pl. Br. at 1-2; *see also* Compl. ¶¶ 34-35 & Ex. A.

Plaintiffs contend that New York's unauthorized practice of law statutes are the "only thing" preventing them from launching the AJM initiative, Compl. ¶ 88, and they therefore filed the instant lawsuit, which asserts an as-applied constitutional challenge to the statutes themselves.  In particular, Plaintiffs allege that the unauthorized practice of law statutes violate their rights of free speech and association under the First Amendment, and they seek both declaratory and injunctive relief (among other things).  Compl. ¶¶ 103-12 & p. 29.  Plaintiffs also filed the instant motion, which seeks to preliminarily enjoin the Attorney General from enforcing New York's unauthorized practice statutes against Plaintiffs.  For the reasons set forth below, Plaintiffs' motion should be denied.

<u>**ARGUMENT**</u>

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008).  Plaintiffs bear the burden of establishing (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20.  The final two factors—the balance of the equities and the public interest—"merge" when the Government is the opposing party." *L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 18-CV-1902, 2018 WL 2390125, at *13 (E.D.N.Y. May 25, 2018) (*quoting Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Plaintiffs cannot satisfy this rigorous standard.  Among other issues, Plaintiffs cannot show they are likely to succeed on the merits, and the equities and public interest factors weigh <u>against</u> granting injunctive relief.

3

## I.    PLAINTIFFS CANNOT SHOW THEY ARE LIKELY TO SUCCEED ON THE MERITS

### A.  Plaintiffs Lack Standing to Sue

As an initial matter, Plaintiffs cannot succeed on the merits of their legal challenge because they lack standing to sue.  To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.  *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 157-58 (2014).  An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Id.* at 158.

To satisfy the imminence requirement in the pre-enforcement context, a plaintiff must show that (1) he has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) "there exists a credible threat of prosecution thereunder." *Id.* at 159.  Plaintiffs fail to meet this standard because the facts pleaded here do <u>not</u> demonstrate a credible threat of prosecution.  Indeed, the <u>only</u> purported facts Plaintiffs offer are the allegations that (1) they intend to provide legal advice without a law license, *see, e.g.,* Compl. ¶ 56; (2) pursuing this course of action would violate existing law, *id.* ¶ 71; and (3) the Attorney General's duties include the enforcement of regulations governing the unauthorized practice of law.  *Id.* ¶ 14.[2]

These allegations are insufficient and do not establish a credible threat of prosecution by the Attorney General.  As the Second Circuit recently held, "the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing."  *Adam v. Barr*, 792 F. App'x

---

[2]    Plaintiffs also allege that New York's unauthorized practice rules are "vigorously enforced," Compl. ¶ 91, but they provide no examples and do not identify the enforcement authority (or the defendant) for any such occasion.

20, 22 (2d Cir. 2019).  Rather, courts also evaluate the extent of past enforcement against the plaintiff.  *Id.* at 23.  Thus, in *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016), the Second Circuit found that the plaintiffs had alleged a credible threat of prosecution not only because their behavior was clearly prohibited by an ordinance, but also because the town "announced its intention to enforce the Ordinance" against the plaintiffs and warned them that failure to comply might constitute an offense punishable by fine, imprisonment, or both.  Similarly, in *Knife Rights v. Vance* 802 F.3d 377, 385-87 (2d Cir. 2015), the court found that a credible threat of prosecution existed where the defendant district attorney "recently identified [one of the plaintiffs] as a [state criminal law] violator and pursued enforcement action against it."  *See also Susan B. Anthony List*, 573 U.S. at 164 (discussing history of past enforcement of a statute against the petitioners, for the same conduct, as being good evidence that "the threat of enforcement is not 'chimerical'").

By contrast, the Plaintiffs here do not allege any past enforcement against them that would bear on the facts alleged, and they do not identify any warnings or public statements by the Attorney General that would suggest that they face imminent <u>future</u> prosecution.  The facts alleged are thus insufficient to demonstrate a credible threat of prosecution, and Plaintiffs lack standing to sue.  *See Adam*, 792 F. App'x at 22-23 (finding that plaintiff lacked standing where, *inter alia*, he did not claim that the challenged statute had been "enforced against him in the past," nor that "he has ever been threatened with prosecution").

