UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UPSOLVE, INC. and REV. JOHN UDO-OKON,<br><br>                              Plaintiffs,<br><br>    -v-<br><br>LETITIA JAMES, in her official capacity as Attorney General of the State of New York,<br><br>                              Defendant. | Case No. 22-CV-00627 (PAC) (SLC) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Plaintiffs*

May 2, 2022

# TABLE OF CONTENTS

Page

**Contents**

Preliminary Statement ............................................................................................................... 1

Argument ..................................................................................................................................... 2

I.     Plaintiffs have standing. ................................................................................................ 2

II.    Plaintiffs seek only to engage in protected speech and association, not a blanket right to practice law. ..................................................................................................... 4

        A.     As applied to Plaintiffs, the UPL rules are content-based regulations of speech. ................................................................................................................ 4

        B.     New York's UPL rules also burden Plaintiffs' Freedom of Association ................ 7

        C.     The UPL rules, as applied here, cannot withstand any level of heightened scrutiny. ............................................................................................................. 8

III.   Plaintiffs' narrow activity is in the public interest. ............................................................ 8

Conclusion ................................................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adam v. Barr*,
  792 F. App'x 20 (2d Cir. 2019) ...................................................................................................3

*Adams v. Am. Bar Ass'n*,
  400 F. Supp. 219 (E.D. Pa. 1975) ................................................................................................7

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) .....................................................................................................................4

*Brokamp v. District of Columbia*,
  No. 20-3574, 2022 WL 681205 (D.D.C. Mar. 7, 2022) .............................................................5

*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016) ........................................................................................................3

*Cincinnati Bar Ass'n v. Bailey*,
  852 N.E.2d 1180 (Ohio 2006) .....................................................................................................7

*City of Austin v. Reagan Nat'l. Advert. of Austin, LLC*,
  596 U.S. __, 2022 WL 1177494 (Apr. 21, 2022) .......................................................................4

*In re Douglas*,
  304 B.R. 223 (Bankr. D. Md. 2003) ...........................................................................................7

*Drew v. Unauthorized Prac. of L. Comm.*,
  970 S.W.2d 152 (Tex. App. 1998) ..............................................................................................7

*Elansari v. Montana*,
  No. 21-57-H-BMM-KLD, 2021 WL 5534930 (D. Mont. Oct. 6, 2021) ..................................6

*Expressions Hair Design v. Schneiderman*,
  137 S. Ct. 1144 (2017) .................................................................................................................6

*Fla. Bar v. Furman*,
  376 So. 2d 378 (Fla. 1979) ..........................................................................................................7

*Hedges v. Obama*,
  724 F.3d 170 (2d Cir. 2013) ........................................................................................................3

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ................................................................................................................4, 5, 6

*Howard v. Superior Ct.*,
   52 Cal. App. 3d 722 (1975) ............................................................................................6

*Lawline v. Am. Bar Ass'n*,
   956 F.2d 1378 (7th Cir. 1992) .....................................................................................6, 7

*McDermott v. Langevin*,
   587 B.R. 173 (Bankr. N.D. Ga. 2018) ............................................................................6

*Monroe v. Horwitch*,
   820 F. Supp. 682 (D. Conn. 1993) ..................................................................................6

*Mont. Sup. Ct. Comm'n on Unauthorized Prac. of L. v. O'Neil*,
   147 P.3d 200 (Mont. 2006) .............................................................................................7

*N.Y. Progress & Prot. PAC v. Walsh*,
   733 F.3d 483 (2d Cir. 2013) ...........................................................................................2

*Nat'l City Bank v. Kessler*,
   No. 03AP-312, 2003 WL 22976609 (Ohio Ct. App. 2003) ............................................7

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
   138 S. Ct. 2361 (2018) ....................................................................................................6

*Ohralik v. Ohio State Bar Ass'n*,
   436 U.S. 447 (1978) ....................................................................................................5, 6

*People v. Shell*,
   148 P.3d 162 (Colo. 2006) ..........................................................................................6, 7

