22-1345
*Upsolve, Inc. v. James*

1:22-cv-00627-RMB

# United States Court of Appeals
# For the Second Circuit

August Term 2023



Argued:   May 29, 2024
Decided: September 9, 2025

No. 22-1345

UPSOLVE, INC., REVEREND JOHN UDO-OKON,

*Plaintiffs-Appellees,*

LETITIA JAMES, in her official capacity as Attorney General of New York,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of New York
No. 22-cv-627, Paul A. Crotty, *Judge.*

Before:   LEVAL, SULLIVAN, and MERRIAM, *Circuit Judges.*

Letitia James, in her official capacity as Attorney General of New York, appeals from an order of the United States District Court for the Southern District of New York (Crotty, *J.*) entering a preliminary injunction that prohibits her from enforcing New York's unauthorized practice of law ("UPL") statutes against Upsolve, Inc. ("Upsolve") and Reverend John Udo-Okon (together, "Plaintiffs"). Upsolve is a nonprofit that seeks to provide free legal advice to New Yorkers facing debt-collection actions in state court.   Specifically, Upsolve intends to train nonlawyer "Justice Advocates," such as Rev. Udo-Okon, to advise *pro se* New Yorkers on how to complete the state's check-the-box form for answering debt-

CERTIFIED COPY ISSUED ON 09/09/2025

collection claims. The parties all agree that the actions of the Justice Advocates would violate New York's UPL statutes because they would be providing individualized legal advice without being licensed as, or supervised by, attorneys. As a result, Plaintiffs brought a pre-enforcement challenge, arguing that the UPL statutes, as applied to them, would violate their First Amendment right to the freedom of speech. In ruling on Plaintiffs' motion for a preliminary injunction, the district court concluded that Plaintiffs had made a strong showing that they were likely to succeed on the merits because New York's UPL statutes, as applied to Plaintiffs, constitute a content-based regulation of speech and cannot survive strict scrutiny.

We agree with the district court that New York's UPL statutes, as applied to Plaintiffs, constitute a regulation of speech. Nevertheless, we hold that such regulation is content neutral and thus subject only to intermediate scrutiny. Because the district court applied the incorrect level of scrutiny, we **VACATE** the preliminary injunction order of the district court and **REMAND** for further proceedings consistent with this Opinion.

VACATED AND REMANDED.

> CLELAND B. WELTON II, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Judith N. Vale, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, NY, *for Defendant-Appellant*.
>
> ROBERT J. MCNAMARA (Brian Morris, *on the brief*), Institute for Justice, Arlington, VA, *for Plaintiffs-Appellees*.
>
> Matthew D. Brinckerhoff, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, New York, NY, *for Amici Curiae Civil Legal Services Organizations, Consumer Law and Access-to-Justice Experts, and Civil Rights Organizations in support of Defendant-Appellant*.

2

Tatiana Neroni, *pro se*, Georgetown, SC, *for Amicus Curiae Tatiana Neroni in support of Plaintiffs-Appellees*.

Gregory A. Beck, Washington, DC, *for Amicus Curiae Responsive Law in support of Plaintiffs-Appellees*.

Joseph Rostain Schottenfeld, Martina Tiku, Glynnis Hagins, NAACP Empowerment Programs, Baltimore, MD; Daniel A. Rubens, Jodie C. Liu, Orrick, Herrington & Sutcliffe LLP, New York, NY; Sarah H. Sloan, Orrick, Herrington & Sutcliffe LLP, Washington, DC, *for Amici Curiae The NAACP and The NAACP New York State Conference in support of Plaintiffs-Appellees.*

Peter Karanija, DLA Piper LLP (US), Washington, DC, *for Amici Curiae Professor Rebecca L. Sandefur and 22 Empirical Scholars in support of Plaintiffs-Appellees*.

David Udell, National Center for Access to Justice, New York, NY; Bruce A. Green, Louis Stein Center for Law and Ethics, New York, NY, *for Amicus Curiae National Center for Access to Justice in support of Plaintiffs-Appellees*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Letitia James, in her official capacity as Attorney General of New York (the "Attorney General"), appeals from an order of the United States District Court for the Southern District of New York (Crotty, *J.*) entering a preliminary injunction

