UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UPSOLVE, INC, and REV. JOHN UDO-OKON,<br>*Plaintiffs,*<br><br>v.<br><br>LETITIA JAMES, in her official capacity as Attorney General of the State of New York,<br><br>*Defendant.* | Civil Case No. 1:22-cv-00627-LAK<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REINSTATE PRELIMINARY INJUNCTION** |

## INTRODUCTION

In 2022, Judge Crotty entered a preliminary injunction that allowed Plaintiff Upsolve to launch the American Justice Movement, a program that trains volunteers (including Plaintiff Reverend John Udo-Okon) to provide narrow legal advice to help people respond to certain kinds of consumer-debt lawsuits. ECF 68. The heart of Judge Crotty's reasoning was that New York's restrictions on unauthorized practice of law, as applied to this sort of one-on-one advice, were a restriction on speech, that they were subject to strict scrutiny, and that New York had no evidence that the restrictions lacked either a compelling interest or any evidence of tailoring. *Id.* at 16–31. Earlier this year, the Second Circuit vacated that injunction, reaffirming that the unauthorized-practice restrictions (as applied here) are a restriction on speech but

1

that they were subject to intermediate scrutiny, not strict. *Upsolve, Inc. v. James*, 2025 WL 2598725, 2025 U.S. App. LEXIS 23187 (Sept. 9, 2025).[1]

Because the Second Circuit invalidated only the second part of Judge Crotty's holding—affirming the holding that this case triggers First Amendment scrutiny and leaving undisturbed the analysis of the evidence—this Court should reinstate the preliminary injunction and allow Plaintiffs to re-start the American Justice Movement.

## FACTUAL BACKGROUND

The salient facts are largely summarized in the earlier preliminary-injunction opinion.[2] New York faces a massive problem with debt-collection lawsuits—by one

---

[1] Although time is always of the essence in preliminary injunctions, the need for a prompt resolution here is especially acute because the Supreme Court is, at the moment, considering a case that may directly undermine the Second Circuit's intermediate-scrutiny holding in this case. On October 7, 2025, the Supreme Court heard oral argument in *Chiles v. Salazar*, No. 24-539. Much of that oral argument focused on whether speech restrictions imposed by state licensing authorities are subject to strict scrutiny. *See generally* Oral Arg. Tr., available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-539_7l48.pdf. The Supreme Court is also currently holding several petitions for certiorari raising related questions, presumably waiting for the resolution of *Chiles*. *See Pardue v. Hines*, No. 24-920 (petition for certiorari filed February 24, 2025); *360 Virtual Drone Services, LLC v. Ritter*, No. 24-279 (petition for certiorari filed September 9, 2024); *Crownholm v. Moore*, No. 24-276 (petition for certiorari filed September 9, 2024). Accordingly, Plaintiffs intend to seek certiorari review of the Second Circuit's interlocutory decision in this matter and believe there is a reasonable probability that the Supreme Court would GVR (grant, vacate, and remand) this case and the various others being held in the wake of *Chiles*. A speedy resolution of this motion would therefore aid the speedy resolution of this case: If the motion is granted, it will allow the government to seek expedited review at the Second Circuit. If the motion is denied—if this Court finds that the change in standard of review is dispositive—then it will clarify the stakes of the legal question Plaintiffs plan to present to the Supreme Court.

[2] The evidence submitted in support of the preliminary injunction remains in the record and has not been re-submitted. *See* Fed. R. Civ. P. 65(a)(2). Plaintiffs have supplemented that record with a new declaration detailing the operations of the

estimate, fully a quarter of the cases in New York's state-court system are debt-collection suits, and many of them are meritless. ECF 68 at 2–3. "Since at least 2015, New York has responded to this debt collection problem by providing a one-page answer form that defendants can download, complete, and submit in their cases." *Id.* at 3.

Plaintiff Upsolve saw a way to help further. It designed the American Justice Movement, a program in which volunteer trainees who were not licensed lawyers could walk people through how to fill out the 24-question form. *Id.* at 4. One of those volunteers would be Rev. Udo-Okon, who wanted to help members of his community deal with these lawsuits. *Id.* at 5.

The problem was that the American Justice Movement was illegal. New York law made it illegal for anyone but a licensed lawyer to give specific legal advice to an individual, even though "giving generalized advice to the public . . . is not considered the practice of law." *Id.* at 5–6. That meant that American Justice Movement volunteers would be committing a felony by giving one-on-one advice to people who wanted to hear it.

Only two relevant things have changed since the preliminary injunction first issued. One is that the American Justice Movement actually started. Upsolve trained volunteers. Petts Dec. ¶ 4. Those volunteers actually advised people who wanted to hear from them. *Id.* The program did not grow to enormous size, in large part because

---

American Justice Movement while it was protected by the preliminary injunction. *See* Dec. of Jonathan Petts in Support of Pls.' Mot. to Reinstate Prelim. Inj. (Petts Dec.).

