UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UPSOLVE, INC, and REV. JOHN UDO-OKON,<br>              *Plaintiffs,*<br><br>v.<br><br>LETITIA JAMES, in her official capacity as Attorney General of the State of New York,<br>              *Defendant.* | Civil Case No. 1:22-cv-00627-LAK |

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION TO REINSTATE PRELIMINARY INJUNCTION**

## MEMORANDUM IN REPLY

In their initial motion, Plaintiffs established that they are entitled to a new preliminary injunction for largely the same reasons they were entitled to their initial preliminary injunction. New York's ban on non-lawyers' providing any one-on-one legal advice was (and is) as broad a restriction on legal speech as there could be, which resulted (and results) in a genuine shortage of advice despite the presence of willing listeners. Plaintiffs have designed a modest volunteer program in which trained and monitored volunteers could help alleviate that shortage by providing limited, targeted advice to people who want to hear it. That volunteer program was (and is) stymied by the fact that New York (unlike other states) provides no path (other than full-fledged, expensive law-school training) by which anyone can give that kind of advice, no matter what. And Defendant, despite numerous opportunities, can present no evidence to justify silencing Plaintiffs' speech when that speech would be permissible in other jurisdictions. The only thing that has changed is that, in between Plaintiffs' first motion for a preliminary injunction and their more recent one, they actually ran their volunteer program and found that it was just what they'd hoped—a modest, but genuinely helpful volunteer program that assisted some people and hurt no one.

In response, Defendant does not meaningfully challenge any of this. Rather than mount a defense of its speech restriction, Defendant's memorandum in opposition largely confines itself to a hypothetical critique of Plaintiffs' program, all while insisting that the state is not obligated to produce any evidence in order to survive intermediate scrutiny. This is wrong. As demonstrated below, (1) Defendant bears

1

the burden of proof at this juncture, (2) that burden requires the state to produce real evidence in support of its burdens on speech, and (3) it hasn't. That means Plaintiffs have established a likelihood of success on the merits, which (as discussed in Part IV) means they are entitled to a preliminary injunction.

### I. The government bears the burden of proof to justify its speech restrictions.

The government's analysis errs at the outset by insisting that because Plaintiffs seek a preliminary injunction, they "bear the burden to show" that New York's restriction on legal advice fails intermediate scrutiny. ECF 119 at 19. Not so. To be sure, Plaintiffs (as the movants) bear the ultimate burden of persuasion. But when it comes to evaluating the likelihood of success on the merits, "the burdens of proof 'track the burdens at trial.'" *Lennon v. Premise Media Corp., L.P.*, 556 F. Supp. 2d 310, 320 (S.D.N.Y. 2008). In other words, once Plaintiffs establish that the challenged regulations are a restriction on their speech (which the Second Circuit has already held they have done), then "the government bears the burden of showing that its restriction of speech is justified under the traditional 'narrowly tailored' test." *Deegan v. City of Ithaca*, 444 F.3d 135, 142 (2d Cir. 2006). In other words, just as it would have to at trial, the government was required to come forward with evidence explaining why Plaintiffs' speech can be squelched—evidence that Plaintiffs' speech has harmed someone or evidence that the approach states like South Carolina (where Plaintiffs' program would be permissible) would not work in New York. It has not done so, and the fact that its evidentiary default happened in a preliminary-injunction context does not matter.

## II. This Court should apply the traditional intermediate-scrutiny test.

As explained in Plaintiffs' opening brief, the Second Circuit's intermediate-scrutiny test requires real evidence, not the government's mere say-so. ECF 110 at 7–8. Defendant's memorandum does not contend that the state can meet that burden—instead, it contends that this intermediate-scrutiny test does not apply. ECF 119 at 9 n.10 (urging this Court not to follow, among other cases, *McCullen v. Coakley*, 573 U.S. 464, 134 S. Ct. 2518 (2014), and *Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996)). Instead, Defendant asks this Court to use a different, evidence-free form of intermediate scrutiny, which it purports to derive from three cases: *Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023); *TikTok Inc. v. Garland*, 604 U.S. 56, 145 S. Ct. 57 (2025); and *Capital Associated Industries, Inc. v. Stein*, 922 F.3d 198 (4th Cir. 2019). None of these cases suggests Plaintiffs are unlikely to succeed on the merits.

