UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UPSOLVE, INC. and REV. JOHN UDO-OKON,

                       Plaintiffs,

    -v.-

LETITIA JAMES, in her official capacity as Attorney General of the State of New York,

                       Defendant.

22-CV-00627 (LAK)


# DEFENDANT LETITIA JAMES'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION TO DISMISS


LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, NY 10005
Tel: (212) 416-8733

MATTHEW J. LAWSON
Assistant Attorney General
    *Of Counsel*

**TABLE OF CONTENTS**

                                                        **Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.    PLAINTIFFS FAIL TO SALVAGE
      THEIR FREE SPEECH CLAIM ................................................................................ 2

      A.    The UPL Statutes Advance Important Governmental
            Interests Unrelated to the Suppression of Free Speech .................................... 3

      B.    The UPL Statutes Do Not Burden Substantially More
            Speech Than Necessary to Further the State's Interests ................................... 5

II.   PLAINTIFFS FAIL TO SALVAGE THEIR
       FREEDOM OF ASSOCIATION CLAIM ................................................................. 9

CONCLUSION ..................................................................................................................... 11

## TABLE OF AUTHORITIES

**Federal Cases**                                                                                                                         **Page(s)**

*Adams v. Am. Bar Ass'n*,
  400 F. Supp. 219 (E.D. Pa. 1975) ...................................................................................9

*Brokamp v. James*,
  66 F.4th 374 (2d Cir. 2023) ................................................................................ *passim*

*Capital Associated Industries, Inc. v. Stein*,
  922 F.3d 198 (4th Cir. 2019) ........................................................................................8, 10

*Goldfarb v. Virginia State Bar*,
  421 U.S. 773, 95 S.Ct. 2004 (1975) ...............................................................................3

*Holder v. Humanitarian Law Project*,
  561 U.S. 1, 130 S.Ct. 2705 (2010) .................................................................................2

*Jacoby & Meyers, LLP v. Presiding Justices of First, Second, Third, and Fourth Dep't*,
  852 F.3d 178 (2d Cir. 2017) .........................................................................................10

*NAACP v. Button*,
  371 U.S. 415, 83 S.Ct. 328 (1963) ............................................................................9, 10

*Polaski v. Lee,*
  759 F. Supp. 3d 683 (E.D.N.C. 2024) ............................................................................ 8

*In re Primus*,
  436 U.S. 412, 98 S.Ct. 1893 (1978) ..............................................................................9

*Upsolve, Inc. v. James*,
  604 F. Supp. 3d 97 (S.D.N.Y. 2022),
  *vacated and remanded,* 155 F.4th 133 (2d Cir. 2025) .......................................................5, 9

*TikTok Inc. v. Garland*,
  604 U.S. 56, 145 S.Ct. 57 (2025) ..................................................................................2

**State Cases**

*El Gemayel v. Seaman*,
  72 N.Y.2d 701 (1988) ..................................................................................................3

*Spivak v. Sachs,*
  16 N.Y.2d 163 (1965) ..................................................................................................3

*State v. Niska*,
   380 N.W.2d 646 (N.D. 1986) ...............................................................................................9, 10

**State Statutes**

CPLR § 213-d ...............................................................................................................................3, 4

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................2, 6

New York State Attorney General Letitia James respectfully submits this reply memorandum of law in support of her motion to dismiss.[1]

## PRELIMINARY STATEMENT

The arguments in Plaintiffs' opposition brief are unavailing and do not overcome the Attorney General's showing that dismissal is required because the UPL statutes satisfy intermediate scrutiny as a matter of law.  As an initial matter, Plaintiffs do not meaningfully contest the Attorney General's showing that the UPL statutes advance important governmental interests unrelated to suppressing free speech.  And Plaintiffs largely ignore—and certainly do not rebut—the Attorney General's detailed showing as to the numerous flaws in Plaintiffs' ill-conceived program.  Such flaws further underscore New York's strong interest in enforcing its UPL statutes against Plaintiffs.

