## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

UPSOLVE, INC, and REV. JOHN
UDO-OKON,

*Plaintiffs,*

v.

LETITIA JAMES, in her official capac-
ity as Attorney General of the State of
New York,

*Defendant.*

Civil Case No. 1:22-cv-00627-LAK

MEMORANDUM IN OPPOSITION TO
PROPOSED AMICI'S MOTION FOR
LEAVE TO FILE BRIEF

Ordinarily, Plaintiffs would not oppose the filing of still another amicus brief. This case is important, and it has drawn widespread amicus attention. *See* ECF 25, 27, 34; *Upsolve, Inc. v. James*, 155 F.4th 133 (2d Cir. 2025), Doc. 119, 123, 125, 145, 271, 272, 282. One more makes little difference. But the latest proposed brief is different. For one, it's late. The self-styled "Advocate Amici" filed their motion for leave to file an amicus in opposition to Plaintiffs' motion for a preliminary injunction more than two months after that motion was filed and more than two weeks after it was fully briefed. (Plaintiffs filed their motion on October 10, 2025, and their reply in support of their motion on December 2.) And the proposed amici want to file more than a brief—they ask to file new evidence that the actual defendant declined to tender and to contradict binding concessions that the actual defendant has already made. Plaintiffs respectfully suggest that the fully-briefed motion should be decided as briefed, on the record provided by the parties, rather than on untested third-party submissions.

1

Beyond being late, the proposed new evidence is inadmissible and unhelpful. It consists largely of describing documents that proposed amici decline to attach, in violation of Federal Rule of Evidence 1002. Moreover, to the extent Plaintiffs have been able to locate the documents described, some of amici's accounts are materially misleading. The rest of it is uncheckable and (even if true) exceedingly thin. And all of it is beside the point, misunderstanding the question before this Court and therefore unlikely to be helpful in resolving the current motion. To the extent proposed amici offer anything relevant, their evidence simply confirms that other states allow a wide variety of non-attorney access-to-justice assistance and that New York does not.

Plaintiffs therefore ask either that the motion for leave to file be denied or (to the extent it is granted) that the Court give no weight to the proposed amici's late-tendered evidence.

## I.   The Court should decide this fully briefed motion on the evidence submitted by the parties.

Proposed amici filed their motion for leave to submit an amicus brief (and file new evidence) more than two weeks after the motion they opposed was fully briefed. Moreover, their proposed brief does not try to help the Court decide the pending motion on the record before it. Instead, it tries to expand that record.

The Court should reject this attempt to smuggle evidence into the record that neither party chose to present. The "usual rationale" for allowing amici participation is to offer the court "insights not available from the parties." *United States v. El-Gabrowny*, 844 F. Supp. 955, 957 n.1 (S.D.N.Y. 1994). Here, the actual parties are

more than "equipped to present sufficient evidence," and allowing proposed amici to do so would usurp that prerogative. *Leslie v. Starbucks Corp.*, No. 22-CV-478 (JLS), 2022 WL 5434278, at *4 (W.D.N.Y. Oct. 7, 2022) (limiting amicus participation to filing brief rather than submitting evidence). As another judge of this district has noted, "comment[ing] on the existence of allegedly newly discovered evidence . . . is not the proper role of an amicus[,]" particularly where the named party "has already been granted ample opportunity to collect and present to the Court evidence relevant to the Court's decision." *United States v. Yaroshenko*, 86 F. Supp. 3d 289, 290 (S.D.N.Y. 2015); *accord Hartford v. Ferguson*, No. 3:23-CV-05364-RJB, 2023 WL 3951208, at *1 (W.D. Wash. June 12, 2023) (denying motion to file amicus brief that included extra-record facts not added through parties' counsel "so the protections found in due process, the Federal Rules of Civil Procedure relating to discovery, and the Federal Rules of Evidence are assured.").

The same is true of proposed amici's contention that Plaintiffs volunteer program would not run afoul of New York's unauthorized-practice-of-law rules. Of course, not *everything* Plaintiffs and their volunteers do as part of the American Justice movement is the unauthorized practice of law. As Judge Crotty's preliminary-injunction opinion explains, Plaintiffs offer a narrow spectrum of legal advice and, for people who turn out not to need that advice, "provide another link in the informational chain" to help them access their legal rights. ECF 68 at 29. That is how the program was designed and, as the unrebutted testimony of Jonathan Petts describes, it worked: The ability to give legal advice was a vital part of getting people in need of

legal help in the door, after which some of those people got legal advice and others got referrals or other information. ECF 111 (Petts Dec.) ¶ 6. And Defendant has repeatedly conceded (at least for the purposes of this motion) that the program, as described, is the unlawful practice of law in New York. *See*, *e.g.*, ECF 119 at 11–16; ECF 66 at 27:5–17 ("For the purpose of this motion . . . the state is not disputing that the [program] would likely constitute unauthorized practice of law."). A late-filed amicus brief cannot undo that concession.