### B.  There Is No First Amendment Right to Give Unlicensed Legal Advice

Even if Plaintiffs could show they face a credible threat of prosecution, they still could not prevail on the merits because the First Amendment "right" alleged here does not exist.  States, including New York, have a strong interest in maintaining the standards of those who wish to be legal advocates, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978), and "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely

because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Id.* at 456. Thus, as Justice White reasoned in his concurring opinion in *Lowe v. S.E.C.*, 472 U.S. 181, 232 (1985), "[i]f the government enacts generally applicable licensing provisions limiting the class of persons who may practice the profession, it cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny."

Consistent with these principles, federal courts have repeatedly rejected the argument that laypersons have a First Amendment right to give legal advice, or otherwise practice law, without a license. For example, in *Monroe v. Horwitch*, 820 F. Supp. 682, 683-86 (D. Conn. 1993), *aff'd*, 19 F.3d 9 (2d Cir. 1994)—the sole reported federal case from within this Circuit to squarely address the issue—the court dismissed a First Amendment challenge brought by a paralegal who wished to prepare divorce papers for others. The court held that the "prohibition against unauthorized practice of law does not violate plaintiff's First Amendment right to freedom of speech." *Id.* at 686. As the court reasoned, the practice of law is not a "matter of grace or favor," but a privilege reserved for those who have met the required qualifications (which the paralegal had not met.). *Id.*

Similarly, in *Turner v. Am. Bar Ass'n*, 407 F. Supp. 451, 478 (N.D. Tex. 1975), the court rejected the arguments of various plaintiffs, including a pastor, who claimed that rules prohibiting nonlawyers from representing litigants in court violated those litigants' First Amendment right to freely associate (among other things). The Court held that:

> [T]he Constitution of the United States, in particular the First and Sixth Amendments, does not grant to the Plaintiffs the right to have an unlicensed layman represent them in Court proceedings. <u>The corollary of this holding is that unlicensed laymen cannot under the Constitution demand the right to represent other litigants</u>.

*Id.* (emphasis added); *see also Elansari v. State of Montana*, No. CV 21-57-H, 2021 WL 5534930, at *5 (D. Mont. Oct. 6, 2021), *report and recommendation adopted*, 2021 WL 5036046 (D. Mont. Oct. 29, 2021) (dismissing constitutional challenge brought by nonlawyer who had sought to draft pleadings and

file documents for others and holding that plaintiff had no First Amendment right to practice law without a license); *Adams v. Am. Bar Ass'n*, 400 F. Supp. 219, 225 (E.D. Pa. 1975) (rejecting plaintiffs' claim that "their First Amendment rights have been violated in that they, as non-lawyers, have not been permitted to represent one another in various civil and criminal cases" and dismissing constitutional challenge); *McDermott v. Langevin*, 587 B.R. 173, 185 (Bankr. N.D. Ga. 2018) (rejecting free speech arguments raised by nonlawyer preparer of bankruptcy petitions and holding that Georgia's unauthorized practice statute was "not subject to First Amendment scrutiny" because it focused on "regulation of professional conduct with only an incidental impact on speech"); *In re Douglas*, 304 B.R. 223, 239 (Bankr. D. Md. 2003) (bankruptcy petition preparers had "no constitutional right under the First Amendment or otherwise to render legal advice without a license").

The Supreme Courts of Colorado, Montana, Ohio, North Dakota, and Florida have also rejected nonlawyers' arguments that the First Amendment gave them the right to offer legal advice or otherwise practice law.  For example, in *People v. Shell*, 148 P.3d 162, 170-72 (Colo. 2006), the court found that a nonlawyer "advocate" had engaged in the unauthorized practice of law where she had offered legal advice, drafted legal pleadings, and attempted to represent another person in court. In so holding, the court expressly <u>rejected</u> the nonlawyer's argument that her actions "were permissible exercises of her First Amendment freedom of speech and freedom to petition the government."  *Id.* at 173.  The court reasoned that, "in general, Colorado's ban on the unauthorized practice of law does not implicate the First Amendment because it is directed at *conduct,* not *speech*"— and that any impact on speech was "merely the incidental effect of observing an otherwise legitimate regulation." *Id.* at 173-74 (italics in original).