*In re Primus*,
   436 U.S. 412 (1978) ........................................................................................................8

*Ramos v. Louisiana*,
   140 S. Ct. 1390 (2020) ....................................................................................................8

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ........................................................................................................4

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ........................................................................................................6

*State v. Niska*,
   380 N.W.2d 646 (N.D. 1986) .........................................................................................7

*Tandon v. Newsom*,
   141 S. Ct. 1294 (2021) ....................................................................................................8

*Turner v. Am. Bar Ass'n*,
   407 F. Supp. 451 (N.D. Tex. 1975) ...................................................................................7

*Vt. Right to Life Comm., Inc. v. Sorrell*,
   221 F.3d 376 (2d Cir. 2000)..............................................................................................3

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)...............................................................................................................9

**Other Authorities**

Legal Services Corp., *The Justice Gap* (Apr. 2022) ......................................................................10

N.Y. Attorney General, Press Release, *A.G. James and State Police
   Superintendent Bruen Announce Arrest of Phony Attorney* (Mar. 9, 2022) ...............................3

Permanent Comm'n on Access to Justice, *Report to the Chief Judge of the State of
   New York: Appendices* (Nov. 2021).........................................................................................10

Permanent Comm'n on Access to Justice, *Report to the Chief Judge of the State of
   New York: Appendices* (Nov. 2019).........................................................................................10

## PRELIMINARY STATEMENT

The State's Opposition (ECF 58) responds to a case Plaintiffs did not bring. Plaintiffs have carefully designed a program for responding to a narrow but well-documented gap in access to justice by training professionals who are not lawyers to provide free advice to low-income individuals about what to say on a state-provided answer form for responding to a debt-collection action. The advice is free and for the purpose of facilitating access to justice, not for profit or commercial gain. It consists solely of speech and association to help people help themselves; the advisers would not appear in court or submit legal filings. The scope of the advice is narrow, as New York's form illustrates: The advisers are recommending which boxes to check under the circumstances of an individual's case. The need is real, as the alternative is that many people would receive no advice at all and instead would default. And Plaintiffs have an infrastructure for training and regulating advisers to ensure expertise and supplement existing consumer protections.

Plaintiffs' sole submission is that a prosecution under New York's rules governing the unauthorized practice of law ("UPL") would violate the First Amendment as applied to this specific program. As Plaintiffs and their amici have explained, this program involves protected speech and association, as the advice consists solely of speech and the association promotes access to justice. And although the UPL rules are broadly justified, they cannot be constitutionally applied here because the State lacks an adequate justification to prohibit speech and association under this narrow and carefully designed program. This Court should enter a preliminary injunction so Plaintiffs can put this program into operation.

The State's Opposition resists the narrow scope of Plaintiffs' case and instead offers a strawman. The State mainly argues that there is no unqualified "First Amendment right to practice law without a license." Opp. at 5–11. But Plaintiffs nowhere ask this Court to announce such a right. And neither the State nor the cases it relies on addresses the vastly narrower argument that

1

Plaintiffs actually assert. The State instead relies on cases involving conduct like appearing in court or filing legal papers (rather than pure speech and association to advise a client how to represent themselves); for-profit legal services provided for commercial gain (rather than free advice provided to remedy an access-to-justice gap); legal services provided for any and all purposes (rather than advice on one narrow topic); or one-off actors with no training or well-defined rules (rather than the use of an expert-vetted program). The features of Plaintiffs' program make this case fundamentally different and narrower, and precedent shows why Plaintiffs should prevail.

The State (joined by its amici) also claims an injunction would disserve the public interest. But "securing First Amendment rights is in the public interest" and "[t]he Government does not have an interest in the enforcement of an unconstitutional law." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (citation omitted). The limits of Plaintiffs' program also ensure that an injunction would benefit the public: Plaintiffs seek a narrow ruling that preserves the existing status quo in every way except to allow Plaintiffs to speak and associate in this limited fashion. And it is in the public interest to allow Plaintiffs—for free and pursuant to strict, expert-vetted rules—to advise low-income New Yorkers about how to complete a state-provided form, thus reducing the number of individuals who otherwise would go at it alone and likely default. Plaintiffs' advice supports rather than harms the State's own interest in ensuring that all New Yorkers can respond to lawsuits against them. Granting a narrow injunction is in the public interest.