3

that prohibits her from enforcing New York's unauthorized practice of law ("UPL") statutes against Upsolve, Inc. ("Upsolve") and Reverend John Udo-Okon (together, "Plaintiffs"). Upsolve is a nonprofit that seeks to provide free legal advice to New Yorkers facing debt-collection actions in state court. Specifically, Upsolve intends to train nonlawyer "Justice Advocates," such as Rev. Udo-Okon, to advise *pro se* New Yorkers on how to complete the state's check-the-box form for answering debt-collection claims. The parties all agree that the actions of the Justice Advocates would violate New York's UPL statutes because they would be providing individualized legal advice without being licensed as, or supervised by, attorneys. As a result, Plaintiffs brought a pre-enforcement challenge, arguing that the UPL statutes, as applied to them, would violate their First Amendment right to the freedom of speech. In ruling on Plaintiffs' motion for a preliminary injunction, the district court concluded that Plaintiffs had made a strong showing that they are likely to succeed on the merits because New York's UPL statutes, as applied to Plaintiffs, constitute a content-based regulation of speech and cannot survive strict scrutiny.

We agree with the district court that New York's UPL statutes, as applied to Plaintiffs, constitute a regulation of speech. Nevertheless, we hold that such

regulation is content neutral and thus subject only to intermediate scrutiny. Because the district court applied the incorrect level of scrutiny, we VACATE the preliminary injunction order of the district court and REMAND for further proceedings consistent with this Opinion.

## I.    BACKGROUND

Debt-collection actions are one of the most common lawsuits in New York, accounting for approximately one-quarter of all suits filed in state court. However, in seventy to ninety percent of such cases, the defendant fails to appear, resulting in a default judgment.   This is a problem because many of these debt-collection actions are "clearly meritless"; the defendants do not actually owe the amount claimed or, in some cases, do not owe any money at all.   J. App'x at 14 (internal quotation marks omitted).   And "[w]hen defendants default, plaintiffs never have any need to prove their cases, and courts have no opportunity to assess the merits of their claims, even when a claim would fail were it subjected to adversarial testing."   *Id.* at 15.   A default judgment can have severe consequences for New Yorkers, "lead[ing] to wage garnishment, eviction, repossession of an automobile, bank seizures, and lasting damage to a consumer's credit."   *Id.*

As a result, since at least 2015, New York has sought to simplify the process of answering a debt-collection action by providing a one-page check-the-box form that *pro se* defendants can fill out on their own and return to the court. Nevertheless, according to Upsolve, this "form is inadequate . . . to close the gap in the access to justice" because it "includes language that requires some measure of familiarity with the legal system and specialized terminology, which many low-income defendants lack." *Id.* at 19. For example, the form contains boxes to check if "service [of the summons and complaint] was not correct as required by law," the statute of limitations bars the creditor's claim, "[t]he collateral (property) was not sold at a commercially reasonable price," the creditor "[f]ail[ed] to mitigate damages," the creditor violated "the duty of good faith and fair dealing," the contract is unconscionable, the equitable doctrine of laches applies, or the defendant's income is exempt from collection. *Id.* at 40.

To further assist *pro se* defendants in responding to debt-collection actions, Upsolve seeks to train nonlawyers as "Justice Advocates" "to provide free legal advice on whether and how to respond to a debt[-]collection lawsuit." *Id.* at 10. Specifically, Justice Advocates will

> (1) determine whether the client could benefit from their advice; (2) confirm the limited scope of representation with the client; (3) advise

6

the client whether it is in their best interest to answer the lawsuit against them; (4) advise the client on how to fill out the answer based on the client's answers to a series of straightforward questions; and (5) advise the client on how and where to file and serve the answer.

*Id.* at 25.   According to Upsolve, Justice Advocates will be required to undergo a virtual training program and will be provided with a training guide that "has been independently reviewed by third-party experts in consumer law and debt[-]collection defense."  *Id.* at 26.   Justice Advocates will also be required to sign an affidavit, promising to provide their advice free of charge; to abide by New York's Rules of Professional Conduct regarding conflicts of interest, confidentiality, and informed consent; and to only provide advice within the scope of the training guide.   Additionally, Justice Advocates will be warned that "providing legal advice outside the narrow scope and strict terms of the program may expose them to prosecution for engaging in the unauthorized practice of law or under other fraud or consumer-protection laws."  *Id.* at 28.

Rev. Udo-Okon is one prospective Justice Advocate.   As a pastor in the South Bronx, he has witnessed how many members of his community "cannot understand or access their legal rights" and "cannot afford to hire lawyers to help them with their problems," such as debt-collection actions.  *Id.* at 81.   As a result, members of his community frequently approach him for assistance with their legal

problems.   But because Rev. Udo-Okon is not a lawyer, he must refer these individuals to outside agencies.   These individuals have reported to him that they are then placed on "long waiting lists," oftentimes not receiving legal assistance until it is too late.   *Id.*   Given these problems, Rev. Udo-Okon wishes to become a Justice Advocate.   He has also provided a petition with over 100 signatures of individuals who expressed interest in receiving free legal advice from him, including with respect to debt collection.