3

the stability of the preliminary injunction was uncertain. *Id.* ¶ 8. But it did grow, and it succeeded. *Id.* ¶ 6. Indeed, Upsolve discovered that the ability to give targeted legal advice not only allowed its volunteers to give that legal advice but that it also allowed them to help even people who didn't need that advice, offering "more general advice or a referral or just commiseration." *Id.* In short, the experience of the American Justice Movement vindicated the preliminary-injunction opinion's prediction: It was not "a cure-all solution[,]" but it did provide "another link in the informational chain" to help defendants vindicate their rights. ECF 68 at 28–29. Because Plaintiffs are understandably unwilling to commit a felony, that link is now gone and the program is shuttered, but Upsolve stands ready to re-start it should a new injunction issue. Petts Dec. ¶¶ 9–10.

The other thing that has changed is that the evidence supporting the availability of less-restrictive, better-tailored alternatives is even stronger. As the preliminary-injunction opinion correctly noted, states other than New York were then "exploring ways to regulate non-lawyers who provide legal advice to clients." ECF 68 at 30. That trend has only increased since, and states across the country take a less-restrictive, more-tailored approach than does New York. Perhaps most prominent is South Carolina, which has blessed a substantially similar volunteer program (this one aimed at landlord-tenant advice). Petts Dec. ¶ 11. And national organizations like the American Bar Association House of Delegates, the Conference of Chief Justices, and the Conference of State Court Administrators have urged regulators to find more ways for community-based volunteers to ease the national access-to-justice crisis.

*Id.* ¶¶ 12–13. But against that backdrop, New York's unauthorized-practice limitations remain the same—and, as the preliminary-injunction opinion notes, they "could hardly be broader[.]" ECF 68 at 29.

## ARGUMENT

Plaintiffs are entitled to a preliminary injunction if they can show "'(1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction.'" ECF 68 at 12 (quoting *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020)). "More generally, "[t]he movant must also show that 'the balance of the equities tips in his [or her] favor." *Id.* (quoting *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020)).[3] Plaintiffs remain entitled to a preliminary injunction because they are still likely to succeed on the merits under intermediate scrutiny and because the analysis of the remaining factors is unchanged since the first preliminary-injunction opinion.

### I.  Plaintiffs are likely to succeed on the merits.

Plaintiffs are likely to succeed on the merits even under intermediate scrutiny, because intermediate scrutiny still requires the government to present real evidence that its law is sufficiently tailored and that it has not ignored readily available less

---

[3] The preliminary-injunction opinion also found that Plaintiffs at the time sought a "mandatory" injunction rather than a "prohibitory" injunction because they sought to change "the status quo by allowing them to give legal advice for the first time." *Id.* at 13. It is unclear whether that is still true—after all, the American Justice Movement was protected by a preliminary injunction for two years, so Plaintiffs no longer seek to give legal advice for the first time. Regardless, it remains true that the distinction should make no difference—as Judge Crotty previously held, Plaintiffs should prevail under either standard. *Id.*

5

restrictive alternatives. They are also likely to succeed because the government's other arguments were all correctly rejected by Judge Crotty's earlier opinion.

### A. Plaintiffs are likely to succeed under intermediate scrutiny.

The Second Circuit dissolved the prior preliminary injunction in this case because it held that *Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023), requires this Court to apply intermediate scrutiny, rather than strict. *Upsolve*, 2025 WL 2598725 at *6–7. But applying that test should still lead to the same result. After all, intermediate scrutiny still requires the government to present evidence that it could not achieve its same ends through less-restrictive means. *Bery v. City of New York*, 97 F.3d 689, 698 (2d Cir. 1996) (upholding preliminary injunction where no record evidence demonstrated that other sections of the city code could not "achieve [the same] ends without such a drastic effect" on speech).

Indeed, the original preliminary-injunction opinion already implicitly holds that the same result would follow under intermediate scrutiny. While Judge Crotty's preliminary-injunction opinion held that strict scrutiny applied, it actually cited and applied the Supreme Court's test for intermediate scrutiny. Specifically, the opinion describes the Supreme Court's holding in *McCullen v. Coakley* as "strict scrutiny [is] not satisfied where [the] state had failed to show 'it considered different methods that other jurisdictions have found effective[.]'" ECF 68 at 30 (quoting *McCullen v. Coakley*, 573 U.S. 464, 494, 134 S. Ct. 2518, 2539 (2014)). But *McCullen* did not apply strict scrutiny. Instead, the Court expressly held that the law challenged there was "neither content nor viewpoint based and therefore need not be analyzed under strict

scrutiny." *McCullen*, 573 U.S. at 485, 134 S. Ct. at 2534. The quoted test—the test applied at the preliminary-injunction stage—is instead the intermediate-scrutiny test. *Id.* at 494, 134 S. Ct. at 2539.