Start with *Brokamp*. In that case, the Second Circuit made clear that the plaintiff (a Virginia-licensed counselor) only had standing to challenge New York's "streamlined requirement for licensure by endorsement" that applied to counselors licensed out of state. 66 F.4th at 389. In evaluating that narrow challenge, the panel noted that the statute on its face was narrowly drawn, leaving open a number of avenues through which people could engage in exactly the regulated speech outside a formal clinical setting, which meant the law's applications were limited to only "those circumstances where persons are most likely to present as professional mental health counselors in order to gain client trust[.]" *Id.* at 401. Of course, nothing of the kind is true here: Plaintiffs are forbidden from giving legal advice in any setting and to any

3

listener, however willing and well-informed their audience might be. As the parties agree, there is only one avenue by which anyone can ever give individualized legal advice in New York, in any context—and that avenue is law school and eventual licensure. Moreover, the *Brokamp* panel noted that the licensure-by-endorsement requirement was not "seriously burdensome" in light of the fact that the plaintiff herself could "easily make [the necessary] showing" for licensure. *Id.* at 402. Again, nothing of the sort is true here: New York law says Plaintiffs' volunteers should either enroll in law school or sit in silence. Simply put, *Brokamp* concerned itself with a licensing law that, on its face, imposed barely any burden on the plaintiff and tailored even that burden to avoid regulating huge swaths of substantively identical speech. It did not announce a new, evidence-free form of intermediate scrutiny, and it does not control a challenge to a speech restriction that (as Judge Crotty already found) "could hardly be broader[.]" ECF 68 at 29.

*TikTok* offers Defendant no more help. To begin, the Supreme Court's opinion in *TikTok* begins with an admonition that its reasoning is "narrowly focused in light of" the circumstances of the case. 604 U.S. at 62, 145 S. Ct. at 62–63. In other words, the Court—operating on a compressed timeline—expressly cautioned lower courts not to read the case too broadly or as establishing a rule for other contexts. And, in any event, it does not say that laws can survive intermediate scrutiny on the government's say-so: It says that "*[o]n this record*, Congress was justified in specifically addressing its TikTok-related national security concerns." *Id.* at 76; 145 S. Ct. at 70. Nothing about that conclusion requires this Court to allow New York to squelch more

4

ordinary one-on-one speech based on far more ordinary consumer-protection concerns—*particularly* when those concerns appear to be identical to the concerns of states that would allow exactly this speech. The reason the Supreme Court demands a record is to "prevent[] the government from too readily 'sacrific[ing] speech for efficiency.'" *McCullen*, 573 U.S. at 486, 134 S. Ct. at 2534 (quoting *Riley v. Nat'l Fed. of Blind of N.C., Inc.*, 487 U.S. 781, 795, 108 S. Ct. 2667 (1988)). The record before the Court, which Defendant declines to dispute, demonstrates that New York is doing exactly that, and nothing in *TikTok* requires this Court to turn a blind eye.

Finally, *Stein*. As Judge Crotty's earlier opinion already details, the plaintiff in *Stein* (unlike Plaintiffs here) wanted to engage in conduct (by, for example, drafting binding documents), not simply to talk about the law. ECF 68 at 17–19.[1] But *Stein* bears slightly more attention here because, in the years since, the Fourth Circuit has clarified that *Stein* represents a wholly new form of intermediate scrutiny. As the Fourth Circuit sees it, there are two forms of intermediate scrutiny: "the traditional intermediate-scrutiny test" that relies on actual evidence and asks whether the government can show that less-restrictive alternatives would not work and then a "loosened intermediate-scrutiny test for professional-conduct-focused regulations[,]" which is what it applied in *Stein*. *360 Virtual Drone Servs., LLC v. Ritter*, 102 F.4th 263, 276 (4th Cir. 2024), *petition for certiorari filed* Sept. 9, 2024.[2]  In other words,

---

[1] The same is true of the various other cases involving lawyer regulation that Defendant trots out. None of them deal with "(1) an as-applied challenge to a UPL statute where (2) the plaintiff sought to give pure verbal speech." ECF 68 at 19.