Plaintiffs' principal argument is that the requisite "narrow tailoring" determination cannot be made on a motion to dismiss because that determination requires the Attorney General to submit extrinsic evidence.  Plaintiffs are wrong, and they fail to meaningfully distinguish *Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023), where the Second Circuit affirmed the dismissal, on the pleadings, of a strikingly similar First Amendment lawsuit <u>without</u> requiring the evidence Plaintiffs contend is required here.  Since this lawsuit, like *Brokamp*, challenges laws requiring a license to provide verbal professional services—and because the tailoring inquiry here can also be resolved based on the pleaded and judicially noticeable facts—Plaintiffs' free speech claim should be dismissed.

---

[1] As used in this brief, "Def. Br." refers to the Attorney General's opening brief on this motion (ECF 122), and "Pl. Opp." refers to Plaintiffs' opposition thereto (ECF 126).  The other abbreviations used herein shall have the same meaning given to them in the Attorney General's opening brief.

Plaintiffs' efforts to salvage their freedom of association claim are similarly unavailing. There is no "associational" right to provide unlicensed legal advice, and the cases Plaintiffs claim confer such a right say nothing of the sort. The Court should dismiss Plaintiffs' Complaint with prejudice.

## ARGUMENT

**I.    PLAINTIFFS FAIL TO SALVAGE THEIR FREE SPEECH CLAIM**

Plaintiffs fail to overcome the Attorney General's showing that the UPL statutes satisfy intermediate scrutiny as a matter of law, and their free speech claim should therefore be dismissed. Def. Br. at 8-22. A challenged restriction will withstand intermediate scrutiny if it "(1) advances important governmental interests unrelated to the suppression of free speech and (2) does not burden substantially more speech than necessary to further those interests." *Brokamp*, 66 F.4th at 397.

Plaintiffs do not dispute that (i) intermediate scrutiny is a significantly less onerous standard than strict scrutiny, Def. Br. at 16, and (ii) in an intermediate scrutiny case, courts must afford the government "latitude" to "design regulatory solutions to address content-neutral interests." *See TikTok Inc. v. Garland*, 604 U.S. 56, 77, 145 S.Ct. 57, 71 (2025) (collecting cases).[2] The intermediate scrutiny determination "can be made on a motion to dismiss," *Brokamp*, 66 F.4th at 397, and dismissal is clearly appropriate at this time. *See Brokamp*, 66 F.4th at 390-403 (affirming the Rule 12(b)(6) dismissal of a mental health counselor's lawsuit

---

[2]    Plaintiffs' efforts to downplay the precedential value of *TikTok* are puzzling, as they do not challenge any of the reasoning from *TikTok* that the Attorney General relies on. *See* Def. Br. at 16, 18. Nor could they, as the Court's reasoning in *TikTok* is firmly grounded in—and repeatedly cites—the Supreme Court's prior case law addressing intermediate scrutiny. In any event, the Supreme Court did <u>not</u> hold in *TikTok* that its reasoning could not be used as precedent for future cases (as Plaintiffs erroneously suggest). *See* Pl. Opp. at 14. Further, Plaintiffs' reliance on *Holder v. Humanitarian L. Project*, 561 U.S. 1, 130 S. Ct. 2705 (2010), is misplaced, as that case applied <u>strict</u> scrutiny, and not intermediate scrutiny.

2

that claimed, *inter alia,* that the First Amendment gave her the right to practice "talk therapy" in New York without possessing the required license).

### A. The UPL Statutes Advance Important Governmental Interests Unrelated to the Suppression of Free Speech

Plaintiffs do not meaningfully contest the Attorney General's showing that the UPL Statutes "advance[] important governmental interests unrelated to the suppression of free speech"—and therefore satisfy the first prong of the intermediate scrutiny test.  *See Brokamp*, 66 F.4th at 397; *see also Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016 (1975) (recognizing that "states have a compelling interest in the practice of professions," including the practice of law, and "broad power to establish standards for licensing practitioners"); *see also* Def. Br. at 9-10 (citing additional authorities).  Indeed, Plaintiffs concede that New York "has an interest" in regulating the practice of law, Pl. Opp. at 11, and that interest is equally strong when the regulated "practice" consists of one-to-one legal advice. *See El Gemayel v. Seaman*, 72 N.Y.2d 701, 705 (1988) (the UPL statutes serve to "to protect the public in this State from 'the dangers of legal representation <u>and advice</u> given by persons not trained, examined and licensed for such work.'") (quoting *Spivak v. Sachs*, 16 N.Y.2d 163, 168 (1965)) (emphasis added).