## II.    Proposed amici's new evidence is inadmissible and unhelpful.

Beyond being late, the new evidence offered is unhelpful. The thrust of the proposed brief's argument is that Plaintiffs' volunteer program was ineffective and harmful, but their evidence misses the mark. To the extent the evidence is verifiable, it is misleading. The remainder of it is (even if assumed to be true) remarkably thin, amounting to the fact that one unnamed person once received one piece of bad advice. And all of it misses the point: To grant a preliminary injunction, this Court needn't conclude that Plaintiffs and their volunteers will be perfect in every instance. Instead, it only needs to find that a blanket ban on New Yorkers talking to other New Yorkers about the law (in the name of preventing bad advice that New York otherwise allows to flourish unchecked) is a wildly overbroad means of advancing the State's asserted interests.

### A.  At least some of proposed amici's new evidence is misleading.

Amici's proposed new evidence consists of the Declaration of Susan Shin, which describes (but does not always attach) some documents that purport to undermine

4

the quality of Plaintiffs' volunteer program, the American Justice Movement. One line of attack, repeated in the proposed amicus brief, is that the coordinator Plaintiff Upsolve hired to help run the program was unqualified. Instead of hiring an experienced coordinator with a demonstrated commitment to social justice, say amici, a review of the coordinator's LinkedIn page reveals that she was nothing of the kind, instead boasting at best eight years' experience as a graphic designer. ECF 130-2 at 8.

Proposed amici do not provide a link to that LinkedIn page, but appear to mean this one: Divya Vatsa, https://www.linkedin.com/in/divya-vatsa/ (last visited Jan. 2, 2026). Their description of that page, however, is hard to square with the page itself.

For one thing, amici seem to make much of Ms. Vatsa's eight-year career as a freelance graphic designer, but a simple comparison of the dates on her resume reveals that her time doing "freelance graphic design[]" began two years before she started college. But more striking than what amici choose to highlight is what they choose to omit. The LinkedIn page details that Ms. Vatsa is a Fulbright semifinalist with an undergraduate degree from Harvard; that she holds a Masters in Comparative Social Policy from Oxford University; and that she was (among other things) the co-founder of a "web application [designed to] connect homeless individuals with nearby resource providers." *Id.* To be sure, in keeping with the design of the program, she was not an attorney,[1] but these achievements (all of which predate Ms. Vatsa's employment with the American Justice Movement) would be relevant to any candid

---

[1] Though her LinkedIn page also discloses that she is currently a 2L at Harvard Law School. *Id.*

discussion of her qualifications as they relate to her ability to coordinate legal volunteers. Instead, amici pretend away all these details, focusing on a third party's childhood work history in an effort to paint her as an unqualified, part-time graphic designer. Their attempts to attack Ms. Vatsa should form no part of the record in this case—or, to the extent the Court grants amici's motion for leave to file, they should be given no weight.

### B. Proposed amici's remaining evidence adds little.

Beyond the attacks on Ms. Vatsa, the Declaration of Susan Shin describes (but this time declines to attach) an email in which one of the American Justice Movement's volunteers gave incorrect advice. In short, the allegation is that an AJM volunteer (whom she does not name) sent an email (that she does not attach) to a New Yorker (whom she also declines to identify) imparting inaccurate legal advice.

Unlike the assertions about the LinkedIn page, Plaintiffs (like the Court) have no way of knowing whether this account also omits key details. This is why the Federal Rules of Evidence generally prohibit a party from proving the contents of a document by describing it rather than offering the original, which makes proposed amici's description of these emails inadmissible. FRE 1002.

But even assuming it is perfectly fair and accurate, it describes one instance in which a volunteer misunderstood the situation and gave bad advice. Maybe so. Regardless, the new evidence is unhelpful. That is because the question before the Court is not whether Plaintiffs' volunteer program will be perfect and mistake-free. It is whether Defendant can justify its unusually restrictive prohibition on

nonlawyers *ever* talking to their fellow New Yorkers about their particular legal circumstances. And amici's inadmissible evidence is simply unhelpful in justifying a blanket ban on talking.

### C. Proposed amici's evidence is also unhelpful.

Proposed amici's brief is also unhelpful because it misunderstands the question before this Court. The brief appears to proceed from the premise that a blanket ban on talking to New Yorkers about their legal problems will survive intermediate scrutiny so long as it stops at least one person from hearing at least one piece of bad advice.