Similarly, in *Montana Supreme Ct. Comm'n on Unauthorized Prac. of L. v. O'Neil,* 147 P.3d 200, 214 (Mont. 2006), the Montana Supreme court rejected a lay advocate's argument that the

"application of the unauthorized practice statutes to his conduct" violated his First Amendment

rights of speech and association and affirmed that advocate had "no First Amendment right to

practice law without a license." *See also Cincinnati Bar Assn. v. Bailey*, 852 N.E.2d 1180, 1182-87 (Ohio

2006) (finding that nonlawyer had engaged in the unauthorized practice of law by giving advice on

preparing and filing documents with the Ohio Bureau of Motor Vehicles and rejecting First

Amendment defense because the "restrictions . . . prohibiting practicing law without a license do not

implicate his right to free speech."); *State v. Niska*, 380 N.W.2d 646, 648-50 (N.D. 1986) (concluding

that North Dakota's unauthorized practice of law statute, as applied to nonlawyer advocate, did "not

violate his right of free speech guaranteed by the North Dakota Constitution and the First and

Fourteenth Amendments to the United States Constitution"); *Florida Bar v. Furman*, 376 So. 2d 378,

379-382 (Fla. 1979) (finding that a nonlawyer who sold "do-it yourself divorce kits" was "guilty of

the unauthorized practice of law" and rejecting, at least implicitly, the nonlawyer's argument that the

First Amendment protected "her right to disseminate and the right of her customers to receive

information which would allow indigent litigants access to the state's domestic relations courts").[3]

### C.  The Cases Plaintiffs Rely Upon Do Not Address Whether Unlicensed Laypersons Have a First Amendment Right to Practice Law

As the above decisions make clear, there is no shortage of cases that address whether

nonlawyers have a First Amendment right to practice law without a license.  Plaintiffs inexplicably

---

[3]      Other state court decisions contain similar holdings or reasoning.  *See, e.g., Drew v. Unauthorized Prac. Of L. Comm.*, 970 S.W.2d 152, 154-55 (Tex. App. 1998) (rejecting constitutional arguments raised by nonlawyer advocate and holding that Texas' unauthorized practice statute "does not impermissibly infringe on his First Amendment rights"); *Howard v. Superior Ct.*, 52 Cal. App. 3d 722, 726, 125 Cal. Rptr. 255, 257 (Cal. Ct. App. 1975) ("The constitutional protection for free speech does not extend to the delivery of legal or medical or financial advice by persons not licensed to give such advice."); *see also Nat'l City Bank v. Kessler*, No. 03AP-312, 2003 WL 22976609, *6 (Ohio Ct. App. 2003) (the "First Amendment to the Constitution of the United States does not contain a right to represent others before a court without having a license to do so, and the state has a compelling interest in the practice of law").

ignore <u>all</u> of these cases, however, and instead attempt to manufacture a new First Amendment

"right" based on decisions that have nothing do with the practice of law by unlicensed laypersons.

Foremost among these readily distinguishable cases are *NAACP v. Button*, 371 U.S. 415

(1963), and *In re Primus*, 436 U.S. 412 (1978), which Plaintiffs cite extensively.  In contrast to the

facts here, the plaintiffs in *Button* and *Primus* did <u>not</u> claim that the First Amendment gave them, or

anyone else, the right to practice law without a license, and the Supreme Court never addressed any

such argument.  Instead, in both cases, the Court found that the First Amendment protects certain

<u>other activities</u>, such as lawyer recommendations, that help litigants secure legal representation in

civil rights matters.  *See Button*, 371 U.S. at 433-37 (holding that a state antisolicitation statute was

unconstitutional as applied to the NAACP's activities where that statute effectively proscribed any

arrangement by which prospective litigants were advised to seek the assistance of a "particular

attorney or group of attorneys"); *Primus,* 436 U.S. 412 at 416-439 (holding that the First Amendment

protected an attorney's decision to send a letter to a prospective litigant recommending free legal

representation by the ACLU).