## ARGUMENT

### I. PLAINTIFFS HAVE STANDING.

At the outset, the State argues that Plaintiffs lack standing because their allegations "do not establish a credible threat of prosecution." Opp. at 4. But the test for a credible threat in the First Amendment context is "quite forgiving" and asks only whether a plaintiff's "fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative."

2

*Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (citation omitted). Courts thus "presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013) (internal quotes omitted). A history of enforcement or plan to prosecute the plaintiff is not required; a credible threat exists even if the government disavows an intent to prosecute, since "nothing [would] prevent[] the State from changing its mind." *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000).

Here, Plaintiffs' fear of prosecution is far from imaginary or speculative. Plaintiffs and experts in the field have detailed how they are chilled from advising debt-collection defendants and engaging in other activities due to a well-founded fear of prosecution under the UPL rules. *See* Pavuluri Decl. (ECF 7-1) ¶¶ 32–33; Udo-Okon Decl. (ECF 7-2) ¶¶ 18, 21; Foohey Decl. (ECF 7-6) ¶ 11; NAACP Amicus Br. (ECF 25-1) at 11–12; Nat'l Ctr. for Access to Justice Amicus Br. (ECF 28-1) at 12–13. For its part, the State insists that Plaintiffs' activity is unlawful, actively enforces the UPL rules (including in recent high-profile prosecutions[1]), and does not disavow that it would prosecute Plaintiffs. Even worse, the State emphasizes that, in its view, Plaintiffs' activity would harm the public, underscoring that the risk of prosecution is real.

Plaintiffs are also prepared to implement their program immediately, *see* PI Br. (ECF 6) at 7–9, unlike in the only case the State cites finding no credible threat of prosecution, *see* Opp. at 5. In *Adam v. Barr*, 792 F. App'x 20, 22 (2d Cir. 2019), a plaintiff had no credible fear of prosecution under the drug laws where he had no actual plan to possess marijuana or distribute it to his religious congregation (indeed, he did not even have a congregation). Here, Plaintiffs' plans are concrete and imminent. And the whole point of a pre-enforcement challenge is to avoid a situation where a

---

[1] *See, e.g.*, N.Y. Attorney General, Press Release, *A.G. James and State Police Superintendent Bruen Announce Arrest of Phony Attorney* (Mar. 9, 2022) (prosecuting an individual under the UPL rules and encouraging victims of "this type of crime" to contact the Attorney General).

person must refrain from protected activity or else risk prosecution. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

## II. PLAINTIFFS SEEK ONLY TO ENGAGE IN PROTECTED SPEECH AND ASSOCIATION, NOT A BLANKET RIGHT TO PRACTICE LAW.

### A. As applied to Plaintiffs, the UPL rules are content-based regulations of speech.

This is not a case about an unqualified "First Amendment right to practice law without a license." Opp. at 1, 5–11. Rather, the much narrower question here is whether New York's UPL rules, as applied to Plaintiffs' free and reliable person-to-person legal advice about how to fill out a state-provided form, are a content based regulation of speech. *See* PI Br. at 10–12 (explaining why the UPL rules are content based); Inst. for Justice Amicus Br. (ECF 45) at 3–11 (same).