The challenge for Upsolve and Rev. Udo-Okon, however, is that New York law prohibits individuals who are not admitted to the state bar from engaging in the "unlawful practice of law" and imposes civil and criminal penalties on those who engage in such conduct.   *See* N.Y. Jud. Law §§ 476-a, 478, 484–85.   A court may hold a nonlawyer who practices law in criminal or civil contempt, *see id.* §§ 750(B), 753(A)(4), and the Attorney General of New York may sue "any person, partnership, corporation, or association" who engages in "the unlawful practice of the law," *id.* § 476-a(1).   The New York Court of Appeals has explained that the practice of law includes "the rendering of legal advice and opinions directed to particular clients."   *In re Rowe*, 80 N.Y.2d 336, 341–42 (1992); *see also El Gemayel v. Seaman*, 72 N.Y.2d 701, 706 (1988) (similar).   All parties here agree that Justice

8

Advocates would be practicing law in violation of New York's UPL statutes by providing clients with individualized legal advice regarding their debt-collection actions. *See, e.g.*, *Sussman v. Grado*, 746 N.Y.S.2d 548, 552–53 (Dist. Ct. Nassau Cnty. 2002) (holding that a paralegal who applied "independent judgment" to help a client fill out a form without the supervision of an attorney engaged in the unauthorized practice of law).

Plaintiffs filed a pre-enforcement challenge in the United States District Court for the Southern District of New York, arguing that the application of New York's UPL statutes to them would violate their First Amendment right to the freedom of speech. Plaintiffs also sought a preliminary injunction prohibiting the Attorney General from enforcing the UPL statutes against them. After reviewing various declarations from Plaintiffs and hearing oral argument, the district court concluded (1) that Plaintiffs had standing to challenge the UPL statutes and (2) that Plaintiffs were likely to succeed on the merits of their challenge. Specifically, the district court held that the UPL statutes, as applied to Plaintiffs, are a content-based regulation of speech but are not narrowly tailored and thus fail strict scrutiny. The district court then concluded that Plaintiffs would be irreparably injured absent an injunction and that the balance of equities and the public interest

favored granting an injunction.   Accordingly, the district court enjoined the Attorney General from enforcing the UPL statutes against Plaintiffs, any Justice Advocates, any clients of Upsolve's program, or Upsolve's legal advisors during the pendency of this action.   The Attorney General timely appealed pursuant to 28 U.S.C. § 1292(a)(1).

## II.   STANDARD OF REVIEW

"We review the legal question[] of whether a plaintiff has standing *de novo*." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011).   We then review a district court's grant or denial of a preliminary injunction for abuse of discretion.   *See We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 280 (2d Cir. 2021).   A district court abuses its discretion "when its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding or cannot be located within the range of permissible decisions."   *Id.* (internal quotation marks omitted).

## III.   DISCUSSION

### A. Standing

The Attorney General first argues that Plaintiffs lack standing to challenge the application of New York's UPL statutes.   "[T]o establish standing, a plaintiff

10

must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). We have explained that when standing is at issue, a plaintiff seeking a preliminary injunction "cannot rest on . . . mere allegations . . . but must set forth by affidavit or other evidence specific facts that establish the three familiar elements of standing." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) (internal quotation marks omitted).

Typically, a plaintiff who brings a cause of action based an alleged future injury will have standing only if the threatened injury is "*certainly impending*" or there is "substantial risk" of harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013) (internal quotation marks omitted). Nevertheless, "we assess pre-enforcement First Amendment claims, such as the ones [Plaintiffs] bring[], under somewhat relaxed standing . . . rules." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). In particular, "we apply the three-pronged test that the Supreme Court set forth in *Susan B. Anthony List* [*v. Driehaus*, 573 U.S. 149 (2014),*]* to assess the existence of a cognizable injury in fact in the context of a pre-

11

enforcement First Amendment challenge." *Cerame v. Slack*, 123 F.4th 72, 81 (2d Cir. 2024). According to that test, a plaintiff must demonstrate: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the intended conduct is "arguably proscribed by" the challenged regulation; and (3) that "there exists a credible threat of prosecution thereunder" that is "sufficiently imminent." *Susan B. Anthony List*, 573 U.S. at 159, 162 (internal quotation marks omitted).