Since here the original preliminary injunction applied the *McCullen* test as if it were strict scrutiny, this Court can apply the same test in the same way under the correct label: intermediate scrutiny. And the analysis should cash out in the same way. It is still true that the unauthorized-practice rules "could hardly be broader." ECF 68 at 29. It is still true that "the state retains many tools to mitigate harmful speech in this area." *Id.* It is still true that tort remedies exist "that could apply to non-lawyers who harm their clients." *Id.* at 30. It is still true that "the State could, for example, tailor [its] rules by requiring [volunteers] to fully disclose their qualifications and experience, such that clients can make an informed decision about the quality of the legal advice they would receive." *Id.* Or that New York "might impose targeted trainings or educational standards on Plaintiffs short of a full Bar certification." *Id.* Indeed, the only thing that has changed since the original preliminary-injunction opinion is that other jurisdictions, most notably South Carolina, have actually implemented these more tailored restrictions. In sum, there is no reason to depart from the previous opinion's conclusion that "[t]hese developments suggest a narrower tailoring of New York's UPL rules is feasible." *Id.* (citing *McCullen*, 573 U.S. at 494, 134 S. Ct. at 2539). Defendant will not (and cannot) present any evidence that anyone has been harmed by these less-restrictive rules. And that means Defendant cannot even begin to show that New York's rules are necessary.

No case suggests otherwise. Indeed, the out-of-jurisdiction cases the Second Circuit cited favorably as dealing with "analogous cases involving regulated professions" all imposed a high evidentiary burden on the government (and found the government failed to meet it). *See Upsolve*, 2025 WL 2598725, at *17 (citing *Billups v. City of Charleston*, 961 F.3d 673, 683 (4th Cir. 2020), and *Hines v. Pardue*, 117 F.4th 769, 777–78 (5th Cir. 2024)). In *Billups*, the Fourth Circuit articulated the test as requiring "the government [to], inter alia, present evidence showing that—before enacting the speech-restricting law—it seriously undertook to address the problem with less intrusive tools readily available to it." 961 F.3d at 688 (internal quotation marks omitted). The Fifth Circuit in *Hines* held the government to a similarly high bar, emphasizing that "[i]ntermediate scrutiny is still tough scrutiny, not a judicial rubber stamp" and that "[t]he burden of justification [under intermediate scrutiny] is demanding and it rests *entirely* on the State." 117 F.4th at 779 (internal quotation marks omitted). Nothing in the Second Circuit's opinion suggests that a different test should apply here.

In short, since the test is still demanding and since Defendant can present no new evidence justifying its decision to adopt an all-or-nothing approach to the regulation of legal advice, the same conclusion should follow. New York's interests in regulating the unauthorized practice of law remain the same—compelling "[i]n the abstract" but far less so in the context of a narrow, targeted program like Plaintiffs'. ECF 68 at 27. The access-to-justice problem remains the same—New York's "own forms [still] encourage defendants to file their answers pro se[,]" which shows that

8

offering helpful advice to pro se litigants can still be useful. *Id.* at 29. New York has never, at any point in these proceedings, offered any evidence that comes anywhere close to justifying the scope or tailoring of its unauthorized-practice rules. It will be unable to start now, and that means Plaintiffs are likely to succeed on the merits.

### B. Defendant's remaining arguments are wrong.

As noted above, New York has never come forward with any evidence to justify its restrictions on Plaintiffs' speech, let alone evidence sufficient to survive any kind of First Amendment scrutiny. Instead, it has primarily relied on two arguments: either that its restrictions are only restrictions on conduct subject to rational-basis review or that Plaintiffs lacked standing to seek relief because they had not proven that anyone would listen to their speech. Each argument was directly rejected by the Second Circuit and should be rejected again here. *See Upsolve*, 2025 WL 2598725, at *3–5.

Indeed, the only change in the record is that the case for standing is stronger. Last time around, Plaintiffs' standing hinged on their assertion that they *would* give legal advice if only they received a preliminary injunction. That was enough. ECF 68 at 6–9, *aff'd*, *Upsolve*, 2025 WL 2598725, at *3. Now, the record shows that Plaintiffs were right: that they *did* give legal advice after they received a preliminary injunction and that they would do so again. In other words, all of the arguments Defendant has actually made in this action are now off the table. The only remaining argument—that the restrictions on legal advice survive intermediate scrutiny—requires a real

9

evidentiary showing that New York cannot make. Plaintiffs are therefore likely to succeed on the merits.

## II. The remaining preliminary-injunction factors are unchanged.

The analysis of the remaining preliminary-injunction factors likewise remains unchanged. It is still true that Plaintiffs' likelihood of success is the "dominant, if not the dispositive, factor[.]" ECF 68 at 31. It is still true that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18, 141 S. Ct. 63, 67 (2020)). And it is still true that the "State does not have an interest in the enforcement of an unconstitutional law" and that "securing First Amendment rights is in the public interest." *Id.* (internal quotation marks omitted).

To be sure, Plaintiffs freely concede that they will be unable to scale the American Justice Movement to the fullest possible extent until they achieve a final ruling on its legality from the Second Circuit or the Supreme Court. *See* Petts Dec. ¶ 8. But the first step to a fully scaled program that helps *many* New Yorkers is a preliminary injunction that allows Plaintiffs to resume helping *some* New Yorkers. This Court should grant one.

## CONCLUSION

This Court should enter an order reinstating the preliminary injunction.

Dated: October 10, 2025

Respectfully submitted,

/s/ Robert J. McNamara

Robert J. McNamara*

10

INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
rmcnamara@ij.org
*Attorney for Plaintiffs*
\*Admitted *pro hac vice*