[2] The petition for certiorari in *Drone Services* has been pending at the Supreme Court for over a year. The Court appears to be holding the case pending the outcome in *Chiles v. Salazar*, No. 24-539 (argument held Oct. 7, 2025).

5

the Fourth Circuit has adopted a new intermediate-scrutiny test that applies to professional-licensing laws but not to other laws (and that applies to speech in private, but not in public; and to speech about medicine, but not about history). *Id.* at 274–75. That test has no basis in the Supreme Court's cases—indeed, it is exactly the sort of doctrinal innovation the Court has already expressly rejected. *Cf. NIFLA v. Becerra*, 585 U.S. 755, 773, 138 S. Ct. 2361, 2375 (2018) (rejecting the professional-speech doctrine and cautioning against rules that "give[] the States unfettered power to reduce a group's First Amendment rights simply by imposing a licensing requirement"). Neither does it have any connection to Second Circuit law, which recognizes only one intermediate-scrutiny test: "the traditional 'narrowly tailored' test." *Deegan*, 444 F.3d at 142. Courts in the Fourth Circuit use a different test to evaluate challenges to licensing laws, and so this Court need not (indeed, cannot) follow the Fourth Circuit's lead.

Simply put, the intermediate-scrutiny test requires that the government make a real evidentiary showing to explain why it is suppressing speech—particularly when it is suppressing speech that would be permitted elsewhere. In arguing otherwise, Defendant relies on cases already correctly rejected by Judge Crotty's earlier opinion and asks this Court to depart from binding Second Circuit precedent. Because this Court should not do so, Plaintiffs are likely to succeed on the merits.

### III. Defendant has failed to make any showing of tailoring.

At bottom, the government simply declines to even try to meet its evidentiary burden. It does not dispute—nor could it—that a program exactly like Upsolve's could

6

be approved in states like South Carolina. It does not dispute—nor could it—that Upsolve actually ran its program in New York for months. It does not suggest—nor could it—that South Carolina's less restrictive approach has caused any harm. Nor does it bother to deny—because it can't—that Upsolve's actual program helped real New Yorkers while harming no one. To be sure, New York has a legitimate interest in consumer protection, but the question is how that interest is being failed in South Carolina, or how it was harmed during the months Upsolve's volunteers offered basic advice to willing listeners. And Defendant has no answer.

In other words, New York declines to muster a single, real-world reason that it needs to silence Plaintiffs. At most, it offers two arguments—first, that the restriction on legal advice is less restrictive than Judge Crotty believed because (in limited circumstances) law students may practice law (ECF 119 at 17) and second, that Upsolve's volunteer program is flawed in certain ways (*id.* at 11–16). Neither argument holds water.

First, Defendant's invocation of law-school clinics misses the point. The breadth of New York's unauthorized-practice-of-law rules does not lie in how few people are allowed to practice law. It lies in the fact that *any* one-on-one advice about the law—even if basic, even if free, and even if wrapped in disclaimers—constitutes the practice of law. The less restrictive alternatives proffered by Plaintiffs are alternatives that would allow people other than lawyers to *talk about the law* with people who need advice. Defendant's response, apparently, is that Plaintiffs and their fellow volunteers should go to law school if they want to help. In other states, they wouldn't

7

need to—and New York's refusal to explain that discrepancy means that Plaintiffs are likely to succeed on the merits.

Second, Defendant's attacks on Upsolve's volunteer program are both misplaced and wrong.

They are misplaced because they ask the wrong question. Defendant raises a series of objections to the program—that it asks the people it helps to agree to arbitrate any disputes; that the initial draft of its training guide had an outdated statute of limitations in one place; etc.—but none of those objections are *the reason the program is illegal*. If New York made it illegal to offer individualized legal advice if it was conditioned on an arbitration agreement, then this case would hinge on the arbitration agreement. But nothing—short of going to law school—will enable Plaintiffs or their fellow volunteers to speak. They can respond to good-faith criticism and they can improve their training program all they want, but none of that will matter without an injunction from this Court because none of that will make them licensed attorneys, who are the only people New York allows to speak about the law with any individual specificity. That is the restriction Plaintiffs challenge, and that is the restriction Defendant has refused to justify.