The profound flaws in Plaintiffs' program further underscore New York's strong interest in applying its UPL statutes to Plaintiffs' proposed activities.  In an effort to minimize such flaws, Plaintiffs argue that the Attorney General has identified only "one legal error" in Plaintiffs' Training Guide.  Pl. Opp. at 7; *see also* Def. Br. at 4-5 (pointing out that the Training Guide misstates the statute of limitations for medical debt).[3]

---

[3]   Plaintiffs assert, incorrectly, that the underlying statute was "amended by the legislature." Pl. Opp. at 7.  In fact, the statute in question, CPLR § 213-d, became effective in April 2020— nearly two years before Plaintiffs brought this lawsuit (and filed their Training Guide with the

3

But the Attorney General also identified other legally dubious statements in the Training Guide, such as a proposed question that incorrectly measures when the limitations period begins to run as a general matter. *See* Def. Br. at 5. Moreover, Plaintiffs tellingly do not address, let alone refute, the Attorney General's bulleted list of <u>other</u> statements in the Training Guide that similarly appear to be confusing, incorrect, or otherwise problematic. *See* Def. Br. p 5.

And the problematic statements in the Training Guide are only the beginning. Other flaws in Plaintiffs' program also confirm that it will harm clients. Among other things, it is <u>undisputed</u> that:

- Plaintiffs do not allege they will require their nonlawyer advocates to have any particular level of educational attainment, and Plaintiffs' counsel tacitly conceded that such advocates will not even be required to have a high school diploma. Def. Br. at 12.

- Plaintiffs do not allege that the nonlawyer advocates will receive <u>any</u> instruction, supervision, or mentoring from actual, trained lawyers. *Id.* at 13.

- Plaintiffs do not allege that any part of their Training Guide was drafted by a New York lawyer, let alone a lawyer experienced in debt collection matters. *Id.* at 12, 13.

- The Training Guide anticipates that nonlawyer advocates will attend only one "virtual training"—apparently led by a nonlawyer—before advising clients. *Id.* at 13; ECF 1-2 at 2.

- Plaintiffs do not allege they will require any formal conflict-checking process before their nonlawyer advocates undertake representation. Def. Br. at 14.

- The Training Guide does not attach copies of the ethical rules that nonlawyer advocates are supposedly required to obey—and does not offer any guidance on how they should be interpreted. *Id.* at 14.

- The nonlawyer advocates will not be subject to any professional sanctions for violating the ethical rules they are supposed to obey—at most, they might be denied further opportunities to volunteer at Upsolve. *Id.* at 14-15.

---

Court). *See* CPLR § 213-d. The statute has not been amended since that time. *See id.* As such, Plaintiffs cannot explain away this error by pointing to interim changes in the law.

4

- Plaintiffs will require their clients to agree to a waiver provision stating that "[n]either the American Justice Movement nor the Justice Advocates assume any liability regarding the outcome of your case." *Id.* at 6, 15; ECF 1-2 at Ex. B ("User Agreement").

Again, Plaintiffs do not dispute any of these flaws in their program—indeed, they ignore most of them. And while Plaintiffs argue that their liability waiver provision is merely an "obviously true" statement of fact, Pl. Opp. at 8, this contention defies credulity. If Plaintiffs simply wanted to make factual statements to their clients, they would not require those clients to agree to a contractual provision disclaiming "any liability" for adverse litigation outcomes.