That is wrong. For one thing, First Amendment plaintiffs do not bear the burden of showing their speech will be beyond criticism. Identifying some harm that a speech restriction would prevent is not enough. Instead, the government must demonstrate that its ban is *tailored* to the harms it seeks to prevent. That is because "[b]road prophylactic rules in the area of free expression are suspect." *NAACP v. Button*, 371 U.S. 415, 438 (1963).

Thus, the question before the Court is not whether at least one person made a mistake when Plaintiffs ran the American Justice Movement. The question is whether there are better-tailored ways to regulate nonlawyer speech—including the "usual and preferred remedy under the First Amendment: more speech." *TikTok, Inc. v. Garland*, 604 U.S. 84 (2025) (Gorsuch, J., concurring in the judgment).[2] As already

---

[2] Indeed, even crediting proposed amici's new evidence, it seems that "more speech"— more advice from other sources—prevented any real harm to the unidentified client. ECF 130-2 at 5–6. Nothing about Plaintiffs' volunteer program *interferes* with the

explained in Plaintiffs' preliminary-injunction briefing, Defendant has introduced nothing to meet that burden.

And amici's proposed new evidence does nothing to help. As discussed in Part III below, the proposed amicus only confirms that New York's ban is much broader than the rules in place in other states. But that broad prohibition is also underenforced, such that New Yorkers can get legal advice from all sorts of places—but not from Plaintiffs or their volunteers who want to help. New Yorkers get legal advice from chatbots. Kashmir Hill, *They Asked an AI Chatbot Questions. The Answers Sent Them Spiraling*, N.Y. Times (June 13, 2025), https://www.ny-times.com/2025/06/13/technology/chatgpt-ai-chatbots-conspiracies.html ("Mr. Torres, 42, an accountant in Manhattan, started using ChatGPT last year to . . . get legal advice."). They get legal advice from disgraced cryptocurrency billionaires. Jonah E. Bromwich, *Crypto Fraudster Sam Bankman-Fried Has New Pursuit: Jailhouse Lawyer*, N.Y. Times, (Dec. 20, 2025), https://www.nytimes.com/2025/12/20/nyregion/sam-bankman-fried-jailhouse-lawyer.html. Much of that advice, undoubtedly, is bad. *See id.* (describing the testimony of former Honduran President Juan Orlando Hernández, whom Bankman-Fried advised to testify in his own defense, as having gone "poorly"). Defendant's burden, then, is to prove that its best option, in this sea of potential sources of bad advice, is to silence any formal program that operates outside

---

ability of New Yorkers to get advice from lawyers when lawyers are available; as Judge Crotty's opinion recognizes, the program instead offers an extra link in the chain for New Yorkers who have trouble accessing legal representation.

its legal-licensing regime. It cannot do this based on its filings in this case, and nothing in the latest proposed amicus brief changes that.

### III.   Proposed amici otherwise confirm that New York's flat ban on nonlawyers ever providing legal advice is unusual and therefore unlikely to survive intermediate scrutiny.

The only remaining point offered by amici is that there exist "various models designed to address legal needs." ECF 130-2 at 12. That much is true. As explained in Plaintiffs' motion, there is mounting evidence that other states allow legal advice from nonlawyers in a variety of circumstances. ECF 110 at 4. Amici confirm that this is true, with many states offering paths by which non-attorneys may be approved to give one-on-one legal advice. *See* ECF 130-2 at 12–21.

Where amici falter, however, is in their attempt to insist that New York has authorized similar "access to justice" programs. *Id.* at 20–21. It hasn't. Amici point to exactly two "access to justice" programs in New York, each of which is operated by fully licensed attorneys. *Id.* The upshot for people like Plaintiffs, who want to talk to New Yorkers about their legal problems, is that they have two options: become a fully licensed attorney or work for one. In many other states around the nation, they would have more options. Under intermediate scrutiny, it is Defendant's burden to explain why those doors must remain closed to would-be speakers in New York. It has declined to do so, and Plaintiffs are therefore likely to succeed on the merits. Nothing in amici's late-filed proposed brief would change that conclusion. Its motion for leave to file a brief and new evidence should therefore be denied or, in the alternative, its brief and new evidence should be accorded no weight.

**CONCLUSION**

Proposed amici's motion for leave to file a brief and new evidence should be denied. In the alternative, its brief and new evidence should be disregarded in this Court's analysis of the pending motion for preliminary injunction.

Dated: January 2, 2026

Respectfully submitted,

/s/ Robert J. McNamara

Robert J. McNamara*
Elizabeth Sanz*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
rmcnamara@ij.org
*Attorneys for Plaintiffs*
*Admitted *pro hac vice*