Stated differently, the plaintiffs in *Button* and *Primus* sought to <u>facilitate</u> representation by

duly licensed counsel.  They did not seek to <u>usurp</u> counsel's role by empowering unlicensed

laypersons to practice law, as Plaintiffs seek to do here.  *See also Adams,* 400 F. Supp. at 225 (noting

the "enormous" factual distinctions between *Button* and related cases, on one hand, and the case

before the court, where nonlawyers claimed they had a First Amendment right to practice law

without a license, on the other); *Niska*, 380 N.W.2d at 650 (nonlawyer's efforts to practice law

without a license were "not . . . the type of collective activity protected by *Button* and its progeny");

*Turner*, 407 F. Supp. at 478 (rejecting the applicability of *Button* and other Supreme Court cases

because those cases "did not involve the question of securing redress of grievances in Court by unlicensed counsel").[4]

Plaintiffs' reliance on the Second Circuit's decision in *Jacoby & Meyers, LLP v. Presiding Justices of First, Second, Third, and Fourth Dep't*, 852 F.3d 178 (2d Cir. 2017), is even more puzzling. The plaintiffs in that case never argued they had a right to practice law without a license, and the Second Circuit squarely rejected the First Amendment arguments the plaintiffs did make, applying <u>rational basis</u> review—and <u>not</u> strict scrutiny. *Jacoby*, 852 F.3d at 182-92. *Cf.* Pl. Br. at 13 (incorrectly claiming that *Jacoby* "confirm[s]" the applicability of strict scrutiny here). The plaintiffs in *Jacoby* contended that statewide rules prohibiting non-attorneys from investing in law firms violated their First Amendment rights. 852 F.3d at 182-83. The Second Circuit disagreed, and it held that (1) the First Amendment was not even implicated, let alone violated, by the facts alleged; and (2) the case was properly dismissed for failure to state a claim. *Id.* at 184-92. Both of these conclusions apply equally here.

And far from establishing the applicability of *Button* to the facts alleged here, as Plaintiffs contend, *see* Pl. Br. 15, *Jacoby* actually supports the Attorney General's narrow reading of that case. As the Second Circuit noted, "the Supreme Court . . . held [in *Button* and other cases] that the First Amendment bears on some situations in which clients and attorneys seek each other out to pursue litigation." 852 F.3d at 185. This is not such a situation.

Similarly, to the extent the Fourth Circuit's decision in *Capital Associated Industries, Inc. v. Stein*, 922 F.3d 198 (4th Cir. 2019), is relevant here, it supports the Attorney General's position—and <u>not</u>

---

[4]        *Brotherhood of R.R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1 (1964), *United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217 (1967), and *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576 (1971), which Plaintiffs address in a footnote, *see* Pl. Br. at 13 n.2, are distinguishable for largely the same reasons as *Button* and *Primus*. *See Turner*, 407 F. Supp. at 478 (distinguishing these three cases); *Niska*, 380 N.W.2d at 650 (same); *Adams*, 400 F. Supp. at 225 (distinguishing *Brotherhood of R.R. Trainmen* and *United Mine Workers*).

Plaintiffs'.  Like the other cases Plaintiffs cite, *Capital Associated Industries* does not address whether unlicensed laypersons have a First Amendment right to practice law.  Instead, the question presented was whether a corporation, acting through <u>licensed attorneys</u>, had such a right.[5]  In any event, the Fourth Circuit answered this question in the negative and affirmed dismissal of the case—a result that supports denial of the injunction requested here.  922 F.3d at 204-212; *see also Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1386-87 (7th Cir. 1992) (rejecting the plaintiffs' argument that a disciplinary rule forbidding lawyers from assisting laypersons in the unauthorized practice of law was facially invalid under the First Amendment and affirming dismissal of the case).[6]

### D. The Unauthorized Practice Statutes Easily Pass Muster Under the Rational Basis Standard

Even if Plaintiffs had plausibly alleged an impairment of their constitutional rights—and they have not—their claims would still fail for the independent reason that the unauthorized practice prohibitions easily pass muster under the rational basis standard.

#### 1. If the Court Concludes that a Tiers of Scrutiny Analysis Is Required, It Should Apply the Rational Basis Standard—and Not Strict Scrutiny

Plaintiffs' contention that this Court must apply strict scrutiny review is mistaken.  Indeed, the Attorney General is not aware of a single case where a court applied strict scrutiny when

---

[5]     *See Cap. Associated Indus,* 922 F.3d at 203 (noting that the corporate plaintiff brought suit after being advised that it would violate North Carolina's unauthorized practice statutes "if it employed <u>lawyers</u> to give its members legal advice." (emphasis added).  The underlying district court decision further confirms that the corporate plaintiff sought to offer "legal advice . . . <u>through licensed North Carolina attorneys</u>"—and not laypersons.  *Cap. Associated Indus., Inc. v. Stein*, 283 F. Supp. 374, 378 (M.D.N.C. 2017).