A law is content based "if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin v. Reagan Nat'l. Advert. of Austin, LLC*, 596 U.S. __, 2022 WL 1177494, at *4 (Apr. 21, 2022) (slip op. at 6) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). In an as-applied challenge like this one, the law is not considered on its face or defined at a high level of abstraction, rather, the question is whether "*as applied to plaintiffs* the conduct triggering coverage under the state consists of communicating a message." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010) (emphasis added). Thus, in *Holder*, the Supreme Court held that a statute "prohibit[ing] the provision of 'material support or resources'" to terrorist organizations was a content-based regulation of speech to the extent it barred plaintiffs' speech "communicat[ing] advice derived from 'specialized knowledge' [such as] training on the use of international law" while permitting speech that "impart[ed] only general or unspecialized knowledge." *Id.* at 7, 27. Here, as in *Holder*, Plaintiffs want to "speak to [populations in need of advice], and whether they may do so … depends on what they say"—the UPL rules are thus content

4

based as applied to Plaintiffs and must satisfy strict scrutiny. *Id.* at 27. Indeed, *the only activity Plaintiffs seek to engage in is speech*—Plaintiffs will not be filing documents or appearing in court, they will simply provide advice to individuals on the narrow topic of whether and how to fill out the state-provided answer form, *see* Compl. Ex. B. (ECF 1-2) (detailing Plaintiffs' program)—and the UPL rules make that speech unlawful because its content is legal advice.

The crux of the State's argument is that the UPL rules are "directed at conduct, not speech, and do not purport to draw content-based distinctions." Opp. at 12–13. But *Holder* forecloses that argument. The Supreme Court recognized that the law in *Holder* "may be described as directed at conduct" or may "*generally* function[] as a regulation of conduct." *Holder*, 561 U.S. at 27–28. But, the Court held, where that "generally applicable law was directed at [a party] because of what his speech communicated," it is a content-based regulation of *speech* (not conduct) and must satisfy strict scrutiny. *Id.* The UPL rules, as applied here, do exactly that: they make—and are designed to make—Plaintiffs' speech unlawful because of the legal advice it communicates.[2]

The State cites a number of cases rejecting an unqualified First Amendment right to practice law. *See* Opp. at 5–8. But Plaintiffs are not asserting such a right, and none of the State's cases involve an as-applied challenge to a program with the features at issue here, where Plaintiffs are providing free, carefully circumscribed, and expert-vetted legal advice for the purpose of increasing access to justice. *See* PI Br. at 10. For example, the State relies on *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978). But that case involved for-profit solicitation, holding that a state "may discipline a lawyer for soliciting clients in person, for pecuniary gain, under circumstances likely to pose dangers that the State has a right to prevent." *Id.* at 449. The statement that "it has

---

[2] In a very recent case, another district court rejected the exact argument the State makes here: "Defendant's characterization of the licensing requirement as a professional regulation cannot lower [the] bar," because the law "regulates counseling, which is speech, not conduct" and "only applies to Plaintiff's speech if she speaks about certain topics." *Brokamp v. District of Columbia*, No. 20-3574, 2022 WL 681205, at *1 (D.D.C. Mar. 7, 2022) (cleaned up).

5

never been deemed an abridgment of freedom of speech … to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language," *id.* at 456, is likewise beside the point. That statement was part of the Court's explanation that "the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Id.* This case, by contrast, involves *only* speech provided for free and for expressive purposes (to increase access to justice).

More recent cases confirm that application of the UPL rules to Plaintiffs triggers First Amendment scrutiny because it would "impose[] more than an incidental burden on protected expression" and "impose[] a burden based on the content of speech and the identity of the speaker." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011); *see, e.g.*, *Holder, supra* at 4–5; *see also, e.g.*, *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2368–70, 2373–74 (2018) (a regulation requiring free clinics to disseminate a government-drafted notice was not a "regulation[] of professional conduct that incidentally burden[s] speech" but instead "regulates speech as speech"); *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1151 (2017) (requiring heightened scrutiny for a law "regulat[ing] how sellers may communicate their prices").