We conclude that Plaintiffs have satisfied each of those components here. *First*, Plaintiffs intend to provide individualized legal advice to *pro se* defendants in New York debt-collection suits, which certainly involves conduct affected with a First Amendment interest. They have demonstrated their intent to engage in such conduct by consulting with legal experts, preparing a training manual, and recruiting Justice Advocates, such as Rev. Udo-Okon. Likewise, Rev. Udo-Okon has submitted a sworn declaration attesting that he would participate in Upsolve's program as a Justice Advocate. *Second*, the parties all agree that Plaintiffs' contemplated conduct is proscribed by New York's UPL statutes. *Third*, there is a credible threat of prosecution that is sufficiently imminent. Indeed, we "are generally willing to presume that the government will enforce the law as long as

the relevant statute is recent and not moribund." *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (internal quotation marks omitted). Accordingly, this requirement "sets a low threshold and is quite forgiving to plaintiffs seeking . . . pre[-]enforcement review." *Id.* (internal quotation marks omitted). As the district court rightly observed, "New York's UPL rules are hardly moribund" but rather "are frequently enforced against lawyers and non-lawyers alike." *Upsolve, Inc. v. James*, 604 F. Supp. 3d 97, 106 (S.D.N.Y. 2022) (collecting examples). It also bears noting that "the Attorney General declined to disavow enforcement against Plaintiffs at oral argument" before the district court. *Id.*

The Attorney General nevertheless argues that there is no credible threat of prosecution because Plaintiffs have "failed to demonstrate the existence of any client to whom they anticipate providing unlicensed legal counsel." Att'y Gen. Br. at 31. But this argument is belied by the record. In his sworn declaration, Rev. Udo-Okon averred that members of his community frequently approach him "for legal advice on how to respond to debt-collection lawsuits," J. App'x at 83, and that he would like to participate in Upsolve's program "as soon as possible," *id.* at 85. In fact, Rev. Udo-Okon provided a petition signed by 114 individuals, attesting that they are "interested in and would benefit from free legal advice

from" him. *Id.* at 88. The Attorney General contends that this petition should be disregarded because it constitutes hearsay, but our caselaw is clear that "hearsay evidence may be considered by a district court in determining whether to grant a preliminary injunction." *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010).

The Attorney General also makes much of the fact that the petition refers to free legal counsel in general without any specific reference to debt-collection lawsuits. But we conclude that the petition, combined with Rev. Udo-Okon's sworn statement that he has been approached by community members for legal advice regarding debt-collection actions, is sufficient to establish that there are clients to whom Plaintiffs intend to provide unlicensed legal advice and that Plaintiffs face a credible threat of prosecution sufficient to establish injury in fact. Because the Attorney General does not challenge the causation and redressability prongs of the *TransUnion* test, we need not analyze them. We therefore hold that Plaintiffs have standing to pursue a preliminary injunction here.

### B. Likelihood of Success on the Merits

We next examine whether the district court abused its discretion in granting the preliminary injunction. As the Supreme Court has explained, "[a] preliminary injunction is an extraordinary and drastic remedy" and "is never

14

awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal quotation marks omitted).   Indeed, we have warned that preliminary injunctions "should not be routinely granted" and that courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."   *We the Patriots*, 17 F.4th at 279 (internal quotation marks and footnote omitted).   For a plaintiff "[t]o obtain a preliminary injunction that will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction."   *Id.* (internal quotation marks omitted).   The plaintiff "must also show that the balance of equities supports the issuance of an injunction."   *Id.* at 280.   The district court concluded that each of the three elements and the balance of the equities here supported the issuance of a preliminary injunction.   Because "in First Amendment cases[,] the likelihood of success on the merits is the dominant, if not the dispositive, factor" in determining whether to grant a preliminary injunction, we begin with that factor.   *Agudath Isr. of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020) (internal quotation marks omitted).

The First Amendment, which is made applicable to the states through the Due Process Clause of the Fourteenth Amendment, prohibits laws "abridging the freedom of speech."   U.S. Const. amend. I; *see Slattery v. Hochul*, 61 F.4th 278, 287 n.1 (2d Cir. 2023).   Regulations of speech that are based on the content of that speech trigger strict scrutiny, which requires the government to "prove[] that they are narrowly tailored to serve compelling state interests."   *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).   Accordingly, we must address two questions:   (1) whether New York's UPL statutes, as applied to Plaintiffs, regulate speech and (2) if so, whether that regulation is content based.