But Defendant's criticisms of Upsolve's program are also simply wrong. [3] Tellingly, they are entirely abstract—they do not point to any person who received bad

---

[3] For all Defendant's insistence on calling Upsolve's Training Guide "error-ridden," it has only ever identified one substantive legal error—an outdated statute of limitations in a previous version of the Guide—and the docket reflects that this error has long-since been corrected. ECF 89, 90 (authorizing Upsolve to update its Training Guide). The rest of Defendant's critiques reflect, at most, differences of opinion about (e.g.) how best to respond to a suit that may or may not have been properly served. To be sure, Defendant have procured an amicus brief from attorneys who disagree with the Guide's advice, just as Plaintiffs have submitted sworn statements from attorneys who agree with it. *Compare*

advice, anyone who was misled or harmed in any way. That is a striking omission. At the outset of this case, in 2022, it made sense to argue about Upsolve's program in the abstract: New York's concern, at that point, was with what *might* happen if Upsolve instituted a program it had designed but never implemented. But in 2025, Upsolve is not asking for an injunction that will allow it to set up a brand-new volunteer program. It is asking for an injunction that will allow it to *resume* a program that it already successfully ran—a program that, on this record, was all benefit and no harm. To justify silencing that real-world program, New York should be able to muster a real-world harm or two. It has zero. And, on this record, Upsolve is therefore likely to succeed on the merits.

## IV. The remaining preliminary-injunction factors favor Plaintiffs.

Defendant does not address (and therefore concedes) most of the remaining preliminary-injunction factors, briefly arguing only that the injunction would not be in the public interest. This argument is wrong. For one thing, it simply repeats arguments that have already been rejected: Defendant's "public interest" argument addresses only the evidence submitted in support of Plaintiffs' original motion for a preliminary injunction. All of Defendant's arguments about the weight of that evidence and the public worth of Upsolve's volunteer program were already addressed and rejected by Judge Crotty. ECF 68 at 27–30 (noting, among other things, that "Plaintiffs can still increase access to the courts without needing to provide a cure-all solution").

---

ECF 7-5, 7-6 *with* ECF 120-3. But differences of opinion about the *best* advice are not a reason to force New Yorkers to proceed with *no* advice or to deprive them of "another link in the informational chain" to help vindicate their rights. ECF 68 at 29.

9

But Defendant's public-interest argument also ignores new evidence. Again, the evidence submitted in connection with Plaintiffs' initial preliminary-injunction motion was necessarily about the future—about what Upsolve's program would look like if it could be implemented. But the declaration of Jonathan Petts (ECF 111, which Defendant ignores) provides undisputed record evidence about what the volunteer program was in practice. Upsolve's volunteers actually talked to people who needed their help (carefully monitored by Upsolve employees). So far as the record reveals, none of those people was harmed. Many of them were helped. After years of litigation—and many months of real-world experience with this very volunteer program—Defendant should not be permitted to resort to abstract concerns about what Upsolve's program would achieve or whether it would be needed. It existed. It (within modest limits) worked. And it is in the public interest to allow it to resume.

## CONCLUSION

This Court should enter an order reinstating the preliminary injunction.

Dated: December 2, 2025

                                                    Respectfully submitted,

                                                    /s/ Robert J. McNamara

                                                    Robert J. McNamara*
                                                    Elizabeth Sanz*
                                                    INSTITUTE FOR JUSTICE
                                                    901 North Glebe Road, Suite 900
                                                    Arlington, Virginia 22203
                                                    Tel: (703) 682-9320
                                                    Fax: (703) 682-9321
                                                    rmcnamara@ij.org
                                                    *Attorneys for Plaintiffs*
                                                    *Admitted *pro hac vice*