In sum, the Attorney General has shown—and Plaintiffs do not meaningfully dispute—that the UPL statutes advance New York's well-established interests in protecting the public and promoting judicial integrity and efficiency. Further, based on the pleaded and judicially noticeable facts, it is clear that New York's interest in enforcing the UPL statutes is particularly strong in the context of Plaintiffs' flawed program.

### B. The UPL Statutes Do Not Burden Substantially More Speech Than Necessary to Further the State's Interests

Most of Plaintiffs' arguments relate to the second prong of the intermediate scrutiny test, which requires a showing that the challenged law "does not burden substantially more speech than necessary" to serve the State's interest. *Brokamp*, 66 F.4th at 397. In her moving papers, the Attorney General demonstrated that the UPL statutes are not substantially broader than necessary. Def. Br. at 16-22. Among other things, unlicensed persons such as Plaintiffs are free to speak or write on legal matters, and even to give "generalized advice to the public," so long as judgment is not exercised on behalf of a particular client. *See Upsolve,* 604 F. Supp. 3d at 105. *See also* Def. Br. at 16 (citing additional authority). Moreover, New York has considered—and even enacted—alternatives that are "less restrictive" than an outright ban on unlicensed legal practice, including statutory exemptions that have permitted the creation of multiple law school

5

clinics across the state. Def. Br. at 17. Additionally, given the profound flaws in Plaintiffs' program, no additional tailoring could allow that program to proceed without simultaneously undermining New York's interest in protecting the public from harm. *Id.* at 18.

Plaintiffs argue that the Attorney General's motion must be denied because the tailoring inquiry necessarily requires the consideration of extrinsic evidence. Pl. Opp. at 10. Plaintiffs further suggest that, by moving to dismiss on the pleadings, the Attorney General is somehow proposing a "new" intermediate scrutiny standard. *Id.* at 14. Plaintiffs are wrong in both respects. The Attorney General does not seek to apply a "new" standard; she seeks dismissal based on controlling Second Circuit case law, including *Brokamp*, where the Second Circuit affirmed the Rule 12(b)(6) dismissal of a First Amendment lawsuit strikingly similar to this one without requiring the tailoring evidence Plaintiffs claim is required here. Since *Brokamp* is the only Second Circuit case that evaluated whether a professional licensing statute satisfied intermediate scrutiny, it is controlling.[4]

Plaintiffs' efforts to distinguish *Brokamp* are unavailing. Plaintiffs first argue that, in purported contrast to the facts here, the unauthorized practice prohibition in *Brokamp* "imposed nearly no practical burdens on the plaintiff's speech." Pl. Br. at 12. Plaintiffs are mistaken, as the speech that was burdened in *Brokamp* was comparable in scope to the speech allegedly burdened here. The plaintiff in *Brokamp*—just like Plaintiffs here—claimed that New York's unlicensed practice prohibition prevented her from providing one-on-one professional services consisting of alleged pure speech to New York clients. *See Brokamp*, 66 F.4th at 382. Indeed,

---

[4] If anything, Plaintiffs are the ones who seek a "new" intermediate scrutiny standard, as they now ask this Court to (i) ignore the Second Circuit's controlling decision in *Brokamp*; and (ii) impose onerous evidentiary requirements that the Second Circuit has never applied to a case such as this one (*i.e.*, a challenge to a professional licensing statute).

the restriction in *Brokamp* may have burdened <u>more</u> of that plaintiff's speech, as Ms. Brokamp apparently wanted to offer her full range of "talk therapy" services to New York clients (and did not merely want to provide advice about a one-page form, like Plaintiffs here). *See id.*

And while the plaintiff in *Brokamp* held a valid Virigina license—and could thus avail herself of a more streamlined procedure for licensure in New York—these facts cut <u>against</u> Plaintiffs' position. Again, Ms. Brokamp lost her First Amendment challenge <u>notwithstanding</u> her argument that, because of her extensive education, experience, and out-of-state license, she "pose[d] no threat" to the interests New York sought to protect. *Id.* at 401. In contrast, Plaintiffs here seek to rely on <u>unlicensed</u> advocates whose sole sources of instruction are a single "virtual training" and an error-filed, 18-page Training Guide—a shortcoming that underscores New York's strong interest in enforcing its UPL statutes against Plaintiffs' proposed activities. *See* Def. Br. at 20. In this respect, the reasoning requiring dismissal in *Brokamp* applies with even greater force here.