[6]     *In re New Hampshire Disabilities Rights Center, Inc.*, 541 A.2d 208 (1988) also did not involve any argument that laypersons had a constitutional right to practice law without a license.  Rather, the First Amendment question presented in that case was whether a statute that effectively confined a nonprofit corporation's staff lawyers to "advising and representing only the poor" was constitutional.  *Id.* at 212-216.  *New Hampshire Disabilities Rights Center* is thus irrelevant to the facts presented here.

adjudicating a layperson's claim that he had the right to practice law without a license—and Plaintiffs cite no such cases.

Instead, Plaintiffs argue that the Court must apply strict scrutiny because New York's unauthorized practice statues are supposedly "content-based." Pl. Br. at 10. Plaintiffs are wrong. As Plaintiffs point out, a law is content-based if it is "a regulation of speech" that "on its face draws distinctions based on the message a speaker conveys." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (citation omitted). The statutes challenged here are <u>not</u> such a regulation because they are directed at conduct, not speech, and do not purport to draw content-based distinctions between different kinds of messages. *See Shell*, 148 P.3d 162, at 173-74 (noting that Colorado's ban on the unauthorized practice of law was "directed at *conduct,* not *speech*") (italics in original); *Cap. Associated Indus.*, 922 F.3d at 208 (challenged unauthorized practice of law statues did not "target the communicative aspects of practicing law. . . . Instead, they focus more broadly on the question of who may conduct themselves as a lawyer"); *Colindres v. Battle*, No. 1:15-CV-2843, 2016 WL 4258930, at *9 (N.D. Ga. June 6, 2016) (finding that the Georgia Dental Practice Act regulated "activities" and not "speech" where it did "not make any reference to the content of speech but rather addresses the unauthorized practice of dentistry.")

Plaintiffs' proposal to apply strict scrutiny is also contrary to binding Supreme Court precedent, including the Court's recent recognition that laws "regulat[ing] professional conduct" are an area where it has traditionally afforded "<u>less</u> protection for professional speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372 (2018) ("*NIFLA*") (emphasis added); *see also Cap. Associated Indus.*, 922 F.3d at 208 (noting that the Supreme Court's decision in *NIFLA* "provides

ample support for the view that strict scrutiny <u>shouldn't</u> apply to the [unauthorized practice of law] statutes.") (emphasis added).[7]

To be sure, the Supreme Court's decision in *NIFLA* does not specify which alternative standard might apply to a lawsuit challenging professional conduct rules.  Still, authority from within this Circuit supports the application of the <u>lowest</u> tier of scrutiny—i.e., rational basis review.  For example, in *Jacoby*—which Plaintiffs cite as authoritative on this question, Pl. Br. at 13—the Second Circuit applied the rational basis standard when analyzing the plaintiffs' claim that the challenged rules prohibiting non-attorneys from investing in law firms violated the First Amendment.  852 F.3d at 191-92.  The court reasoned that rational basis review was appropriate based on its finding that "no First Amendment right of the [plaintiffs] is even implicated by the challenged regulations, much less substantially burdened by them." *Id.* at 191.

Courts have made similar findings with respect to rules prohibiting laypersons from practicing law.  *See, e.g., Shell*, 148 P.3d at 173 ("In general, Colorado's ban on the unauthorized practice of law <u>does not implicate the First Amendment</u>") (emphasis added); *Cincinnati Bar Assn.,* 852 N.E.2d at 1182 ("restrictions . . . prohibiting practicing law without a license do not implicate [the] right to free speech."); *McDermott*, 587 B.R. at 185 (holding that Georgia's unauthorized practice statute was "not subject to First Amendment scrutiny"); *see also Lowe,* 472 U.S. at 232 (White, J., concurring) (generally applicable licensing provisions limiting the class of persons who may practice a profession are <u>not</u> a "limitation on freedom of speech or the press subject to First Amendment scrutiny").