This Court thus has no occasion to address whether the UPL rules are unconstitutional in *all* applications—the question in many of the State's cases[3]—or to consider applications of the UPL rules to appearing in court or filing legal documents, especially when undertaken for profit—the question in the State's other cases.[4] And none of the State's cases involve providing free advice

---

[3] The State's only in-Circuit case, *Monroe v. Horwitch*, 820 F. Supp. 682, 683–86 (D. Conn. 1993), *aff'd*, 19 F.3d 9 (2d Cir. 1994) (Table), addressed the question on its face without reference to the application of UPL rules in that particular case. *See also, e.g.*, *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1386 (7th Cir. 1992) (addressing a "facial constitutional attack"); *McDermott v. Langevin*, 587 B.R. 173, 184–85 (Bankr. N.D. Ga. 2018) (facial challenge to bankruptcy petition preparer regulations); *Howard v. Superior Ct.*, 52 Cal. App. 3d 722, 724 (1975) (involving an injunction "against all enforcement of … a statute").

[4] *See Elansari v. Montana*, No. 21-57-H-BMM-KLD, 2021 WL 5534930, at *2 (D. Mont. Oct. 6, 2021) ("draft[ing] pleadings and fil[ing] legal documents"); *People v. Shell*, 148 P.3d 162, 170 (Colo. 2006) ("draft[ing] legal pleadings

about how to fill in a state-provided form, or involve a program with expert-approved training and rules to ensure uniform, high-quality advice that leaves recipients better off.

A number of the State's cases instead support Plaintiffs. For example, the Seventh Circuit in *Lawline* rejected a "facial constitutional attack" to UPL regulations, but declined to "speculate as to whether th[at] regulation would be constitutional as applied to particular cases," and expressly acknowledged that "[t]here may well be many activities which lawyers routinely engage in which are protected by the First Amendment and which could not be constitutionally prohibited to laypersons." *Lawline*, 956 F.2d at 1386; *see Shell*, 148 P.3d at 173 ("[S]ome activities constituting the practice of law are difficult to disentangle from the exercise of free speech.").

**B. New York's UPL rules also burden Plaintiffs' Freedom of Association.**

Plaintiffs assert a second independent claim that the UPL rules—again, solely as applied to Plaintiffs' activity—violate Plaintiffs' Freedom of Association. *See* PI Br. at 12–15; NAACP Amicus Br. at 7–15. To the extent the State addresses this claim, it is to woodenly state that the cases Plaintiffs cite "do[] not address whether unlicensed laypersons have a First Amendment right to practice law." Opp. at 11.

Here, too, the State misses the point. In the cited cases, the Supreme Court and Courts of Appeals recognized that "collective activity undertaken to obtain meaningful access to the courts

---

and attempt[ing] to represent another person in a judicial proceeding"); *Mont. Sup. Ct. Comm'n on Unauthorized Prac. of L. v. O'Neil*, 147 P.3d 200, 204 (Mont. 2006) (circulating misleading advertisements, claiming to be a member of the bar, and "represent[ing] [an individual] in a dissolution proceeding"); *Cincinnati Bar Ass'n v. Bailey*, 852 N.E.2d 1180, 1183 (Ohio 2006) ("prepar[ing] requests for appeals, accident reports, affidavits[,] … and petitions" and "communicat[ing] … with court employees"); *State v. Niska*, 380 N.W.2d 646, 648 (N.D. 1986) ("draft[ing] pleadings for [a client] and advised [the client] in three civil cases and one criminal action in which [the client] was involved"); *Nat'l City Bank v. Kessler*, No. 03AP-312, 2003 WL 22976609, at *6 (Ohio Ct. App. 2003) ("represent[ing] others in court"); *Drew v. Unauthorized Prac. of L. Comm.*, 970 S.W.2d 152, 153 (Tex. App. 1998) ("fil[ing] applications for writs of habeas corpus"); *Adams v. Am. Bar Ass'n*, 400 F. Supp. 219, 225 (E.D. Pa. 1975) ("represent[ing] one another in various civil and criminal cases"); *In re Douglas*, 304 B.R. 223, 239 (Bankr. D. Md. 2003) (addressing "not … the preparation of petitions and schedules, but rather … their distribution"); *Fla. Bar v. Furman*, 376 So. 2d 378, 379 (Fla. 1979) ("preparing pleadings"); *Turner v. Am. Bar Ass'n*, 407 F. Supp. 451, 477 (N.D. Tex. 1975) ("perform[ing] functions in Court"). None of these cases involved pure, non-commercial speech like Plaintiffs'.