We first hold that New York's UPL statutes, as applied to Plaintiffs, constitute a regulation of speech.   The Supreme Court has explained that for an as-applied challenge, courts should look to whether "the conduct triggering coverage under the statute consists of communicating a message."   *Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010).   Here, Plaintiffs simply wish to communicate legal advice to their potential clients regarding how to fill out New York's one-page form for answering debt-collection actions.   Plaintiffs do not intend to draft pleadings, appear in court, or file any legal documents.   As the Supreme Court has made clear, "the creation and dissemination of information are

16

speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). Indeed, "[i]f the acts of disclosing and publishing information do not constitute speech, it is hard to imagine what does fall within that category." *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (internal quotation marks omitted).

Our sister circuits have reached similar conclusions in analogous cases involving regulated professions. For example, the Fourth Circuit has held that a local ordinance in Charleston, South Carolina prohibiting unlicensed tour guides from leading paid tours "undoubtedly burden[ed]" speech. *Billups v. City of Charleston*, 961 F.3d 673, 683 (4th Cir. 2020). The Fourth Circuit noted that the local ordinance targeted activity that, "by its very nature, depends upon speech." *Id.* Likewise, the Fifth Circuit recently held that a Texas regulation prohibiting veterinarians from providing medical advice by telephone or electronic means was a regulation of speech. *See Hines v. Pardue*, 117 F.4th 769, 777–78 (5th Cir. 2024). The Fifth Circuit reasoned that "[b]ecause the act in which [the veterinarian] engaged that trigger[ed] coverage under the [regulation] was the communication of a message, the State primarily regulated [the veterinarian's] speech." *Id.* at 778 (internal quotation marks omitted). Because the act in which Upsolve and Rev.

Udo-Okon wish to engage involves the communication of a message (*i.e.*, legal advice), the Fourth and Fifth Circuit's conclusions apply with equal force here.

In response, the Attorney General argues that the UPL statutes simply seek to regulate "the *conduct* of applying legal knowledge, judgment, and skill to the facts of a client's case to *generate* legal counsel for that client," which occurs "logically and temporally prior to the speech act of *communicating* the counsel thereby generated." Att'y Gen. Br. at 40. While it is true that "[s]tates may regulate professional conduct, even though that conduct incidentally involves speech," *Nat'l Inst. of Family & Life Advocs. v. Becerra* (*NIFLA*), 585 U.S. 755, 768 (2018), the Supreme Court has cautioned that "[s]tate labels cannot be dispositive of [the] degree of First Amendment protection," *id.* at 773 (internal quotation marks omitted). We must instead consider "[t]he restriction's effect, as applied, in a very practical sense." *Thomas v. Collins*, 323 U.S. 516, 536 (1945). Otherwise, states would have "unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *NIFLA*, 585 U.S. at 773.

The UPL statutes, as applied to Plaintiffs, restrict their ability to *communicate* legal advice, rather than limiting Plaintiffs' ability to research and develop that advice. Indeed, the Attorney General presumably would not seek to enforce New

York's UPL statutes against Plaintiffs if they simply formulated legal advice in their own minds without ever conveying that advice to a client. *See Rowe*, 80 N.Y.2d at 341–42 (explaining that the practice of law involves the "rendering of legal advice and opinions directed to particular clients"). In *Hines*, the Fifth Circuit rejected an argument analogous to the one the Attorney General raises here. There, the Fifth Circuit emphasized that Texas "did not penalize [the veterinarian] for viewing charts or considering different medical reports"; it "only penalized him for his *communication* with the owner about her bird in which he gave a diagnosis and treatment plan." *Hines*, 117 F.4th at 778. In other words, "the regulation *only* kicked in when [the veterinarian] began to share his opinion with his patient's owner." *Id.* Because New York's UPL statutes likewise only "kick in" when Rev. Udo-Okon and other Justice Advocates convey their legal advice to a client, the UPL statutes, as applied here, regulate Plaintiffs' speech.[1]

Having concluded that New York's UPL statutes regulate Plaintiffs' speech, we must now consider whether that regulation is content based. The Supreme Court has explained that "[g]overnment regulation of speech is content based if a

---

[1] Because Plaintiffs raise an as-applied challenge, we do not address whether New York's UPL statutes as applied to other actions falling within the definition of the practice of law, such as drafting pleadings or appearing in court, constitute a regulation of speech or a regulation of conduct that incidentally burdens speech. We leave those questions for another day.

law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. Nevertheless, the Supreme Court has subsequently clarified that "restrictions on speech may require some evaluation of the speech and nonetheless remain content neutral." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 72 (2022). In other words, a classification that considers the function or purpose of the speech is not necessarily content based. *See id.* at 74. Only "regulations that discriminate based on the topic discussed or the idea or message expressed . . . are content based." *Id.* at 73–74 (internal quotation marks omitted).