Plaintiffs also argue that the unauthorized practice prohibition in *Brokamp* was more "narrowly drawn" than the UPL statutes. Pl. Opp. at 12. But the passage Plaintiffs cite does not support this conclusion. In that passage, the Second Circuit noted that:

> . . . New York's four-part definition of "the profession of mental health counseling" limits the speech requiring a mental health counselor license to that (1) engaged in for a therapeutic purpose, (2) focused on a disorder or problem of the psyche, and (3) given in the particular circumstances of a private practice, group, or otherwise organized setting.

*Brokamp*, 66 F.4th at 401. The limits on the reach of the UPL statutes are roughly comparable, as those statutes forbid particularized advice to individual clients on legal matters, while allowing laypersons to speak or write about the law in other contexts. *See* Def. Br. at 16. The "organized setting" limitation mentioned in *Brokamp* also affords no meaningful basis for

7

distinguishing that case, as it was interpreted broadly enough to include the plaintiff's remote, "online" talk therapy sessions. *See Brokamp*, 66 F.4th at 382. And just like the statutes challenged in *Brokamp*, the UPL statutes include statutory exemptions that confirm they are sufficiently tailored. *See* Def. Br. at 17, 19.

Further, and notwithstanding Plaintiffs' contrary argument, the Attorney General has not "ask[ed] this Court" to apply Fourth Circuit law. *See* Pl. Opp. at 18. Indeed, the Attorney General has already acknowledged that cases such as *Capital Associated Industries, Inc. v. Stein*, 922 F.3d 198 (4th Cir. 2019) ("*CAI*"), and *Polaski v. Lee*, 759 F. Supp. 3d 683 (E.D.N.C. 2024), applied a distinct, "relaxed" form of intermediate scrutiny. Def. Br. at 21. But *CAI* and *Polaski* are nonetheless instructive because they appear to be the only decisions where a court evaluated a UPL statute under any form of intermediate scrutiny. *See CAI*, 922 F.3d at 208-210 (holding that the challenged "UPL statutes survive intermediate scrutiny"); *Polaski*, 759 F Supp.3d at 685-90 (dismissing First Amendment claims by nonlawyers who wanted to furnish legal advice pertaining to the preparation of legal forms and holding that North Carolina's UPL statutes satisfied intermediate scrutiny).

And Plaintiffs' efforts to quibble with the Fourth Circuit's differing standards are particularly ironic, since, aside from the vacated order in his case, they do not cite a single case where a court upheld an unlicensed person's purported right to give unlicensed legal advice to clients under any standard. *Cf.* ECF 58 at pp. 5-8 (the Attorney General's 2022 brief from this case, citing 14 other decisions from around the country where courts rejected the argument that the First Amendment gives unlicensed persons the right to furnish legal advice, or otherwise practice law, without a license, albeit under more relaxed standards).

Plaintiffs' free speech claim accordingly fails as a matter of law and should be dismissed.

8

## II. PLAINTIFFS FAIL TO SALVAGE THEIR FREEDOM OF ASSOCATION CLAIM

As Judge Crotty correctly recognized in 2022, Plaintiffs' freedom of association claim "likely lacks merit," and "no precedent, binding or otherwise, appears to support Plaintiffs' position" as to that claim. *Upsolve,* 604 F. Supp.3d at 110, 111. Given these clear findings, Plaintiffs' contention that no court has "rejected the idea" that private citizens have an associational right "to give each other [legal] advice" is incorrect. *See* Pl. Opp. at 19; *see also Upsolve,* 604 F. Supp.3d at 110-11 (explaining why the right of association claim fails on the merits). Other courts have similarly rejected the idea that citizens have an associational right to provide legal advice without a license. *See* Def. Br. at 22-23 (citing authority).