Similarly, while the District of Connecticut's decision in *Monroe*—which the Second Circuit affirmed—does not identify a particular level of scrutiny, its reasoning is broadly consistent with

---

[7]     The Institute for Justice mistakenly argues in its *amicus curiae* brief that *NIFLA* supports the application of the strict scrutiny standard to lawsuits that, like this one, challenge state unauthorized practice rules.  ECF 45 at 7-8. In fact, as noted above, *NIFLA* supports the opposite proposition.

rational basis review. *See Monroe*, 820 F. Supp. at 686. The court cited with approval the general policy supporting the prohibition of the unlicensed practice of law and otherwise rejected the plaintiffs' First Amendment claims outright without the need for further detailed analysis. *Id.* Other decisions rejecting First Amendment claims like those here contain similarly abbreviated reasoning—a fact that also supports the application of the <u>lowest</u> tier of scrutiny. *See, e.g., Taylor*, 407 F. Supp. at 478; *Adams*, 400 F. Supp. at 225, *Cincinnati Bar Assn.*, 852 N.E.2d at 1182.

### 2.  The Challenged Statutes are Rationally Related to the State's Legitimate Interest in Protecting the Public

Under the rational basis standard, the challenged government action need only be "rationally related to a legitimate government interest." *Jacoby,* 852 F.3d at 191. The prohibitions against the unauthorized practice of law clearly pass muster under this standard. "States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975); *see also Sperry v. State of Fla. ex rel. Fla. Bar*, 373 U.S. 379, 383 (1963) (recognizing that "Florida has a substantial interest in regulating the practice of law within the State"). The statutes challenged here, which are designed to protect the public "from the dangers of legal representation and advice given by persons not trained, examined and licensed for such work," *El Gemayel v. Seaman*, 72 N.Y.2d 701, 705 (1988), are rationally related to this legitimate interest.

### E.  In the Alternative, the Unauthorized Practice Statutes Would Also Withstand Intermediate Scrutiny

The Attorney General is aware of only one federal decision where the court analyzed an unauthorized practice of law prohibition under a standard <u>more</u> exacting than rational basis review. In particular, in *Capital Associated Industries*, 922 F.3d at 209-10, the Fourth Circuit applied intermediate scrutiny when assessing the constitutionality of the unauthorized practice rules as

14

applied to the plaintiff corporation (in a case that, again, did not involve the state's interest in protecting the public from unlicensed practitioners. *See* Point I(c), *supra*).

To withstand intermediate scrutiny, a defendant must show a "substantial state interest" and a solution that is "sufficiently drawn" to protect that interest. *NIFLA*, 138 S.Ct. at 2375; *accord Cap. Associated Indus.,* 922 F.3d at 209.  For all the reasons set forth above, the unauthorized practice of law statutes challenged here would easily withstand intermediate scrutiny review as well.  *See Cap. Associated Indus.,* 922 F.3d at 209 (holding that challenged unauthorized practice restriction that barred corporations from practicing law withstood intermediate scrutiny because it was "sufficiently drawn" to protect North Carolina's "substantial interest" in "regulating the legal profession to protect clients").

Indeed, since New York's interest in regulating the practice of professions is a "compelling" one, *Goldfarb,* 421 U.S. at 792, and the statutes challenged here are narrowly drawn to serve that compelling interest, the statutes would easily withstand <u>any</u> standard—including the strict scrutiny standard.

## II.   PLAINTIFFS CANNOT SHOW THAT THE REQUESTED INJUNCTION IS IN THE PUBLIC INTEREST

Plaintiffs' application fails for a final independent reason.  A litigant seeking injunctive relief must show that the "injunction is in the public interest," *Winter*, 555 U.S. at 20, and Plaintiffs have failed to do so here.  In fact, the public interest strongly weighs <u>against</u> the requested relief.

### A.  Allowing Unidentified, Unlicensed, and Unvetted Persons to Give Legal Advice Would Harm the Interests of New Yorkers

As noted above, the purpose of New York's prohibition against the unauthorized practice of law is to protect the public "from the dangers of legal representation and advice given by persons not trained, examined and licensed for such work."  *El Gemayel,* 72 N.Y.2d at 705.  The relief that Plaintiffs request would injure such interests.

15

The first problem with Plaintiffs' approach is that, with one exception (Rev. Udo-Okon), they do not even identify the persons who would be giving lay legal advice if an injunction were to be granted.  Thus—and again excepting Reverend Udo-Okon—the State and this Court know nothing about the character, experience, employment history, or level of education of the persons that would be empowered to advise New Yorkers in ways that would directly affect their legal rights.