7

is a fundamental right within the protection of the First Amendment." PI Br. at 12 (quoting *In re Primus*, 436 U.S. 412, 426 (1978)). Plaintiffs have explained why the activity they seek to engage in falls within this rule of law and is thus protected. *See id.* at 15. The State notes that the facts of those cases are not identical to the facts here. *See* Opp. 8–11. But that is unsurprising, as Plaintiffs are proposing a novel program for addressing a longstanding problem. The State, however, fails to grapple with those decisions' *reasoning*. And "[i]t is … a judicial decision's reasoning—its *ratio decidendi*—that allows it to have life and effect in the disposition of future cases." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1404 (2020) (opinion of Gorsuch, J.). Under the reasoning of those cases, heightened scrutiny applies to Plaintiffs' collective activity undertaken to improve access to justice. *See* NAACP Amicus Br. at 10 n.2 ("[T]he core lesson from these cases … depended on the fact that the laws restricted an organization's ability to associate freely for political purposes.").

### C. The UPL rules, as applied here, cannot withstand any level of heightened scrutiny.

The State mainly argues that the UPL rules, on their face, satisfy rational basis. Opp. at 11–15. The State, however, nowhere attempts to meet "the government['s] … burden" to justify application of the UPL rules *to Plaintiffs' program specifically*. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). In particular, the State cannot justify prosecuting Plaintiffs for engaging in (1) pure speech; (2) provided for free and for expressive purposes, rather than for profit or any commercial purpose; (3) to provide carefully-cabined advice to individuals in a defined area about how to fill in a state-provided form; (4) pursuant to careful training and supervision, to ensure that the advice is sound; and (5) when the need is immense, as illustrated by the extraordinarily high default rates and the need in Plaintiff Udo-Okon's community. They cannot do so, as application of the UPL rules here cannot satisfy any level of heightened scrutiny. *See* PI Br. at 16–19.

### III. PLAINTIFFS' NARROW ACTIVITY IS IN THE PUBLIC INTEREST.

Plaintiffs (and Plaintiffs' amici) explained why allowing their narrow intervention is in the

8

public interest. *See* PI Br. at 20; *see also, e.g.*, Nat'l Ctr. for Access to Justice Amicus Br. at 3–16.[5] All Plaintiffs seek to do is provide free advice to low-income New Yorkers on whether and how to fill in a state-provided answer form, and will do so following a strict, expert-approved Training Guide, which requires robust disclosure and informed consent. *See* Compl. Ex. B. Given current high rates of default, *see* Compl. ¶¶ 17–24; the State's own desire to facilitate answering such lawsuits (as illustrated by the answer form); and Plaintiff Udo-Okon's attestation that there are people in his community who need this advice, *see* Udo-Okon Decl. ¶ 17, allowing Plaintiffs to exercise their constitutional rights in this limited way is in the public interest.

The State does nothing to show that Plaintiffs' actual activities as described in the Complaint and attached Training Guide would harm the public interest—which is the only relevant question. The State instead starts at the bottom of an imagined slippery slope and offers three arguments against a sweeping challenge that Plaintiffs do not bring. *First*, the State faults Plaintiffs for "bypass[ing] crucial safeguards," like the bar exam, "that ensure the qualifications and moral fitness of practitioners." Opp. at 15–16. But while these safeguards may be important in other contexts, the State makes no attempt to explain why this is a problem *here*, where Plaintiffs would provide free, narrow advice pursuant to a strict, expert-approved Training Guide. Since the legal advice being provided is strictly defined and regulated (and provided without financial incentive), there is no need for the State's ordinary processes for deciding who may engage in all aspects of legal practice. *Second*, the State stirs up concerns far beyond this case by suggesting Plaintiffs will "usurp the legislature's role" and "create confusion in law." *Id.* at 17–18. This case raises only a narrow as-applied challenge that will not disrupt the state's well-justified regulation of the legal profession in other contexts. Any concern about a "wave of additional lawsuits" should be aired

---

[5] The State's Opposition does not dispute Plaintiffs' claim "that they are likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see* PI Br. at 19–20.

in those cases (if they arise), not this one. *Id.* at 18.