After the district court granted the preliminary injunction in this case, we considered a challenge to New York's professional licensing requirement for mental-health counselors. *See Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023). There, we concluded that the licensing requirement was not a content-based restriction on speech because it "d[id] not turn on the content of what a person says." *Id.* at 393. Specifically, we observed that the requirement did not permit the State to "license views it finds acceptable, while refusing to license less favored or more controversial views." *Id.* (internal quotation marks omitted). Nor did it "condemn certain ideas or viewpoints" or "prohibit[] public discussion of an

entire topic." *Id.* (internal quotation marks omitted). Rather, the "requirement applie[d] – regardless of what [was] said – only to speech having a particular purpose, focus, and circumstance." *Id.*

Here, the considerations that led us to conclude that New York's licensing requirement for mental-health counselors is content neutral compel the same conclusion for New York's UPL statutes. The UPL statutes apply to any individual practicing law, regardless of the type of law he practices or the message or position that he seeks to promote through his legal practice. As the Attorney General correctly notes, "the [UPL] statutes apply equally to individuals who provide legal advice only to creditors and to those who advise only debtors." Att'y Gen. Br. at 49. Accordingly, it is clear that the UPL statutes do not license only certain views that the State finds acceptable, nor do they refuse to license or condemn less favored viewpoints. Likewise, the UPL statutes do not prohibit public discussion of an entire legal topic. As New York courts have repeatedly held, individuals are free to discuss legal topics or provide generalized advice, including by publishing books and guides, without running afoul of the UPL statutes. *See, e.g.*, *Rowe*, 80 N.Y.2d at 342. Rather, the UPL statutes apply "only to speech having a particular purpose, focus, and circumstance," *Brokamp*, 66 F.4th

at 393 – namely, "the rendering of legal advice and opinions directed to particular clients," *Rowe*, 80 N.Y.2d at 341–42 – without regard to the content of the legal advice conveyed.[2]

For these reasons, we hold that the UPL statutes are content neutral and thus subject only to intermediate scrutiny. *See Brokamp*, 66 F.4th at 392 (concluding that regulation was "content neutral and, therefore, subject to intermediate rather than strict scrutiny"); *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 520 U.S. 180, 189 (1997) (explaining that content-neutral regulations withstand First Amendment challenges if they "advance[] important governmental interests unrelated to the suppression of free speech and [do] not burden substantially more speech than necessary to further those interests"). Because the district court concluded that the UPL statutes are content based and applied strict scrutiny, we conclude that the district court committed an error of law and thus abused its

---

[2] Plaintiffs point to an out-of-Circuit case that suggests, on their view, that *any* licensing regulation that burdens speech is content based. *See Richwine v. Matuszak*, -- F.4th --, No. 24-1081, 2025 WL 2476656, at *6–7 (7th Cir. Aug. 28, 2025). But that case "f[ound] no need to determine whether the [licensing] statute [at issue] should be subject to strict or intermediate scrutiny because, even under intermediate scrutiny, the statute fail[ed] to pass constitutional muster." *Id.* at *7. And, as described above, our caselaw makes clear that not all speech-restricting licensing regimes are content based. *See Brokamp*, 66 F.4th at 393. Accordingly, we decline Plaintiffs' invitation to ignore binding Circuit precedent on the basis of a stray line of out-of-Circuit dicta.

22

discretion in granting a preliminary injunction. *See We the Patriots*, 17 F.4th at 280. We therefore vacate the preliminary injunction and remand for the district court to apply intermediate scrutiny in evaluating the likelihood of success and to assess whether the remaining factors – irreparable harm, the public interest, and the balance of the equities[3] – support the grant of a preliminary injunction.

## IV. CONCLUSION

In sum, we **VACATE** the preliminary injunction order of the district court and **REMAND** for further proceedings consistent with this Opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*Catherine O'Hagan Wolfe*

---

[3] The district court's analysis of these factors was closely tied to its conclusion that Plaintiffs were likely to succeed on their merits of their claim. Therefore, the court may need to reconsider these factors if its assessment of the likelihood of success on the merits changes upon applying intermediate scrutiny.