Moreover, Plaintiffs do not cite a single case where a court upheld the associational right alleged here. Instead, Plaintiffs cobble together a series of out-of-context quotations from decisions that either (i) have nothing to do with the unlicensed practice of law or (ii) unambiguously <u>reject</u> the plaintiff's claim that it possessed the alleged associational right. As the Attorney General has already established, *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328 (1963), and *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893 (1978), belong to the first category. The plaintiffs in those cases did not argue—and the Supreme Court did not find—that laypersons have the right to offer legal advice, or otherwise practice law, without a license. *See* Def. Br. at 23-24 (summarizing the holdings of *Button* and *Primus* and distinguishing those cases); *see also Upsolve,* 604 F. Supp.3d at 110-111 (explaining why *Button* and *Primus* do not apply here); *Adams v. Am. Bar Ass'n*, 400 F. Supp. 219, 225 (E.D. Pa. 1975) (noting the "enormous" factual distinctions between *Button* and related cases, on the one hand, and the case before the court, where nonlawyers claimed they had a First Amendment right to practice law without a license, on the other); *State v. Niska*, 380 N.W.2d 646, 650 (N.D. 1986) (nonlawyer's efforts to practice

9

law without a license were "not . . . the type of collective activity protected by *Button* and its progeny").

Plaintiffs' reliance on the Second Circuit's decision in *Jacoby & Meyers, LLP v. Presiding Justices of First, Second, Third, and Fourth Dep't,* 852 F.3d 178 (2d Cir. 2017), is even more puzzling, as that case unambiguously supports the Attorney General's position. The plaintiffs in *Jacoby* never argued they had a right to practice law without a license, and the Second Circuit squarely rejected the First Amendment arguments the plaintiffs did make, applying rational basis review—and not strict scrutiny, which Plaintiffs erroneously claim applies here. *See Jacoby,* 852 F.3d at 182-92; *see also id.* at 191 (holding that rational basis review is appropriate where, as here, "no First Amendment right . . . is even implicated by the challenged regulations, much less substantially burdened by them"); *see also* Def. Br. at 24 (identifying additional ways that *Jacoby* supports the Attorney General's position).

Plaintiffs' reliance on the Fourth Circuit's decision in *CAI* is also misplaced. Just like in *Jacoby*, the court in *CAI* rejected the plaintiff's argument that it possessed the alleged associational right. 922 F.3d at 206. Moreover, since the plaintiff in *CAI* had not alleged any meaningful impairment of its associational rights, there was no need to "examine whether the state's interests sufficed to justify" the restrictions in question. *Id.* Here, even if Plaintiffs had alleged a plausible impairment (and they have not), New York's strong interests in consumer protection are more than sufficient to justify the regulation of Plaintiffs' alleged right of association. Again, the UPL statutes would be subject—at most—to rational basis review for purposes of the right of association claim. Def. Br. at 25-26. Since the UPL statutes satisfy intermediate scrutiny as a matter of law, they necessarily satisfy the lower rational basis standard as well. *Id.*

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in the Attorney General's moving papers, the Court should dismiss Plaintiffs' Complaint, with prejudice, and enter judgment in the Attorney General's favor.

Dated: New York, New York.
December 22, 2025

LETITIA JAMES
Attorney General
State of New York

By:

*/s/* Matthew J. Lawson
MATTHEW J. LAWSON
Assistant Attorney General
28 Liberty Street
New York, NY 10005
Tel: (212) 416-8733
matthew.lawson@ag.ny.gov

## CERTIFICATE OF COMPLIANCE UNDER LOCAL CIVIL RULE 7.1(c)

Based on the "Word Count" feature of Microsoft Word, and excluding the caption, table of contents, table of authorities, signature blocks, and required certificates, this reply memorandum of law contains words 3,314 words and therefore complies with the 3,500 word limitation set forth in Local Civil Rule 7.1(c).

*/s/* Matthew J. Lawson
MATTHEW J. LAWSON