Plaintiffs' approach also inappropriately bypasses crucial safeguards that ensure the qualifications and moral fitness of practitioners.  For example, an applicant for admission to practice law in New York must generally provide certification of the State Board of Bar Examiners that the applicant has passed the bar examination.  *See Campbell v. Greisberger*, 865 F. Supp. 115, 120 (W.D.N.Y. 1994); N.Y. Jud. Law § 90(1)(a).  Not only is there no such examination under Plaintiffs' proposed approach, <u>there is no independent vetting of candidates' qualifications at all</u>.  Instead, Upsolve intends to perform its own vetting, and it apparently plans to place <u>nonlawyers</u> in charge of deciding whether a given candidate is qualified to give legal advice to New York's citizens.  *See* Pavuluri Decl. (ECF 7-1) ¶¶ 21-23 (stating that the AJM, whose members are "not lawyers," would oversee the selection of Justice Advocates).

Plaintiffs also seek to bypass the essential role of court-appointed Character and Fitness Committees, which must "carefully investigate the character and fitness" of each applicant to the bar.  *Campbell,* 865 F. Supp. at 120 (quoting CPLR 9404.); s*ee also Tang v. App. Div. of New York Supreme Ct., First Dep't*, 373 F. Supp. 800, 802 (S.D.N.Y. 1972), *aff'd*, 487 F.2d 138 (2d Cir. 1973) (noting that "[i]nvestigations by 'character committees' and other licensing agencies are not intended to be perfunctory"). Once again, Plaintiffs propose eliminating <u>all</u> independent vetting of their candidates, and they demand that the Court and this State simply trust them to pick the right individuals for the job.  This approach would undermine the concerns New York's unauthorized practice rules are designed to guard against.

**B. The Relief Requested Here Would Usurp
the Legislature's Role, Create Confusion in Law,
And Result in Inconsistent Rulings**

An injunction would also harm the public interest for other reasons. For example, while Plaintiffs often gloss over this fact, the "rules" they challenge are in fact <u>statutes</u> passed by the New York State Legislature—the body most qualified to weigh the relevant public policy concerns and to determine the specific circumstances that might warrant an exception.  Plaintiffs' efforts to bypass the legislature, and to seek a court-crafted "exception" that New York's elected representatives have never approved, would disserve the public and violate basic principles of federalism.  *See, e.g., Chicago, B. & Q.R. Co. v. McGuire*, 219 U.S. 549, 569 (1911) ("the mere fact that a court may differ with the legislature in its views of public policy . . . affords no ground for judicial interference, unless the act in question is unmistakably and palpably in excess of legislative power").

The new First Amendment "right" that Plaintiffs ask this court to recognize also lacks clear boundaries, and a ruling in their favor would thus create uncertainty and confusion as to which activities are protected—and which activities are not.  In this regard, the Attorney General can discern only three vague limiting factors.  In particular, Plaintiffs suggest that the alleged constitutional right to provide unlicensed legal advice would only exist where that advice: (1) is rendered free of charge; (2) promotes access to the courts; and (3) serves expressive and/or political goals.  Pl. Br. at 10-15.[8]  The latter two limitations are so vague as to be largely meaningless.  For example, <u>all</u> legal advice about defending a lawsuit could potentially be characterized as promoting access to the courts (and/or "faciltat[ing] access to justice," Pl. Br. at 14).  Further, if a private litigant's desire to defend a debt collection case is deemed "expressive," then virtually any financial interest would qualify.

---

[8]     Plaintiffs also suggest that the provision of advice must not raise the type of ethical concerns identified in *Capital Associated Industries*, Pl. Br. at 14, but they appear to contend that this requirement would be met so long as the advice is rendered free of charge.  *Id.*

17

The inevitable result of this uncertainty would be a wave of additional lawsuits in which other nonlawyers demand their own fact-specific "exception" to the prohibition against the unauthorized practice of law. This in turn would lead to a risk of inconsistent rulings that would further undermine the certainty and predictability of the law.