*Third*, the State (joined by amici) argues that "existing resources are []adequate to supply the limited legal advice contemplated here." *Id.* at 18–20; *see* Advocates Amicus Br. (ECF 57) at 5–9, 13. As a threshold matter, the precise magnitude of the problem Plaintiffs are helping to solve—or the fact that Plaintiffs might also solve other problems or that others might help solve this one—is irrelevant here, as the question is whether the assistance Plaintiffs will provide to people who seek it is in the public interest, and the State has not shown otherwise.[6] At any rate, the State's unsupported claim that there is no access-to-justice gap in this area is contradicted by the State's amici's own statements to the Chief Judge of the State of New York that "***The current scope of the unmet need for civil legal services by low-income New Yorkers in the context of debt collection is substantial***" and that "limited-scope assistance"—like that which Plaintiffs seek to provide—"can help stop the devastating harm of judgments on the lives of indigent and working-poor New Yorkers by helping them ... assert legal defenses in the underlying lawsuits."[7]

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion.

---

[6] The State's amici's focus on "sewer service" is beside the point since they offer no evidence that sewer service (and not the failure to answer and raise other affirmative defenses) is the only issue affecting the low-income New Yorkers Plaintiffs will advise. Moreover, Plaintiffs' Training Guide expressly requires Justice Advocates to advise clients who were not properly served to contact an outside legal aid organization. *See* Compl. Ex. B. at 7 ("Please advise the client that if they want to challenge service, they will probably want to file a Motion to Dismiss. Tell them this is outside the scope of what you're able to advise them on, but may be a good option IN ADDITION to filing this answer. Whether to file a Motion to Dismiss is something for which you should advise the client to consult the resources listed in Exhibit D."); *see id.* at Ex. D. (listing alternative sources of assistance, including several of the State's amici).

[7] Permanent Comm'n on Access to Justice, *Report to the Chief Judge of the State of New York: Appendices*, at 126 (Nov. 2021), https://www.nycourts.gov/LegacyPDFS/accesstojusticecommission/Appendices-for-Posting.pdf (signed by directors of State's Amici New York Legal Assistance Group, Mobilization for Justice, Brooklyn Bar Association Volunteer Lawyers Project, Queens County Bar Association) (emphasis added); *see also, e.g.*, Legal Services Corp., *The Justice Gap*, at 9 (Apr. 2022), https://lsc-live.app.box.com/s/ xl2v2uraiotbbzrhuwtjlgi0emp3myz1 ("LSC-funded organizations [like State's amici Legal Assistance of Western New York, Legal Services of the Hudson Valley, and Legal Services NYC] do not have enough resources to meet the current demand for civil legal aid in the communities they serve."); Permanent Comm'n on Access to Justice, *Report to the Chief Judge of the State of New York: Appendices*, at 322–23 (Nov. 2019), https://www.nycourts.gov/LegacyPDFS/19_ATJ-Comission_Report-Appendices.pdf (additional State's amici noting that "the 'justice gap' in the consumer defense area is significant").

| | |
|---|---|
| Dated: New York, New York<br>May 2, 2022 | Respectfully submitted,<br><br> /s/  Gregory Silbert<br>Gregory Silbert<br>Robert B. Niles-Weed<br>Elena De Santis<br>Liz Grefrath<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>(212) 310-8000<br><br>Zachary D. Tripp<br>WEIL, GOTSHAL & MANGES LLP<br>2001 M Street, NW<br>Washington, DC 20036<br>(202) 682-7000<br><br>*Counsel for Plaintiffs* |

11