### C. Plaintiffs' Arguments About the Alleged Public Need for an Injunction Are Unpersuasive

Plaintiffs' arguments about the alleged public need for an injunction also miss the mark. As an initial matter, the relief requested here would not even address, let alone remedy, the primary concerns identified by the citizens Plaintiffs consulted. For example, the requested injunction would not address "harassing calls from debt collectors," a particular focus of the community members that spoke with the Reverend Udo-Okon. Udo-Okon Decl. (ECF 7-2) ¶¶ 8, 13. Similarly, the requested injunction would not address the principal problem faced by William Evertsen and Liz Jurado, who report that they never received any notice that they were being sued in the first instance. Evertsen Decl. (ECF 7-7) ¶ 13; Jurado Decl. (ECF 7-8) ¶ 6. To assist litigants in this position, an advocate would need to know how to seek vacatur of a default judgment—a complex legal exercise that Plaintiffs do not propose undertaking here. *See* Brief of *Amici Curiae* Consumer Law Experts, Civil Legal Services Organizations, and Civil Rights Organizations (the "Advocate Amici"), ECF 57, at 13.

Plaintiffs also fail to demonstrate that existing resources are inadequate to supply the limited legal advice contemplated here. There are—as Plaintiffs concede—qualified legal aid organizations that <u>already</u> provide free legal advice on debt collection matters in New York. *See* Compl. ¶ 44. For example, as the Advocate Amici state in their *amicus curiae* brief, organizations such as CAMBA Legal Services, District Council 37 Municipal Employees Legal Services, Legal Services NYC, Mobilization for Justice, New York Legal Assistance Group, and TakeRoot Justice provide such advice routinely. ECF 57 at 5. Plaintiffs' witness Tashi Lhewa, the Supervising Attorney of the Legal Aid Society,

himself works for an organization that provides such advice,[9] and he identifies another organization, the Civil Legal Advice and Resources Office ("CLARO"), that does as well.  Lhewa Decl. (ECF 7-5) at ¶4.  And while Plaintiffs assert, in conclusory fashion, that existing resources are inadequate, they do not identify a single occasion in which any of these organizations turned away a New Yorker who simply wanted advice on filling out a pre-printed form Answer in a debt collection lawsuit—the sole advice that Plaintiffs seek leave to provide here.

The "narrowly circumscribed" advice that Plaintiffs propose to deliver could also be easily provided for free by law school clinics, which can operate under existing New York law.  *See, e.g.,* N.Y. Jud. Law § 478(2) (allowing law students who have completed at least two years of law school, and who are "acting under the supervision of a legal aid organization" to practice under certain specified circumstances).  Indeed, it appears that at least one such clinic already provides free legal advice on debt collection matters.  The webpage for the "Consumer Justice for the Elderly" clinic at St. John's University School of Law reports that, "[w]hen clients have been sued on a consumer debt, we defend them."[10]  Plaintiffs do not explain why such clinics are inadequate, or why they could not redirect their own efforts to the establishment and funding of even more such clinics or to informing individuals of the available, existing resources for obtaining free advice from lawyers trained and licensed to provide such advice.  *See* Brief of Advocate Amici, ECF 57, at 5-9 (discussing the wide array of free legal services currently available to low-income New Yorkers sued in debt collection actions).

Additionally, the substantial array of *pro bono* counsel that have been recruited to support the Plaintiffs' lawsuit (including *amici curiae*) suggests that the private bar has a strong interest in

---

[9]      *See* https://legalaidnyc.org/stories/ensuring-financial-physical-wellbeing-in-the-consumer-law-unit-and-health-law-project/ (noting that Mr. Lhewa "helps his clients handle debt collections, identity theft, auto and student loans, credit reporting, unfair lending practices, and more").

[10]      https://www.stjohns.edu/law/about/places/consumer-justice-elderly-litigation-clinic

protecting the rights of citizens sued in debt collection matters.  Given this interest, it seems likely that such law firms might <u>themselves</u> be interested in providing free, *pro bono* advice about how to answer a debt collection lawsuit.  Plaintiffs have apparently never tried—let alone exhausted—this substantial resource.

In sum, the public interest considerations at issue here weigh strongly against the requested relief, and this fact would be sufficient to require denial of Plaintiffs' motion <u>standing alone</u>.  *See Winter*, 555 U.S. at 23-24 (declining to undertake a separate analysis of likelihood of success on the merits because "proper consideration" of public interest and equitable factors "alone require[d] denial of the requested injunctive relief").

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be denied.


Dated:  New York, New York.
        April 15, 2022

LETITIA JAMES
Attorney General
State of New York

By:

<u>/s/ Matthew J. Lawson</u>
MATTHEW J. LAWSON
Assistant Attorney General
28 Liberty Street
New York, NY 10005
Tel: (212) 416-8733
matthew.lawson@ag.ny.gov

20